UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————————————x

MAUREEN HURLEY,

<div style="margin-left:2em">Plaintiff</div>

CV 24-1664

DOCKET NO.

ORIGINAL

-against-

REC'D IN PRO SE OFFICE
MAR 6 '24 AM9:06

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK,

<div style="margin-left:2em">Defendants</div>

————————————————————————————————x

COMPLAINT
*Jury Trial Demanded*

MORRISON, J.

BLOOM, M.J.

PLAINTIFF MAUREEN HURLEY, ("Plaintiff") proceeding Pro Se, as and for her Summons and Complaint filed to protect her Constitutional rights against the above-captioned Defendant DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK (henceforth "DOE) alleges upon knowledge as to her own facts and upon information and belief as to all other matters:

## PRELIMINARY STATEMENT

1. This is a civil action seeking injunctive relief, monetary relief, including past and on-going economic loss, compensatory and punitive damages for violations of Constitutionally protected rights given to her as a tenured teacher under Education Law §§3030 and 3020-a, namely to have a due process hearing and proper determination of probable cause before any charges are filed against her which diminish her property and liberty rights, including her right to her protected right to her religious beliefs as well as

1

permanently scars her as committing misconduct, specifically insubordination. As long as she is on the Problem Code database she is blocked from getting a salary for any position at the Department.

4. But-for the approval of the denial of these protected rights by the DOE, Plaintiff was wrongfully, maliciously and in bad faith terminated and stigmatized permanently by being wrongfully terminated and placed on the Ineligible/Inquiry or "no hire" Problem Code List, solely because of her religious beliefs.

5. Plaintiff requests judgment against Defendants for refusing to, or neglecting to, prevent such deprivations and denials to Plaintiff pursuant to Civil Service Law §75 (b)(2)(a)(ii).

6. Plaintiff requests relief from the retaliation by the Defendant namely her job returned to her, and all backpay and benefits that she did not receive after her wrongful termination and denial of her Constitutional and protected rights to freedom of religion and due process before deprivation.

## **PARTIES**

7. Plaintiff was an employee for the New York City Department of Education of the City of New York ("Defendant") in good standing first, as a teacher, then as a Librarian starting in 2000. As such, she had protected liberty and property rights to her position. At all times relevant herein, Plaintiff was a public employee of Defendants within the meaning of New York State Civil Service Law § 75-b(1)(b).

8. At all relevant times, the Defendant has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and

3

continues to be a recipient of substantial federal funds, and as such, is subject to the mandates under the Education Law, First and Fourteenth Amendments to the United States Constitution, which prohibits any diminution of tenure rights without Just Cause, and retaliation against individuals, such as Plaintiff herein. The headquarters of the NYC DOE is located at 65 Court Street in Brooklyn, New York.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for claims arising federal questions under 42 U.S.C. 1983, in particular the protections given by the Free Exercise Clause, First and Fourteenth Amendments to the Constitution, as well as State law claims codified in the New York State Constitution, and Education Law §3020-a (the "tenure law") .

10. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street in Brooklyn N.Y. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367.

11. This Court has pendent and supplemental jurisdiction over Plaintiff's state law and city law claims, as the facts that form the basis of the state and city law claims are substantially similar to the facts that form the basis of the federal law claims. Defendants were at all times acting under color of law in breaching their covenant of good will and fair dealing with the Plaintiff as well as committing fraud in the inducement.

4

12. Plaintiff filed a claim with the United States Equal Employment Opportunity Commissioner ("EEOC") and received her Right to Sue Letter on December 7, 2023. *See,* **Exhibit A,** a copy of the EEOC's Right To Sue Letter.

13. This Action was commenced prior to the expiration of the ninety (90) day window to file a claim pursuant to the Right to Sue Letter. In May 2023 Plaintiff filed a Notice of Claim against the Department as well.

## STATEMENT OF FACTS

14. Plaintiff, a tenured teacher, was unlawfully denied support for freedom from abuse of process and malicious prosecution, stigma plus character defamation and diminution of her tenure rights due to her claiming a religious belief prohibiting her from getting the COVID Vaccine.

15. Plaintiff was hired as a teacher by the Department in September 2000.

16.Plaintiff earned tenure and all the Constitutional protections to her property and liberty rights pursuant to N.Y. Education Law. At no time during her years with the Defendant did she receive any discipline for misconduct.

18.  On March 20 2020 the Defendant and Beth Norton, General Counsel for Plaintiff's Union the United Federation of Teachers ("UFT"), signed a Memorandum of Agreement wherein both parties agreed to change the terms of employment and the UFT-DOE Contract ("CBA") to satisfy the compelling City interest in protecting children in the Defendant's schools from getting COVID-19. This MOA was never ratified nor was it even seen by any UFT member. The Reorganization Procedure, created at the same time, was also never ratified, seen, or known by the UFT rank and file. See **EXHIBITs B** and **B(a).**

19. On September 10, 2021 Defendant sent to Plaintiff an Impact Bargaining Agreement wherein Arbitrator Martin Scheinman created a new term of employment, a lawless Leave Without Pay ("LWOP") that involuntarily removed all Department employees from their jobs if they did not submit a COVID vaccination card to the Department by October 4, 2021. In this Agreement between the UFT and Defendant, Scheinman also created a procedure to deny Appeals for religious exemptions that was unconstitutional. Judge Ralph Porzio in the case George Garvey et al., v City of New York et al.,, Index No. 85163/2022. See **Exhibit C**, Scheinman Award dated September 10, 2021.

21. Suddenly, on September 15, 2021 the Department of Health issued an Order mandating that all NYC Department of Education Employees get the COVID vaccine or be removed from their workplace.  **EXHIBIT D,** DOH Mandate.

22. Nonetheless, Plaintiff relied on the unconstitutional Scheinman ruling that discriminated against her religious beliefs because she wanted and needed to keep her job as a tenured teacher at the Department of Education, at minimum the medical benefits. So she signed the LWOP under duress on 2/21/22 – indeed, she was forced to sign it against her will -which allowed her to keep her medical benefits, without her getting her salary until September 5, 2022.

23. On September 18, 2021 Plaintiff received an email message from SOLAS, Division of Human Capital HR Connect that informed her about the New York City Department of Education's  COVID-19 Vaccine Mandate, and requested that she upload her vaccine status. Plaintiff was also told that all employees had to be fully vaccinated by September 27, 2021, or lose their job. Employees could apply for Religious Exemption (RE) by request, which would exempt the employee from the VM if the request is

approved. However, the request for a RE had to be accompanied by a letter written by a clergyman in support of the RE request. This message also contained information about how to file for RE through SOLAS HR CONNECT. In her request for RE, she explained that her sincerely held religious belief is that "my body is my temple and I dont want the COVID-19 vaccine in my body, and I noted scriptures from The Bible, which I follow, that support my religious beliefs." On September 18th, after submission of her request, she received an email from the SOLAS HR Connect, thanking her for submitting her request for RE.

24. On September 22, 2021 Plaintiff received a denial of her Religious exemption Accommodation from SOLAS HR CONNECT which told her ""The requirements necessary to establish a religious exemption were not met, including no submission of written documentation by a religious official.".

25. On September 23, 2021, Plaintiff appealed the denial of her religious exemption. Her documentation was forwarded to Scheinman Arbitration, the same company that created the September 10 2021 Arbitration Award on LWOP.

26. On October 1, 2021 Arbitrator Sarah Espinosa informed Plaintiff by email at 8:54 am in the morning of Plaintiff's Appeal , saying that she would be represented at the hearing by a UFT Representative.

27. 10/1.21 John Kamps emails Plaintiff at 7:50 am that he is the representative from the UFT. However, Plaintiff was at work and had no time to discuss the case or what to say.

28. 10/01/21 Plaintiff was told to give an impassioned plea for her religious exemption to the Arbitrator Sarah Espinoza. She was given 10 minutes.

29. On 10/02/21 Scheinman Arbitration denied Plaintiff's religious exemption with an "X" in a box labelled "Denied.. **EXHIBIT E.**

30. On Nov 15 2021 U.S. Court of Appeals for the Second Circuit ordered fresh consideration of people's requests for religious accommodation because the procedure used by the Scheinman arbitrators was unconstitutional: "Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law…… Accommodations will be considered for all sincerely held religious observances, practices, and beliefs." **EXHIBIT F** Scher letter; see also Judge Ralph Porzio in the case George Garvey et al., v City of New York et al.,, Index No. 85163/2022. On November 19, 2021 Plaintiff was told she could appeal to the Citywide Panel, and her Appeal was filed on December 1, 2021.

31. On November 28 2021 the United States Court of Appeals for the Second Circuit merit panel ordered new review by a newly formed Citywide panel. The Justices advised this new Panel to comply with Title VII, but they did not. The unnamed Panel members  did not meet with a single applicant, and out of more than 600 appeals, granted 162. No details about the criteria or standards for their review were made known..**EXHIBIT G**

32. Plaintiff's request for a religious exemption was denied by the Citywide Panel.

33. On September 6, 2022 the Department terminated Plaintiff. The Department told her this "separation" was voluntary, but that is far from the truth. Plaintiff never resigned. She was fired solely because of her religious beliefs.

34. On November 11, 2022 Plaintiff was told that her fingerprints were placed on the Department's "no-hire/inquiry"/"Problem Code" database the very same day that she did not submit a valid vaccination card to the Defendant (October 4, 2021). This Problem Code blocks her from being paid her salary from the Department, and tags her file with misconduct. She is now permanently guilty of insubordination, and suspended from pay without a due process hearing "3020-a" which is guaranteed to her by Law and contract (CBA, Article 21G). See **Exhibit H** Barry Black Declaration; **Exhibit I** Declaration of Betsy Combier with **Exhibit A,** email from Eric Amato.

35. The effects of the Problem Code are extremely damaging to Plaintiff's life and career, especially since the COVID Vaccine Mandate (CVM) effectively ended on February 10, 2023. Plaintiff's damages did not end. She still has not been given her job back. Department employees who requested unemployment were denied, since they were guilty of "misconduct" due to the Problem Code". See **EXHIBIT J**, decisions from the Department of Labor. Thus, the temporary Mandate has cause permanent damages to Plaintiff.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR RELIGIOUS DISCRIMINATION

36. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 35 as if the same were fully set forth at length herein.

37. Plaintiff has sincerely held religious beliefs which forbid her from getting vaccinated with the COVID-19 vaccine.

38. Defendant had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption requests and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment without probable cause. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

"The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. ….. What is most important is that "undue hardship" in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the commonsense manner that it would use in applying any such test….. Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

39. Based on the foregoing, Defendant subjected Plaintiff to discrimination on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A SECOND CAUSE OF ACTION FOR FAILURE TO REASONABLY ACCOMMODATE THE PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS

40. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 39 as if the same were fully set forth at length herein.

41. Plaintiff has sincerely held religious beliefs which forbid her from getting

vaccinated with the COVID-19 vaccine. See

43. Defendant, the Plaintiff's employer, had actual knowledge of the Plaintiff's sincerely held religious beliefs.

44. Defendant had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

45. No reasonable accommodation was offered to the Plaintiff nor was she involved in an interactive dialogue with anyone at the Department. .

46. In conflict with the U.S. and City Constitutions guaranteeing all citizens the    right to their religious beliefs, Defendant did not honor this law of the land and terminated Plaintiff without any interactive process to discover any reasonable accommodation. See **Exhibits B, C, E, F.**

47. In Garvey v City of NY Index no. 85163/2022, Judge Ralph Porzio wrote in his decision:

"Petitioners – all but one – applied for exemptions from the mandate. They received generalized and vague denials. During that time their exemptions were being processed, they remained unvaccinated. There was no reason that they could not continue to submit to testing and continue to fulfill their duties as public employees. There was no reason why the City of New York could not continue with a vaccine or test policy, like the Mayor's Executive Order that was issued in August 2021……" and,

"Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance....The Health Commissioner cannot create a new condition of employment for City employees. The Mayor **cannot exempt certain employees from these orders**. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious....prohibit an employee from reporting to work."

48. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

### AS AND FOR A THIRD CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT TO DENY PLAINTIFF HER PROPERTY AND LIBERTY RIGHTS TO A DUE PROCESS HEARING AS A TENURED TEACHER MANDATED BY EDUCATION LAW 3020 AND 3020-A

49. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 48 as if the same were fully set forth at length herein.

50. Plaintiff was punished with wrongfully being terminated for her "insubordination" in not getting vaccinated with the COVID vaccine.

51.Education Law Section 3020 , Chapter 16, Title 4, Article 61 states as follows:

"Discipline of teachers. 1. No person enjoying the benefits of
tenure shall be disciplined or removed during a term of employment
except for just cause and in accordance with the procedures specified in
section three thousand twenty-a of this article"
and,

"2. No person enjoying the benefits of tenure shall be suspended for a
fixed time without pay or dismissed due to a violation of article

thirteen-E of the public health law….. (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision…"

52. Plaintiff did not, at any time, waive her rights to a 3020-a hearing on her religious exemption request. She wanted her due process to be honored. Instead, she was declared insubordinate and guilty of misconduct without any finding of probable cause by the Department, and her personnel file was flagged and her fingerprints tagged with a with a "Problem Code" designating misconduct and put into the same database used by the FBI.

53. The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301 U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937). In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

54. Additionally, a waiver of a teacher's tenure rights must be knowingly and freely given (Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d 446; Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d 450).

55. Tenured teachers have a property and liberty right to their jobs, and therefore when there is any penalty that reduces the benefits of these rights, there must be Just Cause.

13

Judge Desmond Green in the Richmond County Supreme Court  ruled in the case of

Rosalie Cardinale that:

"New York State created the public school tenure system guaranteeing continued employment to tenured teachers by statute and therefore created a property right in a tenured teacher's continued employment. *(See Education Law§§§* 3012, 3012- a, 3020, *Holt v. Board of Educ. Of Webutuck Cent. School Dist.,* 52 NY2d 625 [1981], *Matter of Abromvich v. Board of Educ. of Cent. School Dist. No. I of Towns of Brookhaven & Smithtown,* 46 NY2d 450 [1979]). Where a property right in continued employment exists, such as New York's tenure system, the recipient of such a right may not be deprived without due process. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 [1985].

New York State guarantees a tenured teacher's due process rights to continued employment by statute requiring that "no [tenured teacher] ... shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement ... " *Education Law* § 3020.

56. The legislative intent is to provide pedagogues protection from vindictive principals

who may want to remove senior teachers from their positions for random, arbitrary or

capricious reasons.  Thus, Education Law 3020-a(2)(a) is an important part of the

efforts of legislators to maintain a check and balance of power in NY State governance

and policy. See Kambouris et al., v New York City Department of Education of the City

of New York, et al. Index No. 518863/2022 (Decision/Order dated 1/05/2023)

57. Based on the foregoing, the NYCDOE failed to provide a reasonable

accommodation and as a result, discriminated against the Plaintiff on the basis of her

religion, unlawfully discriminating against the Plaintiff in the terms and conditions of

her employment on the basis of her religion, in violation of  Education Law §3020,

§3020-a, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C.

§ 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C.

Human Rights Law.

14

**WHEREFORE,** the Plaintiff demands judgement against the Defendant for all compensatory, emotional, psychological and punitive damages, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1.  Awarding Plaintiff her tenured position and salary given to her before October 2021, in full, with benefits; and

2.  Awarding Plaintiff all the backpay and financial damages that ensued after she was placed on a lawless and unconstitutional Leave Without Pay.

3.  Granting such other and further relief that the Court seems just and proper.

Dated: March 6, 2024

Maureen Hurley
18 Kisco Park Drive
Mount Kisco, NY 10549
Miami64@earthlink.net
917-517-6379

15

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

December 07, 2023

Ms. Maureen Hurley
18 Kisco Park Drive
Mount Kisco, NY  10549

Re:  EEOC Charge Against New York City Department of Education, et al.
     No. 520202200139

Dear Ms. Hurley:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires.  Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by      /s/ Karen L. Ferguson
        Karen L. Ferguson
        Supervisory Civil Rights Analyst
        Employment Litigation Section

cc: New York District Office, EEOC

New York City Department of Education, et al.

## MEMORANDUM OF UNDERSTANDING

### Between

The Board of Education of the City School District of the City of New York (the "DOE" or "Board")

### And

The United Federation of Teachers, Local 2, AFL-CIO (the "UFT")

(the "Agreement")

WHEREAS, the nation is currently in the middle of a novel coronavirus disease 2019 ("COVID-19") pandemic; and

WHEREAS, on March 7, 2020, the Governor of the State of New York declared a disaster emergency for the State of New York related to COVID-19; and

WHEREAS, on March 12, 2020, the Mayor of the City of New York declared a state of emergency for New York City related to COVID-19; and

WHEREAS, on March 13, 2020, the President of the United States proclaimed the COVID-19 outbreak in the United States a national emergency; and

WHEREAS, DOE school buildings will be closed to students from March 15, 2020 until at least April 20, 2020; and

WHEREAS, the DOE and the UFT wish to work collaboratively to preserve the continuity of learning for students to the greatest extent possible during this time of unprecedented crisis; and

WHEREAS, the DOE and the UFT recognize that there will be a need for flexibility during this period of interruption and an ability to adapt to changing circumstances as they may arise;

NOW, THEREFORE, the DOE and the UFT hereby agree that:

1. Any modifications to the terms and conditions of employment for UFT members, and all processes set forth the in the collective bargaining agreements, or any other agreements, that are made in relation to the COVID-19 pandemic and the DOE response thereto have been agreed to as a precautionary measure in response to the global emergency and to ensure the safety of staff and to preserve the continuity of learning for the students of New York City to the greatest extent possible.

2. Any such modifications shall not be precedential.

3. The parties may agree to rescind or alter any such modifications as COVID-19 circumstances change, or as otherwise necessary or appropriate.

4. Any Operational Issues, as defined by the collective bargaining agreement, or any other issues related to remote learning working conditions,  that arise during the remote learning period resulting from the COVID-19 pandemic shall be resolved through the Paperwork and Operational Issues process set forth in Article 8(I) of the UFT-Board Collective Bargaining Agreement Covering Teachers as modified by Paragraph 6 of the October 11, 2018 Memorandum of Agreement between the parties, with the following modifications:

    a. The Chapter Leader and Principal will have 2 school days to resolve a complaint raised by a member

    b. The District Representative and the District Superintendent will have 2 school days to resolve a complaint that cannot be resolved at the school level, the Central Committee will be copied on any complaints that are elevated to the district level;

   c.   The Central Committee will meet remotely on a weekly basis, or earlier if critical, during the remote learning period, as necessary, to resolve any complaints that cannot be resolved at the district level.

5.   In the event that the Central Committee cannot agree on the resolution to any such issues, the issue shall be referred to the UFT President and the Chancellor or their designees for resolution.

6.   This agreement is in effect for the duration of the remote learning period that is in effect in response to the COVID 19 pandemic and shall expire at the end of this remote learning period unless the parties agree otherwise in writing.

AGREED and ACCEPTED, on this ⟍ day of March, 2020, BY:

For the UFT:

_____

Beth A. Norton, General Counsel

For the DOE:

_Howard Friedman_

_____

Howard Friedman, General Counsel

**Reorganization Resolution Process during remote learning**

*The CL/teacher should informally attempt to resolve the issue with the principal.*

**The following process would be in place during the time period from June 17, 2020 until the grievance process reopens on October 1, 2020. All issues as defined in the 3/20/20 MOU other than reorganizational issues will follow the Operational Complaint process until October 1, 2020.  The extension of this agreement will be reviewed on October 1 and every three months or as needed thereafter.  In no case may the same reorganizational issue be raised for consideration by both processes.**

School Level

1.  Teacher will file a Reorganization Form (electronically) and submit to the principal requesting a meeting with the principal and CL to resolve the issue within two school days.

2.  Principal will conduct a video or phone conference with the teacher and chapter leader/union representative. If the issue is unable to be resolved within 2 school days of the principal receiving the report, the District Representative can escalate the issue to the District level.

District Level

1.  When the district representative escalates an unresolved issue to the district level the Reorganization Issue will be emailed to the Superintendent, principal, CL and identified Central DOE and Central UFT staff.  There will be 4 school days to resolve the issue from the date the Reorganization Issue was escalated to the district level.

2.  A meeting will be scheduled via video conference or phone call with the superintendent, or his/her designee, the principal, the teacher and the district representative.

3.  If the issue remains unresolved 4 days after the report was escalated to the district level, the unresolved issue can be escalated to the Reorganization Subcommittee of the Central Operational Committee.

Central Reorganization Subcommittee

1.  The Reorganization Subcommittee of the Central Operational Committee will meet remotely on a weekly basis, during the remote learning period as necessary, to resolve any issues that were not resolved at the district level.

2.  If a reorganization issue is not resolved through this process at any level, effective four days after the expiration of this agreement, the UFT may file a demand for arbitration consistent with the contract.

3.  Reorganization issues that arise after the expiration of this agreement will be subject to the contractual expedited reorganization grievance procedure set forth in Article 22.

```
-------------------------------- X
In the Matter of the Arbitration
                                 X
          between
                                 X
BOARD OF EDUCATION OF THE CITY              Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF   X
NEW YORK
                                 X
          "Department"
                                 X
          -and-
                                 X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO            X
                                 X
          "Union"                X
-------------------------------- X
```

**APPEARANCES**

> **For the Department**
>     Renee Campion, Commissioner of Labor Relations
>     Steven H. Banks, Esq., First Deputy Commissioner
>     and General Counsel of Labor Relations

> **For the Union**
>     STROOCK & STROOCK & LAVAN, L.L.P.
>         Alan M. Klinger, Esq.

>     Beth Norton, Esq., UFT General Counsel
>     Michael Mulgrew, UFT President

**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

**BACKGROUND**

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021.  The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic.  During that time, we have seen substantial illness and loss of life.  There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant.  Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible.  Yet, municipal employees have often borne great risk.  The Department and the UFT are no exception.  The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year.  Educators at all levels strove to deliver the best experience possible under strained circumstances.  For this

2

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning.   They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters.   In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate.   That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits.   This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021.   That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate. A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters. Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions. They did so. Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate. I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

4

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements. As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings. All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters. The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated. Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected. The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims. I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved. They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

5

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral.  The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner.  For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone.  They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter.  This undertaking could not be accomplished by any single arbitrator.

**Opinion**

After having carefully considered the record evidence, and after having the parties respond to countless inquiries.  I have requested to permit me to make a final determination, I make the rulings set forth below.  While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone.  I hereby issue the following Award:

**I.    Exemption and Accommodation Requests & Appeal Process**

As an alternative to any statutory reasonable accommodation

6

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

    A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)—with contraindications delineated in CDC clinical

considerations for COVID-19 vaccination.  Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

8

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

    C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

    D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

    E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

9

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned

10

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

11

accommodation shall have the ability to use CAR days while their application and appeal are pending.  Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process.  To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs.  The DOE shall make best efforts to make these assignments within the same borough as

12

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II. <u>Leave</u>

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

   i. Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

   ii. No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

   iii. Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

14

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv. Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period.  This eligibility to borrow CAR/sick days does .not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v. In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child.  As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi. If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

15

vii.   All other eligibility and use rules regarding UFT Parental Leave as well as FMLA remain in place.

## III. **Separation**

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons.   An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

16

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

contained, herein, all parties retain all legal rights at all times relevant, herein.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK       )
                        )  ss.:
COUNTY OF NASSAU        )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.Impact Bargaining.awd

18

# ORDER OF THE COMMISSIONER
# OF HEALTH AND MENTAL HYGIENE
# TO REQUIRE COVID-19 VACCINATION FOR
# DEPARTMENT OF EDUCATION
# EMPLOYEES, CONTRACTORS, VISITORS, AND OTHERS

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS**, the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS**, the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS**, the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic;" and

**WHEREAS**, on September 9, 2021, President Joseph Biden announced that staff who work in Head Start programs and in schools run by the Bureau of Indian Affairs and Department of Defense will be required to be vaccinated in order to implement the CDC's recommendations; and

**WHEREAS**, on August 26, 2021, New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a vaccine by October 7, 2021; and

**WHEREAS**, Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt

vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science; and

**WHEREAS** the New York City Department of Education ("DOE") serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated; and

**WHEREAS,** a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**WHEREAS,** on August 24, 2021, I issued an order requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building, which was amended on September 12, 2021; and

**WHEREAS,** unvaccinated visitors to public school settings could spread COVID-19 to students and such individuals are often present in public school settings and DOE buildings;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, to

**RESCIND and RESTATE** my September 12, 2021 Order relating to COVID-19 vaccination for DOE employees, contractors, visitors, and others; and

I hereby order that:

1. No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below:
   a. DOE staff must provide proof of vaccination to the DOE.
   b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer.
   c. Staff of contractors of DOE or the City, as defined below, must provide proof of vaccination to their employer, or if self-employed, to the DOE.
   d. Staff of any charter school serving students up to grade 12, and staff of contractors hired by charter schools co-located in a DOE school setting to work in person in a DOE school setting or DOE building, must provide proof of vaccination to their employer, or if self-employed, to the contracting charter school.

2. An employer to whom staff must submit proof of vaccination status, must securely maintain a record of such submission, either electronically or on paper, and must demonstrate proof of compliance with this Order, including making such records immediately available to the Department upon request.

3. Beginning September 13, 2021, all visitors to a DOE school building must show prior to entering the building that they have:
   a. Been fully vaccinated; or
   b. Received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Received the first dose of a two-dose vaccine.

4. Public meetings and hearings held in a DOE school building must offer individuals the opportunity to participate remotely in accordance with Part E of Chapter 417 of the Laws of 2021.

5. For the purposes of this Order:

   "Charter school setting" means a building or portion of building where a charter school provides instruction to students in pre-kindergarten through grade 12 that is not collocated in a DOE building.

   "DOE school setting" includes any indoor location where instruction is provided to DOE students in public school pre-kindergarten through grade 12, including but not limited to locations in DOE buildings, and including residences of students receiving home instruction and places where care for children is provided through DOE's LYFE program. DOE school settings include buildings where DOE and charter schools are co-located.

   "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.

   "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.

   "Proof of vaccination" means proof that an individual:
   a. Has been fully vaccinated;
   b. Has received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Has received the first dose of a two-dose vaccine, in which case they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

   "Staff of contractors of DOE or the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school

setting, a DOE building, or a charter school, and includes individuals working as independent contractors.

"Visitor" means an individual, not otherwise covered by Paragraph 1 of this Order, who will be present in a DOE school building, except that "visitor" does not include:

    a. Students attending school or school-related activities in a DOE school setting;

    b. Parents or guardians of students who are conducting student registration or for other purposes identified by DOE as essential to student education and unable to be completed remotely;

    c. Individuals entering a DOE school building for the limited purpose to deliver or pick up items;

    d. Individuals present in a DOE school building to make repairs at times when students are not present in the building;

    e. Individuals responding to an emergency, including police, fire, emergency medical services personnel, and others who need to enter the building to respond to or pick up a student experiencing an emergency;

    f. Individuals entering for the purpose of COVID-19 vaccination;

    g. Individuals who are not eligible to receive a COVID-19 vaccine because of their age; or

    h. Individuals entering for the purposes of voting or, pursuant to law, assisting or accompanying a voter or observing the election.

"Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting, DOE building, or charter school setting. It does not include individuals who enter such locations for the limited purpose to deliver or pick up items unless the individual is otherwise subject to this Order. It also does not include individuals present such locations to make repairs at times when students are not present in the building unless the individual is otherwise subject to this Order.

6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.

7. This Order shall be effective immediately and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated: <u>September 15, 2021</u>

                                                Dave A. Chokshi, M.D., MSc
                                                Commissioner

10

**SCHEINMAN ARBITRATION AND MEDIATION SERVICES**
--------------------------------------------- X
In the Matter of the Arbitration
                                              X
        between
                                              X
NEW YORK CITY DEPARTMENT OF EDUCATION                 Re:UFT.1690
                                              X
        and
                                              X
     Maureen Hurley                           X
--------------------------------------------- X


Issue:     Religious Exemption


Date of Hearing: October 1, 2021

                         **Award**

APPLICATION FOR EXEMPTION: GRANTED [ ]    DENIED [x ]   OTHER [ ]


The requirements necessary to establish a religious exemption
were not met, including no submission of written documentation
by a religious official.



*Sey M Eyer*
_____          October 1, 2021
**Arbitrator**                           _____
                                         **Date**

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X :
                                    :

MICHAEL KANE, et al.,                      :
                                    :

                   Plaintiffs,       :
                                    :    Case No. 21-cv-7863 (VEC) (Lead)
       - against -                     :

DE BLASIO et al.,                        :
                                    :

                   Defendants.      :
-------------------------------------------------------------X :
                                    :

MATTHEW KEIL, et al.                 :
                                    :

                   Plaintiffs,       :
                                    :    Case No. 21-cv-8773 (VEC)
       - against -                     :

THE CITY OF NEW YORK et al.,     :
                                    :

                   Defendants.      :
-------------------------------------------------------------X

### DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1.      My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2.      I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3.      I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

for statements which are made on information and belief and, as to those, I verily believe them.

4.    I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5.    I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6.    From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7.    I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8.    I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9.      When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10.     I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes.  The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11.     I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12.     I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13.     Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14.     I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15.     The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16.     Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17.     At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18.     Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

Case 1:24-cv-01664-NRM-LKE Document 1 Filed 03/06/24 Page 49 of 68 PageID #: 49

19.     I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.     In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: New York, New York
       June 3, 2022

_____

By: Betsy Combier

5

# EXHIBIT A

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮          Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>


PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine
mandate leave. It was placed there the day you went on the leave. Our central offices placed this code
on all employees who went on the leave. It will be removed once you are eligible to return to work.


Thanks,
Eric

NYS DEPARTMENT OF LABOR
PO BOX 15131
ALBANY NY 12212-5131

**NEW YORK STATE DEPARTMENT OF LABOR**
**NOTICE OF DETERMINATION TO CLAIMANT**

DATE MAILED: 2/24/2022

EMP: THE CITY SCHOOL DIST

CHRISTINE A OREILLY

PLEASE REFER TO THOSE ITEMS WHICH ARE SELECTED [X] BELOW AND READ THE BACK OF THIS FORM

1. [XX] NOTICE OF DETERMINATION

NO UNEMPLOYMENT INSURANCE BENEFITS WILL BE PAID TO YOU FOR THE PERIOD BEGIN-
NING 10/02/2021 UNTIL YOU HAVE SUBSEQUENTLY WORKED FOR AN EMPLOYER AND EARNED
AT LEAST 10 TIMES YOUR WEEKLY BENEFIT RATE. EMPLOYMENT AND EARNINGS FROM NON
COVERED, EXCLUDED OR SELF-EMPLOYMENT WILL NOT COUNT. YOUR WEEKLY BENEFIT RATE
IS $504.

**DETERMINATION**

YOU WERE DISCHARGED FOR MISCONDUCT IN CONNECTION WITH YOUR EMPLOYMENT WITH
THE ABOVE EMPLOYER. BECAUSE OF THIS DETERMINATION, YOU WILL NOT BE ABLE TO
USE YOUR WAGES FROM THIS EMPLOYER BEFORE 10/02/2021 TO COLLECT UNEMPLOYMENT
INSURANCE BENEFITS IN THE FUTURE.

**REASON**

YOU WERE DISCHARGED ON 10/18/21 BECAUSE YOU REFUSED TO GET THE COVID
19 VACCINATION AS REQUIRED BY YOUR EMPLOYER PER THE DECEMBER 2021 NYC VACCINE
MANDATE. YOUR EMPLOYER INFORMED YOU ON 9/23/21 THAT RECEIVING THIS
VACCINATION WAS REQUIRED TO CONTINUE YOUR EMPLOYMENT, AND MANDATORY
VACCINATIONS ARE PERMISSIBLE UNDER NYS LAW. YOU KNEW OR SHOULD HAVE KNOWN
THAT YOUR ACTIONS WOULD JEOPARDIZE YOUR JOB.

2. [ ] NOTICE OF DETERMINATION OF WILFUL MISREPRESENTATION

**REASON**

[ ] This notice supersedes the one sent you dated _____ which has been cancelled.

**TO PROTECT YOUR RIGHTS, READ THE BACK OF THIS FORM**

By: LABOR SERVICES REPRESENTATIVE
FOR THE COMMISSIONER OF LABOR

LO 412 (4-99)

CS Scanned with CamScanner
Scanned with CamScanner

NYS DEPARTMENT OF LABOR
PO BOX 15131
ALBANY NY 12212-5131

**NEW YORK STATE DEPARTMENT OF LABOR
NOTICE OF DETERMINATION TO CLAIMANT**

DATE MAILED: 4/29/2022

EMP: THE CITY SCHOOL DIST

HERENDYRA PEREYRA

PLEASE REFER TO THOSE ITEMS WHICH ARE SELECTED [X] BELOW AND READ THE BACK OF THIS FORM

1. [X] NOTICE OF DETERMINATION

NO UNEMPLOYMENT INSURANCE BENEFITS WILL BE PAID TO YOU FOR THE PERIOD BEGIN-
NING 10/02/2021 UNTIL YOU HAVE SUBSEQUENTLY WORKED FOR AN EMPLOYER AND EARNED
AT LEAST 10 TIMES YOUR WEEKLY BENEFIT RATE. EMPLOYMENT AND EARNINGS FROM NON
COVERED, EXCLUDED OR SELF-EMPLOYMENT WILL NOT COUNT. YOUR WEEKLY BENEFIT RATE
IS $504.

DETERMINATION

YOU WERE DISCHARGED FOR MISCONDUCT IN CONNECTION WITH YOUR EMPLOYMENT WITH
THE ABOVE EMPLOYER. BECAUSE OF THIS DETERMINATION, YOU WILL NOT BE ABLE TO
USE YOUR WAGES FROM THIS EMPLOYER BEFORE 10/02/2021 TO COLLECT UNEMPLOYMENT
INSURANCE BENEFITS IN THE FUTURE.

REASON

YOU WERE DISCHARGED ON 10/1/21 BECAUSE YOU REFUSED TO GET THE COVID
19 VACCINATION AS REQUIRED BY YOUR EMPLOYER. YOUR EMPLOYER INFORMED YOU
BEFORE YOUR DISCHARGE THAT RECEIVING THE COVID 19 VACCINATION WAS REQUIRED TO
CONTINUE YOUR EMPLOYMENT, AND MANDATORY COVID 19 VACCINATIONS ARE PERMISSIBLE
UNDER NYS LAW. YOU KNEW OR SHOULD HAVE KNOWN THAT YOUR ACTIONS WOULD
JEOPARDIZE YOUR JOB.

2. [ ] NOTICE OF DETERMINATION OF WILFUL MISREPRESENTATION

REASON

[ ] This notice supersedes the one sent you dated _____ which has been
cancelled.

TO PROTEST YOUR RIGHTS READ THE BACK OF THIS FORM    By: ___ LABOR SERVICES REPRESENTATIVE ___
FOR THE COMMISSIONER OF LABOR

NYS DEPARTMENT OF LABOR
PO BOX 15151
ALBANY NY 12212-5151

NEW YORK STATE DEPARTMENT OF LABOR
NOTICE OF DETERMINATION TO CLAIMANT
ALTERNATE DETERMINATION

DATE MAILED: 4/21/2022

EMP: THE CITY SCHOOL DIST

TONIANN MIRAGLIA

PLEASE REFER TO THOSE ITEMS WHICH ARE SELECTED [X] BELOW AND READ THE BACK OF THIS FORM

1. [XX] NOTICE OF DETERMINATION

NO UNEMPLOYMENT INSURANCE BENEFITS WILL BE PAID TO YOU FOR THE PERIOD BEGIN-
NING 10/02/2021 UNTIL YOU HAVE SUBSEQUENTLY WORKED FOR AN EMPLOYER AND EARNED
AT LEAST 10 TIMES YOUR WEEKLY BENEFIT RATE. EMPLOYMENT AND EARNINGS FROM NON
COVERED, EXCLUDED OR SELF-EMPLOYMENT WILL NOT COUNT. YOUR WEEKLY BENEFIT RATE
IS $415.

DETERMINATION

YOU WERE DISCHARGED FOR MISCONDUCT IN CONNECTION WITH YOUR EMPLOYMENT WITH
THE ABOVE EMPLOYER. BECAUSE OF THIS DETERMINATION, YOU WILL NOT BE ABLE TO
USE YOUR WAGES FROM THIS EMPLOYER BEFORE 10/02/2021 TO COLLECT UNEMPLOYMENT
INSURANCE BENEFITS IN THE FUTURE.

REASON

YOU WERE DISCHARGED BECAUSE ON 10/01/21 YOU REFUSED TO GET THE COVID
19 VACCINATION AS REQUIRED BY YOUR EMPLOYER. YOUR EMPLOYER INFORMED YOU IN
SEPTEMBER 2021 THAT RECEIVING THE COVID 19 VACCINATION WAS REQUIRED TO
CONTINUE YOUR EMPLOYMENT, AND MANDATORY COVID 19 VACCINATIONS ARE PERMISSIBLE
UNDER NYS LAW. YOU KNEW OR SHOULD HAVE KNOWN THAT YOUR ACTIONS WOULD
JEOPARDIZE YOUR JOB.

2. [ ] NOTICE OF DETERMINATION OF WILFUL MISREPRESENTATION

REASON

[ ] This notice supersedes the one sent you dated _____ which has been
cancelled.

TO PROTECT YOUR RIGHTS, READ THE BACK OF THIS FORM

BY: LABOR SERVICES REPRESENTATIVE
FOR THE COMMISSIONER OF LABOR

LO 412 (4-89)

# THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

| MARTIN H SCHER* | TEL 516-746-5040 | W SCOTT KERSHAW<br>COUNSEL |
| JONATHAN L SCHER** | | MICHAEL SCHILLINGER<br>COUNSEL |
| | FAX 516-746-5043 | |
| AUSTIN R GRAFF* | | ROLAND P BRINT<br>COUNSEL |
| | | ADAM GANG<br>COUNSEL |

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

July 7, 2022

ROBERT S NAYBERG

**BY FEDERAL EXPRESS AIRBILL NO. 777327941330
AND BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    Broecker, *et al.* v. New York City Department of Education, *et al.*
Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents the Plaintiffs in the above-referenced Action. The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon new documentary evidence obtained yesterday contained in the filing with the New York State Supreme Court, County of New York in a newly filed litigation entitled *In the Matter of the Application of the Board of Education of the City School District of the City of New York, et al. v. United Federation of Teachers, Local 2, AFT, AFL-CIO, et al.* under Index Number 451995/2022 ("DOE Proceeding"), regarding a dispute over a new arbitration decision by the Defendant Martin Scheinman ("Scheinman") materially and relevant to the pending Motions to Dismiss.

The *New York Post* reported yesterday on the DOE Proceeding which challenges Scheinman's Opinion and Award relating to 82 NYCDOE employees placed on leave without pay by the New York City Department of Education ("NYCDOE") for filing allegedly false vaccine cards. *See,* **Exhibit A,** a copy of the *New York Post* article.

Through due diligence, we were able to find the NYCDOE's filings in the DOE Proceeding, which included the new Opinion and Award issued by Scheinman that directly relates to the pending Motions to Dismiss in the above-referenced Action.

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 2 of 3

In Scheinman's newest Opinion and Award (**Exhibit B** ("Opinion and Award")), Scheinman states with respect to the UFT Arbitration Award ("Award"):

> ... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.
>
> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

**Exhibit B**, at page 10.

This language, written by Scheinman in the Opinion and Award supports three arguments previously made by the Plaintiffs in opposition to the Motions to Dismiss:

First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to place the Plaintiffs on leave without pay without due process, thereby violating the Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing." **Exhibit B**,

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 3 of 3

at page 10. Scheinman's own words establish that the Plaintiffs have stated a plausible claim for a violation of 42 U.S.C. § 1983 against the NYCDOE and Scheinman because as he admits, without his Award, the NYCDOE would have had to provide the Plaintiffs with due process before placing them on leave without pay, admitting that his actions caused the Plaintiffs to "suffer[ ] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Accordingly, the Scheinman Defendants' Motion to Dismiss must be denied.

Third, Scheinman confirms that it was him who "decided [leave without pay] was appropriate", which means that the NYCDOE and the UFT did not "continu[e] to negotiate until an 'agreement' [was] reached" but instead the resolution of the NYCDOE's and UFT's impasse was imposed by Scheinman in violation of N.Y. Civil Service Law § 209.3.(f). *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016). Scheinman's words confirm that the Award was a newly created and imposed remedy to the school district's impasse in negotiations with its union and therefore violated clear and unambiguous statutory language requiring a school district, like the NYCDOE, and its union, like the UFT, to overcome any impasse at the bargaining table and not through any other means. As a result, Scheinman's words support the Plaintiffs' argument that they have a plausible claim that the Award was promulgated and instituted without any statutory authority.

*******************

The Plaintiffs thank the Court for its courtesies in accepting the Plaintiffs' supplemental filing, considering the Opinion and Award only came into the Plaintiffs' possession yesterday and the Plaintiffs believed, as shown above, that the Opinion and Award is material and relevant to the pending Motions to Dismiss.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

H:\Martino, Michelle\Teacher Litigation\Motions\Motion # 002 - Motions to Dismiss\Opposition to the Motion\July 2022 Supplemental Letter 7-7-2022 letter to Court re Scheinman award.doc

# THE SCHER LAW FIRM, LLP

### ONE OLD COUNTRY ROAD, SUITE 385
### CARLE PLACE, NY 11514

MARTIN H SCHER*

JONATHAN L SCHER*'

———

AUSTIN R GRAFF*

———

* Also Admitted in District of Columbia
' Also Admitted in New Jersey

TEL  516-746-5040

———

FAX  516-746-5043

W  SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P  BRINT
COUNSEL

ADAM GANG
COUNSEL

———

ROBERT S  NAYBERG

July 7, 2022

**BY FEDERAL EXPRESS AIRBILL NO. 777327941330**
**AND BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Broecker, *et al.* v. New York City Department of Education, *et al.*
        Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents the Plaintiffs in the above-referenced Action.  The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon new documentary evidence obtained yesterday contained in the filing with the New York State Supreme Court, County of New York in a newly filed litigation entitled *In the Matter of the Application of the Board of Education of the City School District of the City of New York, et al. v. United Federation of Teachers, Local 2, AFT, AFL-CIO, et al.* under Index Number 451995/2022 ("DOE Proceeding"), regarding a dispute over a new arbitration decision by the Defendant Martin Scheinman ("Scheinman") materially and relevant to the pending Motions to Dismiss.

The *New York Post* reported yesterday on the DOE Proceeding which challenges Scheinman's Opinion and Award relating to 82 NYCDOE employees placed on leave without pay by the New York City Department of Education ("NYCDOE") for filing allegedly false vaccine cards.  *See*, **Exhibit A**, a copy of the *New York Post* article.

Through due diligence, we were able to find the NYCDOE's filings in the DOE Proceeding, which included the new Opinion and Award issued by Scheinman that directly relates to the pending Motions to Dismiss in the above-referenced Action.

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 2 of 3

In Scheinman's newest Opinion and Award (**Exhibit B** ("Opinion and Award")), Scheinman states with respect to the UFT Arbitration Award ("Award"):

> ... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.
>
> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

**Exhibit B**, at page 10.

This language, written by Scheinman in the Opinion and Award supports three arguments previously made by the Plaintiffs in opposition to the Motions to Dismiss:

First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to place the Plaintiffs on leave without pay without due process, thereby violating the Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing." **Exhibit B,**

# The Scher Law Firm, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 3 of 3

at page 10. Scheinman's own words establish that the Plaintiffs have stated a plausible claim for a violation of 42 U.S.C. § 1983 against the NYCDOE and Scheinman because as he admits, without his Award, the NYCDOE would have had to provide the Plaintiffs with due process before placing them on leave without pay, admitting that his actions caused the Plaintiffs to "suffer[ ] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Accordingly, the Scheinman Defendants' Motion to Dismiss must be denied.

Third, Scheinman confirms that it was him who "decided [leave without pay] was appropriate", which means that the NYCDOE and the UFT did not "continu[e] to negotiate until an 'agreement' [was] reached" but instead the resolution of the NYCDOE's and UFT's impasse was imposed by Scheinman in violation of N.Y. Civil Service Law § 209.3.(f). *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016). Scheinman's words confirm that the Award was a newly created and imposed remedy to the school district's impasse in negotiations with its union and therefore violated clear and unambiguous statutory language requiring a school district, like the NYCDOE, and its union, like the UFT, to overcome any impasse at the bargaining table and not through any other means. As a result, Scheinman's words support the Plaintiffs' argument that they have a plausible claim that the Award was promulgated and instituted without any statutory authority.

*******************

The Plaintiffs thank the Court for its courtesies in accepting the Plaintiffs' supplemental filing, considering the Opinion and Award only came into the Plaintiffs' possession yesterday and the Plaintiffs believed, as shown above, that the Opinion and Award is material and relevant to the pending Motions to Dismiss.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

H:\Martino, Michelle\Teacher Litigation\Motions\Motion # 002 - Motions to Dismiss\Opposition to the Motion\July 2022 Supplemental Letter 7-7-2022 letter to Court re Scheinman award.doc

# APPENDIX

# United States Court of Appeals
### FOR THE
## SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:    Pierre N. Leval,
           José A. Cabranes,
           Denny Chin,
                *Circuit Judges.*

---

Michael Kane, William Castro, Margaret Chu,
Heather Clark, Stephanie Di Capua, Robert Gladding,
Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad
Smith, Amaryllis Ruiz-Toro,

|                                  |               |
|----------------------------------|---------------|
| *Plaintiffs-Appellants,*         | **ORDER**     |
| v.                               | 21-2678-cv    |

Bill de Blasio, in his official capacity as Mayor of
the City of New York, David Chokshi, in his
official capacity of Health Commissioner of the
City of New York, New York City Department of
Education,

*Defendants-Appellees.*

---

Matthew Keil, John De Luca, Sasha Delgado,
Dennis Strk, Sarah Buzaglo,

|                                  |               |
|----------------------------------|---------------|
| *Plaintiffs-Appellants,*         |               |
| v.                               | 21-2711-cv    |

The City of New York, Board of Education of the
City School District of New York, David Chokshi, in
his Official Capacity of Health Commissioner of the
City of New York, Meisha Porter, in her Official

Capacity as Chancellor of the New York City
Department of Education,

*Defendants-Appellees.*

_____

      The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal having been heard at oral argument on November 10, 2021, and Defendants-Appellees ("Defendants") having represented to this Court that "the City is working toward making an opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

      **ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious accommodation by a central citywide panel consisting of representatives of the Department of Citywide Administrative Services, the City Commission on Human Rights, and the Office of the Corporation Counsel.
2. Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs.
3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be considered within two weeks of entry of this order. The citywide panel shall issue a determination on each request no later than two weeks after a plaintiff has submitted such information and materials. Within two business days of the entry of this order, Defendants shall inform plaintiffs' counsel how such information and materials should be transmitted to the citywide panel.
4. The deadline to opt-in to the extended leave program and execute any accompanying waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's employment for noncompliance with the vaccination requirement.
5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay running from the date they were placed on leave without pay.
6. This order is intended only to provide for temporary interim relief until the matter is considered by the merits panel of this court, which panel may entirely supersede these provisions for interim relief, and the parties are at liberty to advocate to the merits panel for alteration of these provisions. Unless the merits panel has previously entered a superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before the citywide panel, the parties shall inform the merits panel of the result of those proceedings and advise of any further relief being sought.

                                          FOR THE COURT:
                                          Catherine O'Hagan Wolfe, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                           :

MICHAEL KANE, et al.,                  :

                     Plaintiffs,      :

         - against -         :   Case No.  21-cv-7863 (VEC) (Lead)

BILL DE BLASIO, et al.,          :

                     Defendants.   :
-------------------------------------------------------------X

MATTHEW KEIL, et al.          :

                     Plaintiffs,      :

         - against -         :   Case No.  21-cv-8773 (VEC)

THE CITY OF NEW YORK, et al.,    :

                     Defendants.   :
-------------------------------------------------------------X

**DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1. I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2. I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3. Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4. Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5. Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

<u>**First False Assertion in Sullivan Declaration**</u>

6. The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code, the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7. Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8. Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a "**Problem** PR" notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

**Second False Assertion in Sullivan Declaration**

9. The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel Investigations has access to the problem code. To the contrary, any non-DOE school or official that wants to learn whether a former DOE employee has a problem code in his or her personnel file can easily do so in a variety of ways.  For example, non-DOE schools which offer DOE-funded positions have access to the DOE's payment portal, Galaxy, which allows them to see problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who were not hired at non-DOE schools because the non-DOE schools discovered their problem codes. Ex. 1, ¶¶ 14-18.  Simple phone calls work as well: a former UFT Special Representative explained that she used to "receive[] countless calls every week asking . . . if there was a problem code on an employee's personnel file" and that her UFT colleague next door would then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8.  In some instances, DOE representatives disclosed the problem codes to prospective employers from non-DOE schools calling to verify employment. Ex. 1, ¶ 19.  In one instance, a third-party HR representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant to NYS Department of Health Bureau of Early Intervention directives—informed a former DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because of the problem code in her personnel file).

**Further Evidence of Irreparable Harm**

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes

    in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are

    eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs face ongoing coercion to violate their religious beliefs and become vaccinated,

    in order to become employable – and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her

    getting vaccinated. ECF No. 162 ¶ 18.

Dated: New York, New York

       June 3, 2022                       Respectfully submitted,

                                        Barry Black
                                        Nelson Madden Black LLP
                                        *Attorney for Plaintiffs*
                                        475 Park Avenue South, Suite 2800
                                        New York, NY 10016
                                        (212) 382-4303

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Maureen Hurley          917-517-6379
18 Kisco Park Drive
Mount Kisco, N.Y. 10549

**(b)** County of Residence of First Listed Plaintiff   Westchester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

New York City Board of Education
of the City of New York
65 Court street Brooklyn, N.Y.

County of Residence of First Listed Defendant   Kings County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.   11201

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
    Plaintiff

☒ 3 Federal Question
    *(U.S. Government Not a Party)*

☐ 2 U.S. Government
    Defendant

☐ 4 Diversity
    *(Indicate Citizenship of Parties in Item III)*

*Does this action include a motion for temporary restraining order or order to show cause? Yes ☐ No ☐ "*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 USC Section 1983, 14th. Amendment Due Process

Brief description of cause:
Employer wrongfully terminated me without due process because of my religious beliefs.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $500,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, _____, counsel for _____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☐ monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐ the complaint seeks injunctive relief,

☐ the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

# NY-E DIVISION OF BUSINESS RULE 1(c)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?    ☐ Yes    ☐ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?    ☐ Yes    ☐ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?    ☐ Yes    ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received: _____.

If your answer to question 2 (b) is "No", does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? ☐ Yes ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☐ Yes    ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes    (If yes, please explain    ☐ No    _____.)

I certify the accuracy of all information provided above.

Signature: _____