REC'D IN PRO SE OFFICE
OCT 7 '24 PM2:58

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————————————x

**MAUREEN HURLEY,**

                              Plaintiff

                    **Docket No: 24–CV–01664(NRM)(LKE)-**

against-

# THE DEPARTMENT OF EDUCATION
# OF THE CITY OF NEW YORK,

                    Defendant

————————————————————x


# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


Maureen Hurley
18 Kisco Park Drive
Mount Kisco, NY 10549
917-517-6379
Miami64@earthlink.net


1

## PRELIMINARY STATEMENT

Plaintiff MAUREEN HURLEY ("Plaintiff") submits below her opposition to the Defendant's

Motion To Dismiss and argues that none of the arguments disputing Plaintiff's alleged

causes of action are rational or constitutionally sound. Defendant seems to support the claim

that Plaintiff failed to plead engagement in a protected activity. This is far from the truth.

Plaintiff, a tenured employee, has the unique constitutionally protected status of Tenure held

by New York State since the late 1800's, which gives her a Constitutionally protected

property right to her employment and to a due process procedure spelled out in detail in

Education Law §3020 and 3020-a.  See Complaint, ¶¶ 1,2,9,34,52-57.

Defendant wants this court to believe that an experimental, temporary, City-ordered

temporary Emergency COVID mandate could trample and throw out a Constitutional right.

This makes no sense. Other points made by Defendant are equally irrational: (1) that the

CVM changed Plaintiff's terms of employment, was not disciplinary, and if she did not get

vaccinated against COVID she could be, and was, terminated without a due process 3020-a

hearing; (2) that the Citywide Panel replaced 3020-a arbitration; (3) that telling Plaintiff she

would not get an accommodation because this would be an "undue burden" without

explanation or particulars satisfied the heightened standards of Groff v DeJoy; (4) that

Plaintiff failed to allege her religion was motivation for any of the conduct alleged in the

Complaint; (5) that Plaintiff failed to plausibly allege facts that demonstrate that the

"Problem Code" did not reach stigma plus discrimination and defamation. Plaintiff disputes

the arguments made in every point made in Defendant's papers.

2

Plaintiff requests that each and every argument and cause of action as well as her background facts and Exhibits in her Complaint and added to this Opposition, be incorporated to these arguments in full by reference. The Exhibits already submitted to this Court in support of her causes of action are: EXHIBITS A-J. Attached to this Opposition are EXHIBITS K-R.

The "Problem Code", which was placed on Plaintiff's personnel file without her knowledge on October 4, 2021, made the LWOP into a disciplinary action accusing Plaintiff and finding guilt of misconduct. This Problem Code is mentioned in Plaintiff's Complaint ¶¶ 3,4,34,35,52; Exhibits H, I (and I(a)), J. None of Plaintiff's claims are conclusory and all are fact-based.

Plaintiff's Complaint cites causes of action against the Defendant who, under color of law, denied her the due process she was entitled to under 42 U.S.C. § 1983, First and Fourteenth Amendment of the United States Constitution and Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging that in neglecting to give her an Education Law § 3020-a due process arbitration hearing and a reasonable accommodation allowing her to keep her job while unvaccinated with the COVID Vaccine, Defendant violated the Free Exercise Clause of the United States Constitution, discriminated against her religion, and violated Constitutional law held in Title VII, Human Rights Law, Education Law §§ 3020 and 3020-a as well as the heightened standard in Groff v DeJoy, U.S. Supreme Court No. 22-174 (Jan. 13, 2023). (See **EXHIBIT K,** American Bar Association on Groff v Dejoy; and **EXHIBIT L,** Rights of Tenured Employees).

In sum, Plaintiff was fired for holding onto her sincere religious beliefs without due process. Defendant's Motion To Dismiss is a thinly-veiled attempt to reframe Plaintiff's case into

3

Case 1:24-cv-01664-NRM-LKE  Document 22  Filed 11/01/24  Page 4 of 109 PageID #:
Case 1:24-cv-01664-NRM-LKE  Document 17  Filed 10/07/24  Page 4 of 109 PageID #: 103
268

something that it is not and redirect this Court's attention from the egregious and unscrupulous

actions and behaviors of the Defendant. Defendant's papers ignore the four corners of Plaintiff's

Complaint and disregard the facts in the detailed factual allegations which are to be accepted as

true. Defendant's Motion To Dismiss must be dismissed in its' entirety.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss brought pursuant to Rule 12(b)(6), the

pleadings must contain enough facts to state a claim to relief that is plausible on its face."

Dellatte v. Great Neck Union Free Sch. Dist., No. 10-cv-4348, 2012 WL 164078, at *1 (2d

Cir. Jan. 20, 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))

(internal quotation marks omitted). The court must accept all factual allegations in the

complaint and draw all reasonable inferences in the plaintiff's favor." Ruotolo v. City of New

York, 514 F.3d 184, 188 (2d Cir. 2008). Where the court finds well-pleaded factual allegations,

it should assume their veracity and determine whether they plausibly give rise to an entitlement to

relief. Iqbal, 129 S. Ct. at 1950. In ruling on a motion to dismiss, a court may consider the facts

asserted within the four corners of the complaint together with the documents attached to the

complaint as exhibits and any documents incorporated in the complaint by reference. Peter F.

Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010).

## PLAINTIFF HAS PLED SUFFICIENT FACTS TO SUPPORT HER CLAIM OF DISCRIMINATION PURSUANT TO TITLE VII, FIRST AMENDMENT, FREE EXERCISE CLAUSE, NYCHRL AND NYSHRL

4

The criteria for discrimination under a prima facie Title VII claim includes: Plaintiff (1) is a member of a protected class; (2) was qualified for her position and satisfactorily performed her duties; (3) suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. In this matter, a review of Plaintiff's Exhibits attached to her Complaint and here shows conclusively that Plaintiff has a sincere religious belief in the harm to come to her if she got vaccinated with the COVID vaccine. Her facts are visible, credible and valid. But she did not have to "prove" her beliefs in the first place. The burden, after she gave her proof, falls onto the Defendant to prove that they had an undue burden in giving her an accommodation to the vaccine. This standard, key to this case, of making an effort to accommodate Plaintiff as a tenured teacher unable to be vaccinated was never attempted in any form. The Defendant rests on "we have an undue burden" even in the face of the latest ruling, namely Groff v DeJoy (see U.S. Supreme Court No. 22-174 (Jan. 13, 2023), Complaint, and Ex. K).

In *Does 1-11 v. Board of Regents of University of Colorado*, 100 F.4th 1251 (10th Cir. 2024), the Tenth Circuit held that state university employees were likely to succeed on Free Exercise and Establishment Clause claims and entitled to preliminary injunction against denials of religious accommodation to a vaccine mandate. In *Does*, the Court affirmed that a vaccine mandate is "in no way generally applicable" when government evaluates employee religious beliefs case-by-case, allowing "individualized exemptions" to applicants whose beliefs, in the government's discretion, merit accommodation. Additionally in that case the Defendant adopted a facially discriminatory policy and then after litigation, offered a so-called "remedial" policy. Plaintiff argues here that the hostility by the Defendant toward the Plaintiff in this matter defeats neutrality at every level of review, which suggests pre-textual discrimination. See **EXHIBIT M**,

the November 28, 2021 ORDER in Kane v de Blasio; Keil v City of New York, 21-2678-cv; 21-2711-cv). In this ORDER the Judge cites Arbitrator Scheinman as writing, "The Arbitration Award states that its procedures are to operate "[a]s an alternative to any statutory reasonable accommodation process." And then in a footnote on p. 11 states:

7 We observe that this additional language is superfluous as a legal matter, at least as to religious accommodation under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e, *et seq.* The Commissioner, a City official, could not override Title VII, a federal law requiring employers to offer reasonable accommodations that do not result in undue hardship on the employer. *See* U.S. CONST. art. VI, cl. 2 (Supremacy Clause). Thus, even under the original Vaccine Mandate, DOE employees were legally entitled to request accommodations."

Then the Judge wrote, " Plaintiffs have established their entitlement to preliminary relief on the narrow ground that the procedures employed to assess their religious accommodation claims were likely constitutionally infirm as applied to them" p. 4; and, after a motions panel heard oral argument on November 10 2021concerning an emergency injunction by the Plaintiffs, the City conceded that the Accommodation Standards are "constitutionally suspect". p.12, Ex. M.

The Court of Appeals then heard from the Defendant – same as in this case – that the Defendant labelled anyone who did not get vaccinated by Sept. 5, 2022 were "intentionally" waiving their rights to challenge their so-called "voluntary resignation."

Plaintiff never voluntarily resigned. She was forced into a wrongful termination without healthcare or salary, without due process. She was punished for her "misconduct". The Court of Appeals sent the case (Kane-Keil) to the District Court with an order that the City give all unvaccinated employees at the NYC Department of Education another chance to get an accommodation . The Citywide Panel was set up, and this secret group was as constitutionally unsound as Scheinman's arbitrators.

6

Plaintiff and her plea for an exemption from the vaccine was never heard by anyone. This is not in compliance with the 14th Amendment Due Process Clause or controlling law, Education Law §3020-a. In fact, before Eric Eichenholtz' deposition was made public in social media in the case New Yorkers For Religious Liberty, Inc., et al., v The City of New York, et al., NYED Docket #2022-cv-00752, nothing was known at all about "The Citywide Panel". This is most certainly discriminatory, and bad faith. An inference that Plaintiff was discriminated against and set up to fail must be made.

Title VII of the Civil Rights Act of 1964 addresses religious freedom. The act prohibits employers from discriminating against its employees because of their sincerely held religious beliefs. Title 42 United States Code section 2000e-2(a) states: ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin").

The Supreme Court case the EEOC v. Abercrombie & Fitch Stores, Inc. 575 U.S. 768 (2015) concluded that "An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions. Title VII contains no knowledge requirement. Furthermore, Title VII's definition of religion clearly indicates that failure-to-accommodate challenges can be brought as disparate-treatment claims. And Title VII gives favored treatment to religious practices, rather than demanding that religious practices be treated no worse than other practices. Id., 575 (slip opinion pages 2–7).

Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief." Moreover, as the EEOC has made clear, Title VII's protections also extend nonreligious

7

beliefs if related to morality, ultimate ideas about life, purpose, and death. See EEOC, Questions

and Answers: Religious Discrimination in the Workplace (June 7, 2008), Questions and

Answers: Religious Discrimination in the Workplace | U.S. Equal Employment Opportunity

Commission (eeoc.gov) ("Title VII's protections also extend to those who are discriminated

against or need accommodation because they profess no religious beliefs . . . . Religious beliefs

include theistic beliefs, for example, those that include a belief in God as well as non-theistic

'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength

of traditional religious views.' Although courts generally resolve doubts about particular beliefs

in favor of finding that they are religious, beliefs are not protected merely because they are

strongly held. Rather, religion typically concerns 'ultimate ideas' about 'life, purpose, and

death'").

The First Amendment to the Constitution protects Plaintiff's free exercise of religion and

mandates state accommodation for members of religious groups who object to the vaccinations

on religious grounds. The Free Exercise Clause recognizes and guarantees Americans the "right

to believe and profess whatever religious doctrine [they] desire." Employment Division,

Department of Human Resources of Oregon v. Smith, 494 U.S. 872, 877 (1990).

The Free Exercise Clause also ascertains that government may not attempt to regulate religious

beliefs, compel religious beliefs, or punish religious beliefs. Sherbert v. Verner, 374 U.S. 398,

402 (1963); Torcaso v. Watkins, 367 U.S. 488, 492–93, 495 (1961); and United States v. Ballard,

322 U.S. 78, 86 (1944).

Government may not discriminate against or impose special burdens upon individuals because of

their religious beliefs or status. Plaintiff argues that the "criteria" mystery (i.e. details as to what

the criteria are) of the SAMS Panel and the Citywide Panel show animus and discrimination

8

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 9 of 109 PageID #:
273
Case 1:24-cv-01664-NRM-LKE    Document 17    Filed 10/07/24    Page 9 of 109 PageID #: 108

against the unvaccinated Plaintiff because anything could be used against her. She was not told why a person was granted a religious exemption or, like her, denied. What made her different in a class of folk already in a "different" – but unknown category?  See Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 877; McDaniel v. Paty, 435 U.S. 618, 627 (1978).

The Constitution's protection against government regulation of religious belief is absolute; it is not subject to limitation or balancing against the interests of the government. Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 877; Sherbert v. Verner, 374 U.S. 402 (1963). Robert H. Jackson, stated:"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith herein.". West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943).

The Free Exercise Clause protects beliefs rooted in religion, even if such beliefs are not mandated by a particular religious organization or shared among adherents of a particular religious tradition. Frazee v. Illinois Dept. of Employment Security, 489 U.S. 829, 833–34 (1989). As the Supreme Court has repeatedly counseled, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Church of the Lukumi Babalu Aye v. Hialeah, 508 U.S. 520, 531 (1993) They must merely be "sincerely held." Frazee v. Illinois Dept. of Employment Security, 489 U.S. 834 (1989). Importantly, the protections guaranteed by the Free Exercise Clause also extend to acts undertaken in accordance with such sincerely held beliefs. That conclusion flows from the plain text of the First Amendment, which guarantees the freedom to "exercise" religion, not just the

9

freedom to ''believe'' in religion. Employment Div. v. Smith, 494 U.S. 877 (1990); Thomas v.
Review Board of the Indiana Employment Security Division, 450 U.S. 716 (1990); McDaniel v.
Paty, 435 U.S. 627 (1978; Sherbert v. Verner, 374 U.S. 403–04 (1963); and Wisconsin v. Yoder,
406 U.S. 205, 219–20 (1972).

The Free Exercise Clause protects against "indirect coercion or penalties on the free exercise of
religion, not just outright prohibitions." Lyng vs Northwest Indian Cemetery Protection
Association , 485 U. S., 450 (1988). ''It is too late in the day to doubt that the liberties of religion
and expression may be infringed by the denial of or placing of conditions upon a benefit or
privilege.'' (Sherbert v. Verner, 374 U.S. 404 (1963). Because a law cannot have as its official
''object or purpose . . . the suppression of religion or religious conduct,'' a law must ensure that
it is actually neutral and of general applicability. Church, 533-534.

A law is not neutral if it singles out particular religious conduct for adverse treatment, treats the
same conduct as lawful when undertaken for secular reasons but unlawful when undertaken for
religious reasons, applies uncalled for restrictions on religious conduct''; or ''accomplishes . . . a
'religious gerrymander,' an impermissible attempt to target [certain individuals] and their
religious practices.'' Id. 538.

A law is not generally applicable if ''in a selective manner [it] impose[s] burdens only on
conduct motivated by religious belief,'' Id 543., including by ''fail[ing] to prohibit nonreligious
conduct that endangers [its] interests in a similar or greater degree than . . . does'' the prohibited
conduct, id., or enables, expressly or de facto, ''a system of individualized exemptions,'' as
discussed in Employment Division, Department of Human Resources of Oregon v. Smith, 494
U.S. 884 (1990); see Church, 537. ''Neutrality and general applicability are interrelated, . . .[and]

failure to satisfy one requirement is a likely indication that the other has not been satisfied." Id, 531.

A law that disqualifies a religious person or organization from a right to compete for a public benefit—including a grant or contract—because of the person's religious character is neither neutral nor generally applicable. See Trinity Lutheran Church of Columbia, Inc. v. Comer, Director, Missouri Department of Natural Resources, 582 U.S. (slip opinion pages 9–11) (2017). Nonetheless, the requirements of neutral and general applicability are separate, and any law burdening religious practice that fails one or both must be subjected to strict scrutiny, Church, 546. [O]nly in rare cases" will a law survive this level of scrutiny. Id 546.

Of course, even when a law is neutral and generally applicable, government may run afoul of the Free Exercise Clause if it interprets or applies the law in a manner that discriminates against religious observance and practice. The Free Exercise Clause, much like the Free Speech Clause, requires equal treatment of religious adherents. Trinity Lutheran Church of Columbia, Inc. v. Comer 582 U.S. (slip opinion. Page 6) (2017); see also Good News Club v. Milford Central Sch., 533 U.S. 98, 114 (2001), and Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 837, 841 (1995)).

The Defendant's Motion To Dismiss must be denied.

## PLAINTIFF HAS SUFFICIENTLY PLED DEFENDANT'S FAILURE TO ACCOMMODATE UNDER TITLE VII

The following criteria is used for alleging a failure to accommodate under Title VII:

While under the CHRL, in order to adequately allege a failure to accommodate a religious belief claim Plaintiff must allege that "(1) she has a bona fide religious belief that conflicts with an employment requirement; (2) she informed the employer of his belief; and (3) she was disciplined for failing to comply with the conflicting employment requirement." Marte

11

v. Monetefiore Med. Ctr., No. 22-CV-03491(CM), 2022 U.S. Dist. LEXIS 186884, at *19 (S.D.N.Y. Oct. 12, 2022).

In this matter Plaintiff has satisfied this criteria. Also, Human Rights Law says that the employer must give a reasonable accommodation even if claiming an undue burden. An explanation for the alleged "undue burden" was never given to Plaintiff in violation of Groff v Dejoy: an employer that denies a religious accommodation [must] show that the burden of granting the religious accommodation would result in "substantial increased costs in relation to the conduct of its particular business."…. the Court reasoned that undue hardship "means something very different from a burden that is merely more than de minimis, i.e., something that is 'very small or trifling.'" The Court also reviewed the 1977 decision in Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977), which has been interpreted as holding undue hardship means de minimis cost. Furthermore,

"With respect to the new "substantial increased costs" standard, the Court explained that employers must take into account "all relevant factors in the case at hand, including the particular accommodation at issue and their practical impact in light of the nature, size, and operating cost of an employer."

The Defendant has blatantly ignored all the laws demanding a reasonable accommodation for Plaintiff with the meaningless get out of jail free card claiming "undue burden". EX. K. The Defendant never engaged in a corporative dialogue with the Petitioner regarding an accommodation to satisfy the requisites of his job, in direct violation of the New York City Human Rights Law NYC Admin Code 8-107 (28)(e): "…potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity."

12

Under federal law, the City of New York must make reasonable accommodations for religious practices of its employees, unless the accommodation results in undue hardship on the conduct of the employer's business. *Baker* v. *The Home Depot*, 445 F.3d 541 (2d Cir. 2006). Furthermore, the City of New York must reasonably accommodate an employee who's sincerely held religious belief, practice, or observance conflicts with a work requirement, unless the accommodation would create an undue hardship or present a direct threat. *See NYC Admin. Code* 8-107(3).

The Defendant never offered any reasonable accommodation to the Plaintiff that would both satisfy the Plaintiff's sincere religious beliefs and the Defendant's concern for "a safe environment for in-person learning." *Ansonia Bd. ofEduc. v. Philbrook*, 479 U.S. 60, 68-69 (1986).

Finally, agency personnel who do not interact in a cooperative dialogue and then make decisions that do not accommodate the employee, fail to comply with statutory authority. Simply citing an "undue hardship" is not an explanation for denial of a reasonable accommodation.

The Defendant in their Motion To Dismiss **never offered a single document or factual evidence that showed any effort towards accommodating Plaintiff ever took place.**

(*emphasis added*)

Here, in this case, the Defendant never gave any rational basis to deny her religious exemption request and any accommodation.  The Department totally failed in this duty.

 The remedy for the destruction of Federal rights seen here could have been to place anyone who had a sincere religious belief that prohibited him/her from being vaccinated against COVID into an alternate site which the Defendants called "Reassignment", or  the "Rubber Room". See

**The "Gotcha Squad" and the New York City Rubber Rooms**

13

**https://nycrubberroomreporter.blogspot.com/2009/03/gotcha-squad-and-new-york-city-rubber.html**

Indeed, the Defendant deceived the Court and the EEOC in their Position Statement and in their

Motion To Dismiss by failing to acknowledge their well-known accommodations called the

"Rubber Rooms" or Reassignment rooms set aside for employees who are removed from their

jobs but not taken off salary. See **EXHIBITS P,R,** and the blog "NYC Rubber Room Reporter

and ATR Connect" and website "ADVOCATZ.com." Exhibit P is the Reassignment Guide for a

NYCDOE employee who has been assigned a home-based reassignment placement after being

told not to show up at the school in October 2022. These reassignments have been open to

employees placed there for the past 22 years, and they remain open today, Only now most

reassigned employees are at home, on salary. Plaintiff should be one of them.

The sob story given by the Defendant about "undue burden" is simply, and outrageously, false

and never suggests an accommodation. The reason this was not offered. Defendant and the City

of New York want to get rid of tenure, but they have been unsuccessful. That is the primary

reason. By terminating anyone who could not , would not, or did not get the COVID vaccination

by October 2021, and then being removed off of salary illegally and then terminated without a

hearing, Martin Scheinman could reduce the budget of the Defendant. He said this was not

disciplinary, yet this was never supported by any evidence. No explanation about how this was

not disciplinary has ever been given to the public. It is enough just for Martin Scheinman to say

it is not disciplinary and everyone is supposed to go along with that.

 See Matter of Gould v Board of Educ., Sewanaka Cent. High Sch. Dist., 81 NY2d 446 (1993) (A

tenured teacher has a protected property interest in the position and a right to retain it subject to

being discharged for cause in accordance with the procedures set forth in the Education Law

3020-a). See Kambouris et al., v New York City Department of Education of the City of New

York, et al. Index No. 518863/2022 (Decision/Order dated 1/05/2023). Tenure status implicates

the Fifth Amendment: "Knick v. Township of Scott, 139 S. Ct. 2162 (2019)

"A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it. That does  not mean that the government must provide compensation in advance of a taking or risk having its action invalidated: So long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities. But it does mean that the property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under § 1983 at that time."

The Motion To Dismiss must be denied in full.

## PLAINTIFF'S COMPLAINT PROPERLY PLEADS A FIRST AMENDMENT RETALIATION CLAIM

To set forth a prima facie case for First Amendment retaliation under Section 1983, Plaintiff

must allege that (1) her right to her religious beliefs were denied to her; (2) she suffered an

adverse employment action; and (3) a causal relationship between the two existed in that her

religion/religious beliefs was a substantial or motivating factor for the adverse employment

action. Gronowski v. Spencer, 424 F.3d 285 (2d Cir. 2005). Plaintiff properly made those

allegations in her Complaint.

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained

within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67,

71 (2d Cir. 1998). However, the Court may consider "any written instrument attached to [the

complaint] as an exhibit, materials incorporated in it by reference, and documents that, although

not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d

Cir. 2004) (internal quotation marks and citation omitted); see also Chambers v. Time Warner,

15

Inc., 282 F.3d 147, 153 (2d Cir. 2002) (observing that a document is "integral" if the complaint

"relies heavily upon its terms and effect") (internal quotation marks and citation omitted).

Plaintiff demonstrated in her Complaint that she engaged in speech protected by the First

Amendment, namely discussing her religious beliefs, that she suffered an adverse employment

action, and that a causal connection between the two existed, "in that the speech [about her

religion] was a substantial or motivating factor for the adverse employment action." Burkybile v.

Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist., 411 F.3d 306, 313 (2d. Cir. 2005).

The threshold inquiry in any First Amendment retaliation case is whether the employee was

speaking as a citizen on a matter of public concern. Woodlock v. Orange Ulster B.O.C.E.S., 281

F. App 'x 66, 68 (2d. Cir. 2008) (quoting Garcetti v Ceballos, 547 U.S. 410, 418 (2006)).

Plaintiff's speech is constitutionally protected if she was speaking both (1) as a citizen rather

than pursuant to her employment duties, and (2) on a matter of public concern. Dorcely v.

Wyandanch Union Free Sch. Dist., 665 F. Supp. 2d 178, 205 (E.D.N.Y. 2009) (quoting Garcetti

v. Ceballos, 547 U.S. 410, 418 (2006)). She was and is protected.

On a motion to dismiss, a reasonable inference of a causal connection is all that is required. See

Posr v. Court Officer Shield # 207, 180 F.3d 409, 418 (2d Cir.1999) ("[T]he plaintiffs pleading

need not clearly establish that the Defendant harbored retaliatory intent. It is sufficient to allege

facts which could reasonably support an inference to that effect."); Rivera v. Cmty. Sch. Dist.

Nine, 145 F.Supp.2d 302,309 (S.D.N.Y.2001). This "can be established either indirectly by

means of circumstantial evidence, for example, by showing that the protected activity was

followed by adverse treatment in employment, or directly by evidence of retaliatory animus."

Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999). A court must "exercise its judgment about

the permissible inferences that can be drawn from temporal proximity in the context of [each]

16

providing services that burden their religious beliefs." Presumably, these categories do not
include the City Agencies such as the NYC Education Department, police, fire, etc.

But the Court of Appeals saw this ruse of Mr. Scheinman and threw out the September 10, 2021
Award. Unfortunately, the Citywide Panel decisions were equally constitutionally suspect. See
**EXHIBIT N**, a Decision by the Citywide Panel, where no effort to accommodate was made,
only the general "undue burden" argument. Another useless statement that came from the Panel
was "Did not meet the criteria" for an accommodation. The Citywide Panel had no testimony by
any Applicant, and kept the people who made decisions secret as well. This constitutes a
violation of due process 14th Amendment rights held by Education Law 3020-a. Plaintiff was
denied her due process.

The Problem Code exposed the lies given by Martin Scheinman in his September 10, 2021
Impact Bargaining Award, namely that the LWOP and termination of employees of the NYC
DOE *were* disciplinary, because the consequences for anyone not handing in a valid COVID
Vaccination card on October 4, 2021 were so grave: punishment and disciplinary in effect and
intent. Plaintiff was punished for misconduct without any due process.

The Court in DOES (10th Cir.) stated that:

""a government policy that requires an intrusive inquiry into the validity of
religious beliefs violates the Establishment Clause regardless of any
purported government interest." 100 F.4th at 1268."

Plaintiff, a stellar tenured employee without any disciplinary action against her in her teaching
career, was suddenly put on a Leave Without Pay (LWOP), her fingerprints were flagged by a
Problem Code which meant she was blocked from ever getting a job with the Defendant due to
the stigma now attached to her file, solely because of her religious beliefs. This Problem Code is

19

not secret, and a principal and others who inquire about a DOE employee are given the

paperwork. See **EXHIBITS H, I, J .** Defendant punished Plaintiff for believing that the COVID

vaccine conflicted with what she could put into her body, and therefore she could not get

vaccinated. The Municipal Labor Committee (MLC) is a Group in which all the unions are

represented in New York City. In a letter dated August 12, 2021, Chairman Harry Nespoli wrote

about the disciplinary process of the COVID mandate. See **EXHIBIT Q.** The claim that LWOP

was not disciplinary was and is untrue. However, the argument about the lack of due process

under the Scheinman Award is moot. The Court of Appeals in Kane-Keil threw it out.

An additional proof of the "misconduct" that the Defendant was pushing as "not disciplinary"

can be seen in the decisions made for NYC DOE unvaccinated and terminated employees who

requested unemployment from the Department of Labor. The employees of the NYCDOE were

denied unemployment due to "misconduct". **EXHIBIT J.** Who represented the terminated

tenured employees at the Appeal hearing? None other than the insurance Company "Experian",

and the Company used the problem Code to deny all applicants because of it. Plaintiff argues

that she has pled facts sufficient to prove *more* than an inference of discrimination against her

employer, the Defendant, and she does not rely on simple conclusions. It's a fact that

Scheinman's September 10 Award discriminated against all tenured teachers who applied for

religious exemptions, but held out on discriminating against a select few.

This action shows invidious discriminatory animus within a disciplinary policy put forth by the

Defendant as valid under the law. How so? Plaintiff does not belong to the Christian Scientist

faith, and her religious beliefs (Catholic) are personal. She did not fit into the Scheinman criteria

for getting a religious "exemption". Clearly the criteria prescribed by the Award is

discriminatory, and intentionally so.

20

particular case [ ]," Espinal v. Goard. 558 F.3d 119, 129 (2d Cir.2009). Where a Plaintiff asserts

enough direct evidence of retaliatory animus to create a triable question of fact on the issue of a

causal connection as here, a longer lapse between the protected speech and the adverse

employment action Defendants not necessarily "conclusively establish lack of causation." See

Mandel v. County of Suffolk, 316 F.3d 368, 384 (2nd Cir. 2003).

Reading the complaint broadly and drawing all reasonable inferences in Plaintiff's favor, the

complaint alleges sufficient facts to state a plausible claim for retaliation.


## PLAINTIFF HAS ADEQUATELY PLED A STIGMA PLUS CLAIM AND FRAUD IN THE INDUCEMENT

The fraud of Arbitrator Scheinman cannot be ignored. He deliberately threw away Constitutional

procedures of due process for Tenured employees in order to make sure every employee was

terminated who dared to challenge the COVID Mandate. Also, he ruled that everyone had to ask

for an "exception", when under Title VII there is no mention of any allowable 'exception', only

an "accommodation". So, Mr. Scheinman made up an alternate route for the Appeals that he

knew would not work, then denied everyone. He, and the Defendant, wanted to stay in control

and did not want any arbitrator at a §3020-a not terminate an employee who remained

unvaccinated. So when Arbitrator Martin Scheinman issued his Award on September 10 2021,

ordering every NYC Department of Education employee to get vaccinated with the COVID

vaccine and hand in a valid card by October 4, 2021, or you would be put on Leave Without Pay

(LWOP) and subsequently terminated and your health insurance taken away, he created this

lawless employment ruling out of thin air. Mr. Scheinman then hired his company, Scheinman

Arbitration and Mediation Services, to arbitrate all the lawless exemption appeals.

17

On June 27, 2022 Scheinman issued a new Award in which he apologized to all that he had

created the LWOP for no reason other that he thought it was right at the time. He deliberately

discarded the Constitutional 3020-a arbitration process that he wrote into the UFT contract when

he was on the Negotiation Board. Article 21G describes the process in the Law, when can be

read in EXHIBIT L. Rights of Tenured Employees. See also the Scheinman June 27, 2022

Award, **EXHIBIT O.**

The Kane-Keil Panel also sounded the alarm on the fraudulent use of "religious exemption" in

Scheinman's Award:

"₅ At times, the parties appear to use the terms "exemption" and "accommodation"
interchangeably. As we use those terms, however, exemptions are different from
accommodations. The Vaccine Mandate includes *exemptions* for certain objectively
defined categories of people, like delivery workers. Those who are exempted from the
Mandate are not subject to its terms. By contrast, employees who *are* subject to the
Mandate can request accommodations under Title VII and analogous state and city law.
*See infra* at 43–44 (discussing Title VII's requirement to provide reasonable
accommodations); *see also We The Patriots USA, Inc. v. Hochul*, 2021 WL 5276624, at *1 (2d
Cir. Nov. 12, 2021)."

In fact, when researching **Religious Exemption Laws**, New York State has no religious

exemption law related to the provision of services. What states don't allow religious exemptions?

**Currently, only six states in the country do not allow religious exemptions:**
- California.
- Maine.
- Mississippi.
- New York.
- West Virginia.
- Connecticut.

There is a footnote to this, namely that "Targeted state religious exemption laws permit people,

churches, non-profit organizations, and sometimes corporations to seek exemptions from

Defendant committed fraud on the employees who applied for religious exemptions starting in 2020, when the Defendant made a secret deal with the UFT to change the terms of employment as well as the articles in the contract (CBA) for employees without these issues ever being brought to any employee, including Plaintiff. **(Exhibit Q).** Defendant then gave, reluctantly, false hope to more than 1000 employees as they were told they could apply for religious exemptions from first the Scheinman SAMS Arbitrators, and then the Citywide Panel. Both Panels were bogus in terms of state and Federal Law. Denials were pre-set and pre-textual.. Additionally, Scheinman's September 10 2021 Award was a fraud because he wrote that LWOP, the wholesale, unilateral suspension on October 4, 2021 of tenured and untenured educators who could not/did not/would not get the COVID vaccine, was "not" disciplinary, but it most certainly was disciplinary because of the very secret placement of all unvaccinated employees onto the problem code. See **Exhibits H:** Barry Black Declaration; **I** Betsy Combier's Declaration and Eric Amato's email; Ex. P. UI denials due to "misconduct";  Furthermore, Defendant is deliberately misleading when they insisted that the Problem Code is not available to anyone outside the DOE. It most certainly is. See:

**The New York City Department of Education's "Problem Code" is an Unlawful Flag on an Employee's Fingerprints,** Parentadvocates.org,
https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8884
**In NYC the Absent Teacher Reserve and The Rubber Room Are Both Strategies For Unlawful Denial of Tenure Job Protections**
https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8958
**The Problem Code, Fingerprints, The FBI, and the COVID Mandate**
**NYC Rubber Room Reporter, February 12, 2023**
https://nycrubberroomreporter.blogspot.com/2023/02/the-problem-code-and-covid-mandate.html
**The Hidden Rubber Rooms of New York City Create a Fiscal Nightmare**
https://nycrubberroomreporter.blogspot.com/2020/08/the-hidden-rubber-rooms-of-new-york.html

21

## CONCLUSION

Where a property right in continued employment exists, such as New York State's tenure system, the recipient of such a right may not be deprived without due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 [1985]. Plaintiff has successfully pled in her Complaint that the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of Education Law §3020, §3020-a, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

The claims contained within the four corners of Plaintiff's Complaint go straight to the heart of a substantive due process claim. The very idea that a person's livelihood through tenure, which is supposed to be determined through a fair evaluation of an educator's job performance, is denied in open and blatant retaliation for requesting an accommodation – i.e. a "rubber room" or home assignment during the pandemic after not getting the COVID vaccine - is outrageous and unconstitutional in the widest sense. There is no reasonable interpretation of the actions by Defendant alleged within the Complaint that could or should be excused as negligence or mistake.

Plaintiff's termination was pre-planned and part of a strategy to deny state and Federal laws and rights to certain tenured employees of the Department.. Even if such a definition is up for debate, it is inapplicable in a motion to dismiss stage and a simple reading of the Complaint amply demonstrates that conscience shocking behavior has been sufficiently alleged to permit this cause of action to continue through to discovery as a matter of law.

22

**WHEREFORE**, the Plaintiff demands judgment against the Defendant for all compensatory,

and any other damages permitted by law pursuant to the above referenced causes of action. It is

respectfully requested that this Court dismiss the Defendant's Motion To Dismiss in its entirety,

and grant Plaintiff any other relief to which he is entitled, including but not limited to:

1. Awarding Plaintiff her tenured position and salary given to her before her termination in full,

with benefits; and

2. Awarding Plaintiff all the backpay and financial damages that ensued after she was placed on

a lawless and unconstitutional Leave Without Pay;

3. If the Court dismisses Plaintiff's Complaint she respectfully requests leave to file an Amended

Complaint;

4. Granting such other and further relief that the Court seems just and proper.

Dated: October 6, 2024.

/s/Maureen Hurley
Maureen Hurley,
Plaintiff Pro Se

23

# Exhibit K

# Groff v DeJoy- American Bar

June 07, 2024

# U.S. Supreme Court Ruling in Groff v. DeJoy Clarifies Heightened Standard for Evaluating Religious Accommodations

Natalie Pattison

https://www.americanbar.org/groups/labor_law/publications/labor_employment_law_news/winter-issue-2024/supreme-court-ruling-groff-v-dejoy/

Share:

The U.S. Supreme Court's June 2023 ruling in *Groff v. DeJoy* constitutes a major change in the legal landscape involving religious accommodation in the workplace. The Court's decision clarified a heightened standard for determining whether a religious accommodation causes "undue hardship on the conduct of the employer's business" under Title VII of the Civil Rights Act of 1964.

Under Title VII, employers must reasonably accommodate an employee's "religious observance and practice" unless the employer shows that such accommodation would cause "undue hardship on the conduct of the employer's business." Under the long-recognized and familiar standard for showing undue hardship, employers were not obligated to provide a religious accommodation if the accommodation posed more than a "de minimis cost" on the employer. The "de minimis cost" standard was a relatively low bar for employers to meet—especially in comparison to the much higher standard under the Americans with Disabilities Act (ADA), which requires a showing that the accommodation imposes "significant difficulty or expense" for undue hardship.

The *Groff* case involved a postal worker, Gerald Groff, who sued the United States Postal Service (USPS) for failing to provide him a religious accommodation. Groff, an evangelical Christian, requested an accommodation that would exempt him from working on Sundays because he believed that Sunday should be devoted to worship and rest, not work, for religious reasons. Although USPS arranged schedules so that Groff wouldn't have to work on Sundays, including having other carriers cover his Sunday shifts, there were times when these efforts failed due to a shortage of available carriers. Groff eventually resigned after receiving discipline for his refusal to work on Sundays.

Groff sued his employer for failure to reasonably accommodate his religious belief and practices, arguing USPS could have accommodated his request for exemption from work on Sundays without imposing undue hardship on the conduct of USPS's business.

**The Court held that showing more than a de minimis cost is no longer sufficient to qualify as undue hardship under Title VII. Instead, and without deciding whether Groff should have**

been accommodated in this case, the Court clarified that Title VII requires an employer that denies a religious accommodation to show that the burden of granting the religious accommodation would result in "substantial increased costs in relation to the conduct of its particular business."

The Court's decision included review of, among other things, ordinary meaning. In considering ordinary meaning, the Court reasoned that undue hardship "means something very different from a burden that is merely more than de minimis, i.e., something that is 'very small or trifling.'" The Court also reviewed the 1977 decision in Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977), which has been interpreted as holding undue hardship means de minimis cost. The Court stopped short of overturning Hardison but explained that that the de minimis interpretation of Hardison is erroneous and showing "more than a de minimis cost as that phrase is used in common parlance, does not suffice to establish undue hardship under Title VII."

With respect to the new "substantial increased costs" standard, the Court explained that employers must take into account "all relevant factors in the case at hand, including the particular accommodation at issue and their practical impact in light of the nature, size, and operating cost of an employer."

The Court gave a few indications of what may or may not constitute undue hardship under the substantial increased cost standard. For example, the Court stated that a coworker's dislike of a certain religious expression is not enough for undue hardship, nor are impacts on coworkers unless there are corresponding effects on the "conduct of the business." The Court also stated that if an employer faces a situation similar to the one presented in *Groff*, it is not enough for the employer to deny the accommodation because it would require other workers to work overtime. Rather, the employer would have to evaluate other options, such as voluntary shift swapping. In other words, the employer cannot simply analyze whether one accommodation is reasonable; the employer must try to find a way to accommodate the employee.

Notably, the Court suggested that "a good deal of the EEOC's guidance in this area is sensible and will, in all likelihood, be unaffected by our clarifying decision today." The Court also declined to align the undue hardship standard under Title VII with that under the ADA. Thus, the ADA standard of "significant difficulty or expense" is still a higher bar for employers to reach than the substantial increased cost standard announced by the Court in *Groff*.

The *Groff* decision changes the way religious accommodation requests should be evaluated when determining whether the accommodation would cause undue hardship on the conduct of the employer's business. Looking ahead, employee requests for religious accommodations will need to be more carefully considered and documented, regardless of whether those requests are for exemption from a vaccine mandate or for break, shift, or job duty modifications.

Case 1:24-cv-01664-NRM-LKE   Document 22   Filed 11/01/24   Page 27 of 109 PageID
Case 1:24-cv-01664-NRM-LKE   Document 17   Filed 10/07/24   Page 27 of 109 PageID #: 126
#: 291

# Exhibit L

# Rights of Tenured Employees



**The University of the State of New York**
The State Education Department
Teacher Tenure Hearing Unit
89 Washington Ave., Room 987 EBA
Albany, New York 12234

Ph:    (518) 473-2629
Fax:   (518) 402-5940

(09/21)

## Rights of Tenured Employees
(This document only applies to those whose charges were filed on or after July 1, 2015.)

This document, while not intended to be exhaustive, describes certain rights of tenured employees in Education Law §3020-a and §3020-b* proceedings. The information contained in this document should not act as a substitute for the applicable statutes or regulations. Individuals are advised to consult with an attorney as significant adverse consequences may result from these proceedings.

---

**Special Notice to Tenured Employees of the New York City Department of Education**

Many of the provisions in Education Law §3020-a and/or §3020-b, including those described in this document, have been substantially modified by the collective bargaining agreement and subsequent amendments and/or revisions between the United Federation of Teachers ("UFT") and the New York City Department of Education ("NYCDOE"). Education Law §3020(4) permits the NYCDOE to modify the provisions of Education Law §3020-b through the collective bargaining process. If you are a tenured employee of the NYCDOE, you are advised to review your collective bargaining agreement and any amendments and/or revisions thereto to determine whether your rights may deviate from the provisions described below. If you have any questions, you should consult with the UFT and/or an attorney.

---

Tenured individuals cannot be disciplined or removed from employment except for "just cause" pursuant to Education Law §3020. The procedures for such discipline or removal are set forth in Education Law §3020-a, Education Law §3020-b, and the Commissioner's Regulations 8 NYCRR Ch. II, Sub. C, Part 82-3.

### Charges

1. The employing board of education ("board") must determine, by a majority vote, that probable cause exists to bring a disciplinary proceeding against the tenured employee ("employee").
2. If the board finds probable cause, the tenured employee must be provided with a written statement specifying: a.) the charges in detail; b.) the maximum penalty the board will seek if the employee is found guilty of the charges or that will be imposed if the employee does not request a hearing; and c.) a copy of this form outlining the employee's rights. The charges must be sent by certified or registered mail, return receipt requested or by personal delivery.
3. Charges cannot be brought more than three years after the alleged incompetency or misconduct, except when the charge is of misconduct constituting a crime when committed.

### Suspension Pending Hearing

The employee may be suspended pending a hearing on the charges and the final determination thereof. An employee may be suspended without pay if: a.) the employee has pleaded guilty to or has been convicted of certain felony drug crimes or a felony crime involving the physical abuse of a minor or student; or b.) the employee is charged with misconduct constituting physical or sexual abuse of a student. Employees suspended without pay due to charges constituting physical or sexual abuse of a student, are entitled to an expedited probable cause hearing.

### Termination Without Hearing

The employee shall be terminated without a hearing upon conviction of a sex offense as defined by Education Law §305(7-a)(b)(2). Employees acting as school administrators or supervisors shall be terminated without a hearing upon conviction of defrauding the government as defined by Education Law §305(7-b)(b)(2).

### Hearing Request/Failure to Request

1. Within 10 days of receiving charges, the employee must provide a written request to the clerk or the secretary of the employing board if the employee desires a hearing on the charges.
2. In the written request for hearing, the employee should indicate the name and contact information for the attorney who will represent the employee, if any. Such attorney shall be authorized to receive all correspondence related to the proceeding on the employee's behalf.

## Rights of Tenured Employees (cont.)

3. If the employee does not request a hearing within 10 days of receipt of the charges, the employee shall be deemed to have waived the right to a hearing if there is an unexcused failure to request a hearing.

4. If the employee waives his right to a hearing, the board shall proceed, within fifteen days, by a majority vote to determine the case and fix the penalty, if any, to be imposed.

### Hearing Officer Selection Process

1. Within 3 business days of receipt of the written hearing request, the clerk or secretary of the board shall notify the commissioner of the need for a hearing.

2. Upon receipt of such notification, the commissioner shall request that the American Arbitration Association provide a list of names of individuals to potentially serve as hearing officers along with relevant biographical information concerning the individual. The commissioner shall forthwith send such list to both parties.

3. For charges brought pursuant to §3020-a, the employee and the board must notify the commissioner of their agreed upon hearing officer selection within 15 days of receiving the list of potential hearing officers. If the parties fail to agree or fail to notify the commissioner of their selection within 15 days, the commissioner shall appoint a hearing officer from the list.

4. For charges brought pursuant to §3020-b, where an employee has received two consecutive ineffective ratings, the employee and the board must notify the commissioner of their agreed upon hearing officer selection within 7 days of receiving the list of potential hearing officers. If the parties fail to agree or fail to notify the commissioner of their selection within 7 days, the commissioner shall appoint a hearing officer from the list.

5. For charges brought pursuant to §3020-b, where an employee has received three consecutive ineffective ratings, the commissioner shall appoint a hearing officer from the list.

### Pre-Hearing Conference

1. The pre-hearing conference shall be private.

2. The hearing officer shall hold a pre-hearing conference within 10-15 days of receipt of notice from the commissioner confirming his or her acceptance to serve in such position, in the case of a standard or expedited §3020-a hearing.

3. For expedited §3020-b hearings where the employee has received 2 consecutive ineffective APPR ratings, the hearing officer shall hold a pre-hearing conference within 7 days of receiving notice confirming the hearing officer's agreement to serve.

4. For expedited §3020-b hearings where the employee has received 3 consecutive ineffective APPR ratings, the hearing officer shall hold a pre-hearing conference within 5 days of receiving notice confirming the hearing officer's agreement to serve.

5. At the pre-hearing conference, the hearing officer has the power to: a.) issue subpoenas; b.) hear and decide motions and applications made by either party; c.) set a schedule for full and fair disclosure of witnesses and evidence for both parties; and d.) set the time and place for hearings to ensure that the hearing is conducted within the statutory timelines.

6. Generally, pre-hearing motions must be made on written notice to the hearing officer and adverse party at least 5 days before the pre-hearing conference. Any pre-hearing motions not made as provided for herein shall be deemed waived. However, for expedited hearings, written notice to the adverse party shall be made no later than 2 days before the pre-hearing conference.

### General Hearing Procedures

1. The hearing will be conducted by a single hearing officer.

2. The employee shall have a reasonable opportunity to defend his or herself, including making any additional motions and applications and an opportunity to testify on his or her own behalf, however, the employee shall not be required to testify.

3. Each party has the right to be represented by counsel, and may subpoena and cross-examine witnesses. All testimony shall be under oath.

4. An accurate record of the hearing shall be kept at the expense of the commissioner. Upon request, the employee is entitled to a copy of the record without charge.

5. If the hearing officer needs to be replaced and the parties fail to notify the commissioner of their mutually agreed upon replacement within 2 business days, the commissioner shall select the replacement.

## Rights of Tenured Employees *(cont.)*

6. At the conclusion of the testimony, the hearing officer may allow the parties to submit memoranda of law; however, such submission may not delay the date that the hearing officer is required to render a decision.

7. In general, hearings must be completed within 60 days of the pre-hearing conference. Please see below for the time periods applicable to particular expedited hearings.

8. In general, all evidence must be submitted within 125 days of the filing of charges and no additional evidence shall be accepted after such time, absent extraordinary circumstances beyond control of the parties.

### Expedited Hearing Based on Revocation of Certification

1. If the charges are based upon revocation of the employee's certification, an expedited hearing must be held.

2. The hearing shall commence within 7 days of the pre-hearing conference and is limited to one day. The hearing may not be adjourned except upon request of a party and only for good cause as determined by the hearing officer.

### Expedited Hearing Based on Charges Constituting Physical or Sexual Abuse of Student

1. If the charges are based upon allegations of physical or sexual abuse of a student, an expedited hearing must be held.

2. The hearing shall commence within seven days after the pre-hearing conference and shall be completed within sixty days after the pre-hearing conference. Adjournments may not be granted that would extend the hearing beyond 60 days, except where the hearing officer determines that the adjournment is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.

### Expedited Hearing Based on Two Consecutive Ineffective APPR Ratings

1. The Board may bring charges alleging incompetence based upon two consecutive ineffective APPR ratings, in which case an expedited hearing would be held, but the board is not required to bring charges.

2. The hearing must begin within 7 days of the pre-hearing conference and be completed within 90 days following the date that the employee requested the hearing.  Adjournments may not be granted that would extend the hearing beyond 90 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.

3. The charges must allege that the board has developed and substantially implemented a teacher or principal improvement plan for the employee following the first evaluation in which the employee was rated ineffective and the immediately preceding evaluation if the employee was rated developing.

### Expedited Hearing Based on Three Consecutive Ineffective APPR Ratings

1.  The Board shall bring charges alleging incompetence where any teacher or principal receives three consecutive ineffective APPR ratings, in which case an expedited hearing must be held.

2. The hearing must commence within 5 days of the pre-hearing conference and be completed within 30 days following the date that the employee requested the hearing. Adjournments may not be granted that would extend the hearing beyond 30 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.

### Decision

1. With the exception of expedited hearings, the hearing officer shall render a written decision within 30 days of the last hearing date.

2. For expedited hearings, the hearing officer shall render a written decision within 10 days of the last hearing date.

3. The commissioner must immediately forward copies of the decision to the parties.

4. The hearing officer shall render a written decision that includes findings of fact and conclusions, based upon the findings of fact, as to each charge and shall state the penalty, or other action, if any, against the employee on each charge.

## Rights of Tenured Employees *(cont.)*

5. In those cases where a penalty is imposed, such penalty may be a written reprimand, a fine, a suspension for a fixed time without pay, or dismissal.

6. In determining penalty, the hearing officer shall give serious consideration to the penalty recommended by the board, and if the hearing officer imposes a different penalty, then the hearing officer must indicate the reasons for the alternate penalty based upon the record.

7. Within 15 days of the receipt of the hearing officer's decision, the board shall implement the decision. If the employee is acquitted of the charges, he or she must be restored to his or her position with full pay for any period of suspension without pay and the charges expunged from the employment record.

8. The hearing officer shall indicate in the decision whether any of the charges brought by the board were frivolous as defined by the Civil Practice Law and Rules §8303-a. If the hearing officer finds that all of the charges were frivolous, the hearing officer shall order the board to reimburse both the employee and the department reasonable costs that were incurred. If the hearing officer finds that some, but not all of the charges were frivolous, the hearing officer shall order the board to reimburse a portion of the reasonable costs incurred to the department and the employee.

### Appeal

1. Not later than 10 days after receipt of the hearing officer's decision, either the employee or the board may make an application to the New York State Supreme Court to vacate or modify the hearing officer's decision pursuant to Civil Practice Law and Rules §7511.

2. The filing of the pendency of an appeal shall not delay the implementation of the hearing officer's decision.

### Restoration of Rights

If an employee who was convicted of a felony crime as specified in Education Law §3020-a(2)(b) has his or her conviction reversed, the employee, upon application, shall be entitled to have his or her pay and other emoluments restored, for the period of time extending from the date of suspension to the date of the decision.

---

*Pursuant to §§ 30-2.14 and 30-3.17 of the Rules of the Board of Regents, educators whose Annual Professional Performance Reviews (APPRs) include results from the State's growth model (i.e., teachers of grades 4-8 ELA and Mathematics; principals of buildings including those grade levels; and principals of buildings including all of grades 9-12) or any other measures based on the grades 3-8 ELA and Mathematics State assessments will receive both an "original" evaluation and a "transition" evaluation. This process will continue through the 2018-19 school year, during the time that the State transitions to new ELA and Mathematics learning standards and assessments and during that time the State will explore potential revisions to the evaluation framework. The "original" evaluation will include the results of the State's growth model and any other measures based on the grades 3-8 ELA and Mathematics State assessments. This evaluation is provided for advisory purposes only and cannot be used for employment related decisions. Affected educators will also receive a "transition" evaluation that excludes the above referenced measures. During the transition period, only this transition score and rating will be used for purposes of employment decisions, including tenure determinations and for purposes of proceedings under Education Law §§3020-a and 3020-b.

# Exhibit M

# Order Kane- Keil

**21-2678-cv; 21-2711-cv**
*Kane v. de Blasio; Keil v. City of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### August Term 2021

#### (Argued: November 22, 2021          Decided: November 28, 2021)

#### No. 21-2678

———————————

MICHAEL KANE, WILLIAM CASTRO, MARGARET CHU, HEATHER CLARK, STEPHANIE
DI CAPUA, ROBERT GLADDING, NWAKAEGO NWAIFEJOKWU, INGRID ROMERO,
TRINIDAD SMITH, AMARYLLIS RUIZ-TORO,

*Plaintiffs-Appellants,*

-v.-

BILL DE BLASIO, in his official capacity as Mayor of the City of New York, DAVID
CHOKSHI, in his official capacity of Health Commissioner of the City of New
York, NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*

———————————

#### No. 21-2711

MATTHEW KEIL, JOHN DE LUCA, SASHA DELGADO, DENNIS STRK, SARAH BUZAGLO,

*Plaintiffs-Appellants,*

-v.-

**1**

Case 1:24-cv-01664-NRM-LKE   Document 22   Filed 11/01/24   Page 34 of 109 PageID
Case 21-2711, Document 117, 12/28/2021, 3218340, Page2 of 48
Case 1:24-cv-01664-NRM-LKE   Document 17   Filed 10/07/24   Page 34 of 48 PageID #: 133

THE CITY OF NEW YORK, BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF NEW YORK, DAVID CHOKSHI, in his official capacity of Health
Commissioner of the City of New York, MEISHA PORTER, in her official
capacity as Chancellor of the New York City Department of Education,

*Defendants-Appellees.*

---

Before:   LIVINGSTON, *Chief Judge*, KEARSE, and LEE, *Circuit Judges*.

In these two cases on appeal, fifteen teachers and school administrators
challenge the denial of motions to preliminarily enjoin the enforcement of an order
issued by the New York City Commissioner of Health and Mental Hygiene
mandating that individuals who work in New York City schools be vaccinated
against the COVID-19 virus ("Vaccine Mandate").    Plaintiffs-Appellants
challenge the Vaccine Mandate on religious-freedom grounds and principally
contend (1) that it is facially infirm under the First Amendment; and (2) that the
procedures by which their religious accommodation claims were considered are
unconstitutional as applied to them.   We reject the Plaintiffs-Appellants' facial
challenge but agree that they have established an entitlement to preliminary relief
on their as-applied claim.   Accordingly, the judgment of the district court is
**VACATED** and the case **REMANDED** for further proceedings.   Interim relief

2

ordered by the motions panel pending appeal is continued, with the consent of

Defendant-Appellee the City of New York.

FOR PLAINTIFFS-APPELLANTS:    In No. 21-2678: SUJATA SIDHU GIBSON, The
Gibson Law Firm, Ithaca, NY; In No. 21-2711:
BARRY BLACK, Sarah Elizabeth Child, and
Jonathan R. Nelson, Nelson Madden Black
LLP, New York, NY.

FOR DEFENDANTS-APPELLEES:    SUSAN PAULSON, Assistant Corporation
Counsel, Richard Paul Dearing, Assistant
Corporation Counsel, and Devin Slack, New
York City Law Department, New York, NY.

PER CURIAM:

These two cases on appeal, which we heard in tandem, concern the denial

of preliminary injunctive relief in connection with an order issued by the New

York City Commissioner of Health and Mental Hygiene (the "Commissioner"),

mandating that individuals who work in New York City schools be vaccinated

against the COVID-19 virus (the "Vaccine Mandate" or "Mandate"). Plaintiffs-

Appellants ("Plaintiffs") are fifteen teachers and school administrators who object

to receiving the COVID-19 vaccine on religious grounds. Plaintiffs sought, but

were denied, religious accommodations. They have sued the City of New York

(the "City"), certain officials, and the New York City Department of Education

(collectively, the "Defendants"), challenging both the Vaccine Mandate on its face

and the process by which their requests for religious accommodations were

denied.   The United States District Court for the Southern District of New York

(Caproni, J.) denied motions for preliminary injunctions in both cases, but a

motions panel of this Court, with the consent of the City, thereafter granted

Plaintiffs substantial provisional relief pending appeal.

For the reasons set forth herein, we conclude that the Vaccine Mandate does

not violate the First Amendment on its face, and we thus agree with the district

court to this extent.   We nevertheless vacate the district court's orders of October

12 and 28, 2021, denying preliminary relief, and we concur with and continue the

interim relief granted by the motions panel as to these fifteen individuals.   For

the present, Plaintiffs have established their entitlement to preliminary relief on

the narrow ground that the procedures employed to assess their religious

accommodation claims were likely constitutionally infirm as applied to them.

We remand for further proceedings consistent with this opinion.

## BACKGROUND

### I.   Factual Background

On August 24, 2021, the Commissioner issued an order requiring generally

that Department of Education ("DOE") and/or City employees or contractors who

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 37 of 109 PageID
Case 21-2711, Document 117-1, 11/28/2021, 3218840, Page33 of 48
Case 1:24-cv-01664-NRM-LKE    Document 17-3    Filed 05/03/2021, 3218840    Page33 of 48 PageID #: 136

work in DOE schools or DOE buildings be vaccinated against the COVID-19 virus.

The Vaccine Mandate provides, in pertinent part, as follows:

    1. No later than September 27, 2021 or prior to beginning employment, all DOE staff must provide proof to the DOE that:

    a. they have been fully vaccinated; or

    b. they have received a single dose vaccine, even if two weeks have not passed since they received the vaccine; or

    c. they have received the first dose of a two-dose vaccine, and they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.[1]

    ...

    5. For the purposes of this Order:

    a. "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.

    b. "Fully vaccinated" means at least two weeks have passed after a person received a single dose of a one-dose series, or the second dose of a two-dose series, of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.

    c. "DOE school setting" includes any indoor location, including but not limited to DOE buildings, where instruction is provided to DOE

---

[1] The Vaccine Mandate applies the same requirements to "City employees who work in-person in a DOE school setting or DOE building," "[a]ll staff of contractors of DOE and the City who work in-person in a DOE school setting or DOE building, including individuals who provide services to DOE students," and "[a]ll employees of any school serving students up to grade 12 and any [Universal Pre-Kindergarten-3 or -4] program that is located in a DOE building who work in-person, and all contractors hired by such schools or programs to work in-person in a DOE building."

students in public school kindergarten through grade 12, including residences of pupils receiving home instruction and places where care for children is provided through DOE's [Living for the Young Family Through Education] program.

d. "Staff of contractors of DOE and the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school setting or other DOE building, and includes individuals working as independent contractors.

e. "Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting or other DOE building. It does not include individuals who enter a DOE school setting or other DOE location only to deliver or pickup items, unless the individual is otherwise subject to this Order. It also does not include individuals present in DOE school settings or DOE buildings to make repairs at times when students are not present in the building, unless the individual is otherwise subject to this Order.

Joint App'x 177–79.[2] DOE serves approximately one million students across the City, and the order was consistent with guidance from the U.S. Centers for Disease Control ("CDC") that school teachers and staff should be vaccinated as soon as possible so as to permit schools to resume normal operations safely.

On September 1, 2021, the United Federation of Teachers ("UFT") filed a formal objection to the Vaccine Mandate on the ground that it fails to provide any medical or religious accommodations. After failing to resolve their dispute

---

[2] The "Joint App'x" is the joint appendix filed by the parties in No. 21-2711.

through mediation, the UFT and the City moved to arbitration.   On September
10, an independent arbitrator (the "Arbitrator") issued an award (the "Arbitration
Award") setting forth a process and standards ("Accommodation Standards") for
determining, as relevant to this appeal, religious accommodations to the Vaccine
Mandate.[3]

The Accommodation Standards allowed employees to request a religious
accommodation by submitting a request that is "documented in writing by a
religious official (e.g., clergy)."   Joint App'x 197.   Requests "shall be denied
where the leader of the religious organization has spoken publicly in favor of the
vaccine, where the documentation is readily available (e.g., from an online source),
or where the objection is personal, political, or philosophical in nature."   *Id.*[4]

---

[3] The Arbitration Award also provides standards for determining medical
accommodations to the Vaccine Mandate.   Although Plaintiffs challenged these
standards below as well, they did not appeal on these issues.

On September 15, the Arbitrator issued a materially identical award resolving a
dispute between the City and the Council of Supervisors and Administrators, a labor
union for school administrative personnel.   Joint App'x 209.

[4] The meaning of the second clause—"where the documentation is readily
available (e.g., from an online source)"—is obscure.   The parties do not address its
meaning in their briefs.   The district court and the *Keil* Defendants seem to have
interpreted it as a restriction on an employee's ability to meet the Arbitration Award's
requirement that a request be "documented in writing by a religious official (e.g.,
clergy)."   *See* Joint App'x 60–61.   Under this interpretation, it would be inadequate for
an employee to produce "readily available" documentation from a religious official
corroborating that employee's religious objections to vaccination.   The employee would

The Accommodation Standards further provide that requests "shall be considered
for recognized and established religious organizations (e.g., Christian Scientists)."
*Id.*

    The Arbitration Award establishes a two-step process for resolving a
request for a religious accommodation.   First, the DOE renders an "initial
determination of eligibility for an exemption or accommodation."[5]   Joint App'x
197; Defendants Br. 7.   Then, if the employee's request is denied, the employee
can appeal the DOE's determination to a panel of arbitrators selected by the
Arbitrator.   The Arbitration Award states that its procedures are to operate "[a]s

---

instead be required to produce documentation such as, for example, a letter from a
religious official the employee knows personally.   While the text of this provision is
ambiguous in our view, we adopt the district court's interpretation for purposes of this
opinion.   The parties are free to argue for a different interpretation before the district
court on remand.

    [5] At times, the parties appear to use the terms "exemption" and "accommodation"
interchangeably.   As we use those terms, however, exemptions are different from
accommodations.   The Vaccine Mandate includes *exemptions* for certain objectively
defined categories of people, like delivery workers.   Those who are exempted from the
Mandate are not subject to its terms.   By contrast, employees who *are* subject to the
Mandate can request accommodations under Title VII and analogous state and city law.
*See infra* at 43–44 (discussing Title VII's requirement to provide reasonable
accommodations); *see also We The Patriots USA, Inc. v. Hochul,* 2021 WL 5276624, at *1 (2d
Cir. Nov. 12, 2021).

an alternative to any statutory reasonable accommodation process."[6]   Joint App'x

194–95.   Employees who are granted an accommodation

> shall be permitted the opportunity to remain on payroll, but in no
> event required/permitted to enter a school building while
> unvaccinated, as long as the vaccine mandate is in effect.   Such
> employees may be assigned to work outside of a school building (e.g.,
> at DOE administrative offices) to perform academic or administrative
> functions as determined by the DOE while the exemption and/or
> accommodation is in place.

*Id.* at 200.

In addition to setting forth a process for granting religious accommodations,

the Arbitration Award scheduled a series of deadlines for employees to comply

with the Vaccine Mandate.   First, it provided that as to any unvaccinated

employee denied an accommodation, the DOE could place the employee on "leave

without pay effective September 28, 2021, or upon denial of appeal, whichever

[was] later, through November 30, 2021."   Joint App'x 201.   "During such leave

---

[6] Elsewhere, it asserts:

> The process set forth, herein, shall constitute the exclusive and complete
> administrative process for the review and determination of requests for
> religious and medical exemptions to the mandatory vaccination policy and
> accommodation requests where the requested accommodation is the
> employee not appear at school.

Joint App'x 201.

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 42 of 109 PageID
Case 21-2711, Document 117-1, 10/28/2021, 3218349, Page100 of 48
Case 1:24-cv-01664-NRM-LKE    Document 1-7    Filed 03/07/24    Page 100 of 48 PageID #: 141

without pay," employees "shall continue to be eligible for health insurance" but "are prohibited from engaging in gainful employment." *Id.* at 202.

From September 28 through October 29, any employee who was on leave without pay "due to vaccination status" could opt to separate from the DOE. *Id.* at 204. Employees who elected to separate were eligible for certain benefits but were required to file "a waiver of [their] rights to challenge [their] involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process." *Id.* Then, from November 1 through November 30, any employee on leave without pay due to vaccination status could "alternately opt to extend the leave through September 5, 2022," during which time they would remain eligible for health insurance. *Id.* at 205. To extend their leave, however, the employees were required to execute "a waiver of [their] rights to challenge [their] voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process." *Id.* "Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned." *Id.* "Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation . . . ." *Id.*

10

On September 15, the Vaccine Mandate was amended to provide:
"Nothing in this Order shall be construed to prohibit any reasonable
accommodations otherwise required by law."[7]  Joint App'x 184.  The amended
Vaccine Mandate also requires "all visitors to a DOE school building" to show
proof that they have received at least the first dose of a two-dose vaccine prior to
entering any DOE building.  *Id.* at 183.  The amended Mandate excludes certain
groups from the definition of a "visitor," including students, parents (in certain
circumstances), deliverymen, repairmen, emergency responders, "[i]ndividuals
entering for the purpose of COVID-19 vaccination," "[i]ndividuals who are not
eligible to receive a COVID-19 vaccine because of their age," voters, and certain
election-related personnel.  *Id.* at 184.

## II.   Procedural History

On September 21 and October 27, 2021, Plaintiffs, fifteen DOE teachers or
school administrators who sought and were denied religious accommodations

---

[7] We observe that this additional language is superfluous as a legal matter, at least
as to religious accommodation under Title VII of the Civil Rights Act of 1964.  *See* 42
U.S.C. § 2000e, *et seq.*  The Commissioner, a City official, could not override Title VII, a
federal law requiring employers to offer reasonable accommodations that do not result
in undue hardship on the employer.  *See* U.S. CONST. art. VI, cl. 2 (Supremacy Clause).
Thus, even under the original Vaccine Mandate, DOE employees were legally entitled to
request accommodations.

pursuant to the process outlined herein, filed these two lawsuits, *Kane,* 21-cv-7863, and *Keil,* 21-cv-8773.    Plaintiffs allege, *inter alia,* the violation of their First Amendment rights.    On October 12, the district court denied the *Kane* Plaintiffs' request for a preliminary injunction, ruling principally that Plaintiffs were unlikely to prevail on their claim that the Vaccine Mandate was unconstitutional on its face.[8]    On October 28, the district court denied a similar request for a preliminary injunction by the Plaintiffs in *Keil* "[f]or the same reasons discussed in" *Kane* on the ground that the two cases "raise[] many of the same claims . . . ." Joint App'x 8.

On October 25 and 28, 2021, Plaintiffs appealed the district court's denial of their requests for a preliminary injunction and requested an emergency injunction pending appeal.    A motions panel heard oral argument on November 10, during which the City conceded that the Accommodation Standards are "constitutionally suspect."    The panel then solicited supplemental letter briefing.    Each party

---

[8] A district court in this Circuit denied a preliminary injunction in a different case in which different plaintiffs challenged the same Vaccine Mandate on substantive due process and equal protection grounds.    *See Maniscalco v. New York City Dep't of Educ.,* 2021 WL 4344267 (E.D.N.Y. Sept. 23, 2021).    A different panel of this Court denied an injunction pending appeal, 2021 WL 4437700 (2d Cir. Sept. 27, 2021), and subsequently affirmed the district court's decision, 2021 WL 4814767 (2d Cir. Oct. 15, 2021) (summary order).

attached to its letter brief a proposed order for relief pending appeal.    ECF No. 53

in No. 21-2678, at 5–6; ECF No. 65 in No. 21-2711, at 10–13.

On November 15, 2021, the motions panel issued an order ("Motions Panel

Order") largely tracking the City's proposed order and referring the matter to this

merits panel.[9]   The Motions Panel Order provides:    "Pending further order by

the merits panel . . . Plaintiffs shall receive fresh consideration of their requests for

a religious accommodation."    Motions Panel Order ¶ 1.   The Order sets forth a

process pursuant to which Plaintiffs' requests will be promptly adjudicated "by a

central citywide panel," which will adhere to the standards of, *inter alia*, Title VII

of the Civil Rights Act of 1964, rather than "the challenged criteria set forth in . . .

the arbitration award . . . ."   *Id.* ¶ 2.   The Motions Panel Order also stays the

deadline for Plaintiffs to opt into the extended leave program with any required

waiver.   *Id.* ¶ 4.   It also provides that if a plaintiff's request for religious

accommodation is granted by the citywide panel, the plaintiff will receive backpay

running from the date the plaintiff was placed on leave without pay.   *Id.* ¶ 5.

We heard oral argument on November 22, 2021 and now vacate the district

court's decision denying Plaintiffs preliminary injunctive relief.   We leave in

---

[9]  The Motions Panel Order is set forth in an Appendix to this Opinion.

Case 1:24-cv-01664-NRM-LKE   Document 22   Filed 11/01/24   Page 46 of 109 PageID
Case 21-2711, Document 117-1, 11/28/2021, 3218340, Page140 of 48
Case 1:24-cv-01664-NRM-LKE   Document 17-3   Filed 11/01/24   Page 140 of 48 PageID #: 145

place all interim relief ordered by the Motions Panel, thus enjoining the City from

terminating Plaintiffs or requiring them to opt into the extended leave program

while they are afforded the opportunity to have their religious accommodation

requests reconsidered.   We remand the case for further proceedings consistent

with this opinion.

## DISCUSSION

"When a preliminary injunction will affect government action taken in the

public interest pursuant to a statute or regulatory scheme, the moving party must

demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of

success on the merits, and (3) public interest weighing in favor of granting the

injunction."   *Agudath Isr. of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020); *see also*

*We The Patriots USA, Inc. v. Hochul*, No. 21-2179, 2021 WL 5121983, at *20 (2d Cir.

Nov. 4, 2021) ("When the government is a party to the suit, our inquiries into the

public interest and the balance of the equities merge."), *opinion clarified*, 2021 WL

5276624 (2d Cir. Nov. 12, 2021), *application for injunctive relief filed*, No. 21A125 (U.S.

Nov. 2, 2021).[10]   "We review a district court's denial of a preliminary injunction

---

[10] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

for abuse of discretion, but must assess de novo whether the court proceeded on
the basis of an erroneous view of the applicable law."  *Agudath*, 983 F.3d at 631.[11]

The "purpose" of a preliminary injunction "is not to award the movant the
ultimate relief sought in the suit but is only to preserve the status quo by
preventing during the pendency of the suit the occurrence of that irreparable sort
of harm which the movant fears will occur."  *New York v. Nuclear Regulatory
Comm'n*, 550 F.2d 745, 754 (2d Cir. 1977); *see also* 11A CHARLES ALAN WRIGHT,
ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2947
(3d ed. Apr. 2021 update) ("[A] preliminary injunction is an injunction that is
issued to protect plaintiff from irreparable injury and to preserve the court's power
to render a meaningful decision after a trial on the merits.").   "Crafting a
preliminary injunction is an exercise of discretion and judgment, often dependent
as much on the equities of a given case as the substance of the legal issues it
presents."  *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017).

---

[11] The parties dispute the applicable legal standard.   Defendants argue that
Plaintiffs seek "to modify the status quo by virtue of a *mandatory* preliminary injunction
(as opposed to seeking a *prohibitory* preliminary injunction to maintain the status quo)."
*A.H. v. French*, 985 F.3d 165, 176 (2d Cir. 2021).   "In this circumstance, the movant must
also make a strong showing of irreparable harm and demonstrate a clear or substantial
likelihood of success on the merits."  *Id.*   We need not resolve this dispute because our
conclusions would be the same under either standard.

## I.   Likelihood of Success on the Merits

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST., amend. I; *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (incorporating the Free Exercise Clause against the states).   "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires."   *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 877 (1990).   The Free Exercise Clause thus protects an individual's private right to religious belief, as well as "the performance of (or abstention from) physical acts that constitute the free exercise of religion."   *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (quoting *Smith*, 494 U.S. at 877).

This protection, however, "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability."   *Smith*, 494 U.S. at 879.   Neutral and generally applicable laws are subject only to rational-basis review.   *Cent. Rabbinical Cong.*, 763 F.3d at 193.   Laws and government policies that are either non-neutral or not generally applicable, however, are subject to "strict scrutiny," meaning that they must be "narrowly tailored" to serve a

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 49 of 109 PageID
Case 21-2711, Document 117-1, 11/28/2021/3218349, Page 17 of 48
Case 1:24-cv-01664-NRM-LKE    Document 17    Filed 2021/3218349, Page 17 of 48 PageID #: 148

"compelling" state interest.   *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020); *see Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021) ("A government policy can survive strict scrutiny under the First Amendment's Free Exercise Clause only if it advances interests of the highest order and is narrowly tailored to achieve those interests.").

Here, Plaintiffs make two principal claims: (1) that the Vaccine Mandate is facially unconstitutional; and (2) that even assuming that the Vaccine Mandate is *not* facially unconstitutional, their First Amendment rights were violated by virtue of the procedures set forth in the Arbitration Award, which were used in the evaluation of their accommodation requests.   We conclude that Plaintiffs have not shown a likelihood of success on their facial challenge to the Vaccine Mandate. At this juncture, however, they have demonstrated a likelihood of success on their as-applied challenge to the proceedings used in assessing their accommodation requests.

## A. Vaccine Mandate

### 1. Neutrality

The Vaccine Mandate, in all its iterations, is neutral and generally applicable.   To determine neutrality, we begin by examining the Mandate's text, "for the minimum requirement of neutrality is that a law not discriminate on its

face." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533

(1993). Facial neutrality alone, however, is not enough. A law that is facially

neutral will still run afoul of the neutrality principle if it "targets religious conduct

for distinctive treatment." *Id.* at 534, 546. We thus also consider whether there

are "subtle departures" from religious neutrality, as well as "the historical

background of the decision under challenge, the specific series of events leading

to the enactment or official policy in question, and the legislative or administrative

history, including contemporaneous statements made by members of the decision-

making body." *Id.* at 534, 540.

The Vaccine Mandate is neutral on its face. It applies to "all DOE staff," as

well as City employees and contractors of DOE and the City who work in DOE

school settings. Thus, the Mandate does not single out employees who decline

vaccination on religious grounds. Its restrictions apply equally to those who

choose to remain unvaccinated for any reason.[12]

---

[12] The Vaccine Mandate permits both medical and religious accommodations. In
that respect, this case is factually different from recent challenges to other vaccine
mandates. *See, e.g., We The Patriots*, 2021 WL 5121983, at *1; *Does 1-6 v. Mills*, 16 F.4th 20,
30 (1st Cir. 2021), *application for injunctive relief denied sub nom. Does 1-3 v. Mills*, 2021 WL
5027177 (U.S. Oct. 29, 2021).

Nor do New York City Mayor Bill de Blasio's statements to the media render the Vaccine Mandate non-neutral.   Plaintiffs seize on statements the Mayor made at a press conference suggesting that religious adherents should be vaccinated because the Pope supports vaccination and that accommodations to the Mandate will only be afforded to religions with long-standing objections to vaccination. But these statements reflect nothing more than the Mayor's personal belief that religious accommodations will be rare, as well as "general support for religious principles that [he] believes guide community members to care for one another by receiving the COVID-19 vaccine."   *We The Patriots*, 2021 WL 5121983, at *10; *see also id.* ("Governor Hochul's expression of her own religious belief as a moral imperative to become vaccinated cannot reasonably be understood to imply an intent on the part of the State to target those with religious beliefs contrary to hers; otherwise, politicians' frequent use of religious rhetoric to support their positions would render many government actions non-neutral . . . .").[13]   And even

---

[13] While Mayor de Blasio said that only Christian Scientists and Jehovah's Witnesses could receive religious accommodations, the City has granted accommodations to members of many other faiths.   *See* Defendants Br. 12 (noting that "over 100 religious exemptions [have] been granted to employees of more than 20 different faiths[] . . . and individuals whose specific religion is not identifiable" (citing Joint App'x in No. 21-2678, at 758–59)).

assuming, *arguendo*, that the Mayor's statements reflect religious animus, the Mayor did not have a meaningful role in establishing or implementing the Mandate's accommodations process, which was implemented by DOE staff, and later, the Arbitrator.   *See id.* ("Governor Hochul's expression of her own religious belief as a moral imperative to become vaccinated cannot reasonably be understood to imply an intent on the part of the State to target those with religious beliefs contrary to hers; otherwise, politicians' frequent use of religious rhetoric to support their positions would render many government actions non-neutral . . . ."); *cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2417–23 (2018) (rejecting Establishment Clause challenge to facially neutral policy based on statements by the president that arguably reflected religious animus).

## 2. General Applicability

The Vaccine Mandate is also generally applicable.   A law may not be generally applicable under *Smith* for either of two reasons: first, "if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions"; or, second, "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."   *Fulton*, 141 S. Ct. at 1877.   Plaintiffs argue

20

that the Vaccine Mandate is not generally applicable on its face because it does not apply to the general public.  We disagree.

"[A]n exemption is not individualized simply because it contains express exceptions for objectively defined categories of persons."  *We The Patriots*, 2021 WL 5121983, at *14 (quoting *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1187 (10th Cir. 2021)).  Rather, there must be some showing that the exemption procedures allow secularly motivated conduct to be favored over religiously motivated conduct. *Id.*  Plaintiffs have made no such showing.  Instead, as in *We The Patriots*, the Vaccine Mandate provides for objectively defined categories of exemptions — such as those for individuals entering DOE buildings to receive a COVID-19 vaccination or to respond to an emergency — that do not "'invite[]' the government to decide which reasons for not complying with the policy are worthy of solicitude." *Fulton*, 141 S. Ct. at 1879 (quoting *Smith*, 494 U.S. at 884); *see also We The Patriots*, 2021 WL 5121983, at *14.

Nor do these exemptions treat secular conduct more favorably than comparable religious conduct.  "[G]overnment regulations are not neutral and generally applicable . . . whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

21

"[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* Plaintiffs argue that the Vaccine Mandate violates these principles because it exempts certain groups of people (for example, emergency responders). But that argument is unavailing. Viewed through the lens of the City's asserted interest in stemming the spread of COVID-19, these groups are not comparable to the categories of people that the Mandate embraces. While the exempt groups do not come into prolonged daily contact with large groups of students (most of whom are unvaccinated), the covered groups (for example, teachers) inevitably do.

Plaintiffs finally argue that the Vaccine Mandate is not generally applicable because it applies only to DOE employees and contractors. But neither the Supreme Court, our court, nor any other court of which we are aware has ever hinted that a law must apply to all people, everywhere, at all times, to be "generally applicable." As counsel conceded at oral argument, a law can be generally applicable when, as here, it applies to an entire *class* of people. Plaintiffs have not explained why DOE employees and other comparable

22

employees are not such a class, so we reject their arguments that the law is not generally applicable.

### 3. Rational Basis Review

Because Plaintiffs have not established, at this stage, that they are likely to succeed in showing that the Vaccine Mandate is not neutral or generally applicable on its face, rational basis review applies.    *Cent. Rabbinical Cong.*, 763 F.3d at 193; *see also Fulton*, 141 S. Ct. at 1876 (citing *Smith*, 494 U.S. at 878–82).    Rational basis review requires the City to have chosen a means for addressing a legitimate goal that is rationally related to achieving that goal.    *See Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third and Fourth Dep'ts, App. Div. of the Sup. Ct. of N.Y.*, 852 F.3d 178, 191 (2d Cir. 2017).

The Vaccine Mandate plainly satisfies this standard.    Attempting to safely reopen schools amid a pandemic that has hit New York City particularly hard, the City decided, in accordance with CDC guidance, to require vaccination for all DOE staff as an emergency measure.    This was a reasonable exercise of the State's power to act to protect the public health.    *See We The Patriots*, 2021 WL 5121983, at \*15; *see also Phillips v. City of New York*, 775 F.3d 538, 542–43 (2d Cir. 2015) (holding that New York could constitutionally require all children to be vaccinated

in order to attend school); *Does 1-6*, 16 F.4th at 32 (holding that the vaccine mandate

challenged in that case "easily satisfies rational basis review").[14]

### B. Arbitration Award and Accommodation Standards

Plaintiffs also contend that the Vaccine Mandate is unconstitutional as

applied to them through the Arbitration Award. The City concedes that the

Arbitration Award, as applied to Plaintiffs, "may" have been "constitutionally

suspect," Defendants Br. 37–38, and its defense of that process is half-hearted at

---

[14] Plaintiffs raise a potpourri of other constitutional challenges against the Vaccine Mandate. None is persuasive. The *Kane* Plaintiffs argue that the Mandate violates the Fourteenth Amendment's Equal Protection Clause. "When a free exercise challenge fails, any equal protection claims brought on the same grounds are subject only to rational-basis review." *Does 1-6*, 16 F.4th at 35 (citing, *inter alia, Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004)). Plaintiffs' Equal Protection Clause challenge to the Mandate fares no better than their First Amendment challenge.

The *Kane* Plaintiffs also contend that the Mandate violates the Supremacy Clause because it prohibits reasonable accommodations under Title VII. They are unlikely to succeed on this claim. *See We The Patriots*, 2021 WL 5121983, at *17 (noting that the law at issue there did not violate Title VII because it did "not *bar* an employer from providing an employee with a reasonable accommodation" (emphasis added)); *Does 1-6*, 16 F.4th at 35 (similar).

For their part, the *Keil* Plaintiffs argue that the Mandate violates their procedural due process rights because it does not offer meaningful standards against which their requests for religious accommodations will be measured. But Plaintiffs' requests will be governed by Title VII and analogous state and city law, and the standards for those claims are well established. *See, e.g., Cosme v. Henderson*, 287 F.3d 152, 157-58 (2d Cir. 2002); *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985); *White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 134 (2d Cir. 2015); *infra* at 43–44. Plaintiffs have therefore failed to demonstrate a likelihood of success on the merits of this claim, too.

best.    Indeed, it offers no real defense of the Accommodation Standards at all.
The City has also consented to the relief ordered by the Motions Panel, under
which the Arbitration Award and its results will be set aside and Plaintiffs will
receive *de novo* consideration of their accommodation requests.

We confirm the City's "susp[icion]" that the Arbitration Award procedures
likely violated the First Amendment as applied to these Plaintiffs.    We
emphasize, however, that this determination is exceedingly narrow – simply that
Plaintiffs, at this juncture, have sufficiently established a likelihood of success so
as to meet this prong of the preliminary injunction standard.    Given the City's
concessions, and in the interest of providing timely guidance to the parties, we
need not and do not address any other constitutional objection to the Arbitration
Award that Plaintiffs raise.[15]

---

[15] Nor do we address certain arguments made by Defendants.    In a single
sentence in their brief, Defendants suggest that Plaintiffs do not "have standing to launch
a direct attack on the terms of awards arising out of arbitrations initiated by their own
unions without first alleging a breach of the duty of fair representation."    Defendants
Br. 35 (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 260 (2009)).    But Defendants have
not identified any provision in the relevant collective bargaining agreements that "clearly
and unmistakably" requires union members, including Plaintiffs, to arbitrate their
constitutional claims.    *Pyett*, 556 U.S. at 274; *see Fernandez v. Windmill Distrib. Co.*, 159 F.
Supp. 3d 351, 360 (S.D.N.Y. 2016); *see also Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S.
728, 744 (1981); *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 79–80 (1998).    In
another single-sentence argument, Defendants suggest that Plaintiffs' unions may be
"necessary parties" under Federal Rule of Civil Procedure 19(a)(1)(B)(i).    Defendants Br.

## 1. Neutrality

We conclude, first, that the procedures specified in the Arbitration Award and applied to Plaintiffs are not neutral.    The Supreme Court has explained that "the government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices."    *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018).

We have grave doubts about whether the Accommodation Standards are consistent with this bedrock First Amendment principle.    They provide that "[e]xemption requests shall be considered for recognized and established religious organizations" and that "requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation

---

35.  Defendants, however, failed to raise this argument below and fail to explain *why* the unions would be necessary parties in their brief in this Court.

   Given both the City's consent to the interim relief afforded here and the failure to develop these arguments before this Court, we decline to affirm on either ground.    *See United States v. Morton*, 993 F.3d 198, 204 n.10 (3d Cir. 2021) ("[J]udges are not like pigs, hunting for truffles buried in the record.").    Defendants are free to raise these arguments before the district court on remand, however, given that the procedural context in which this case arises may prove relevant on the merits at a later stage in the proceeding.

is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature." Joint App'x 197.[16]  Moreover, Plaintiffs have offered evidence that arbitrators applied the Accommodation Standards to their applications by, for example, telling Plaintiff Keil that his religious beliefs "were merely personal, [because] there are other Orthodox Christians who choose to get vaccinated."[17]  *Id.* at 376.

Denying an individual a religious accommodation based on someone else's publicly expressed religious views — even the leader of her faith —runs afoul of the Supreme Court's teaching that "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular*

---

[16] As noted above, we find the second clause ambiguous but have adopted the district court's interpretation for purposes of this opinion.  *See supra* note 4.

[17] Plaintiffs offered substantial evidence that arbitrators referenced the Accommodation Standards in their hearings.  For example, during another hearing, an arbitrator declared that, because a DOE employee's congregation was not opposed to the vaccine, the employee's objection was "personal and not religion-based."  Joint App'x 338.  The City notes that hearings were not recorded and that given the need to render determinations expeditiously, such determinations were issued without full written opinions to explain them.  It cautions that "the record casts serious doubt on plaintiffs' contentions that the challenged criteria in the arbitration awards were controlling in the administrative appeals."  Defendants Br. 11.  To be clear, it may be that after further factual development, some or even all of Plaintiffs' Free Exercise Clause claims fail on the merits.  But at this stage, based on the terms of the Arbitration Award and the numerous affidavits submitted by these fifteen individuals in support of their claims, we conclude that Plaintiffs have established a sufficient likelihood of success on the merits.

litigants' interpretations of those creeds."    *Hernandez v. Commissioner*, 490 U.S. 680,

699 (1989) (emphasis added); *see also Frazee v. Illinois Dep't of Emp. Sec.*, 489 U.S.

829, 833 (1989) (noting that "disagreement among sect members" over whether

work was prohibited on the Sabbath had not prevented the Court from finding a

free exercise violation based on the claimant's "unquestionably . . . sincere belief

that his religion prevented" him from working (citing *Thomas v. Rev. Bd. of Indiana

Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)).    Accordingly, we conclude that based on

the record developed to date, the Accommodation Standards as applied here were

not neutral, triggering the application of strict scrutiny.

### 2.  General Applicability

Nor does it appear that such procedures were generally applicable to all

those seeking religious accommodation.    In *Smith*, the Supreme Court held that

an unemployment compensation system with discretionary, individualized

exemptions "lent itself to individualized government assessment of the reasons

for the relevant conduct" and was thus not generally applicable.    494 U.S. at 884.

So too here.

Plaintiffs have offered evidence that the arbitrators reviewing their requests

for religious accommodations had substantial discretion over whether to grant

those requests.    Sometimes, arbitrators strictly adhered to the Accommodation

Standards.    Other times, arbitrators apparently ignored them, such as by granting

an exemption to an applicant who identified as a Roman Catholic, even though

the Pope has expressed support for vaccination.    *Cf. We The Patriots*, 2021 WL

5121983, at *14 (denying a motion for a preliminary injunction where medical

exemptions were granted exclusively in accordance with a uniform certification

process).    In our view, and based on the record to date, Plaintiffs have thus shown

that they are likely to succeed on their claim that the Arbitration Award

procedures as applied to them were not generally applicable.

### 3. Strict Scrutiny

Because the accommodation procedures here were neither neutral nor

generally applicable, as applied, we apply strict scrutiny at this stage of the

proceeding.    Under such scrutiny, these procedures are constitutional as applied

only if "'narrowly tailored' to serve a 'compelling' state interest."    *Roman Cath.*

*Diocese*, 141 S. Ct. at 67 (quoting *Lukumi*, 508 U.S. at 546); *see also Tandon*, 141 S. Ct.

at 1296 ("[T]he government has the burden to establish that the challenged law

satisfies strict scrutiny.").    The Supreme Court has recognized that "[s]temming

the spread of COVID-19" qualifies as "a compelling interest."   *Roman Cath.*

*Diocese,* 141 S. Ct. at 67.

The question is thus whether the Arbitration Award's procedures, as
implemented and applied to Plaintiffs, were narrowly tailored to serve the
government's interest.   Narrow tailoring requires the government to
demonstrate that a policy is the "least restrictive means" of achieving its objective.
*Thomas,* 450 U.S. at 718.

These procedures cannot survive strict scrutiny because denying religious
accommodations based on the criteria outlined in the Accommodation Standards,
such as whether an applicant can produce a letter from a religious official, is not
narrowly tailored to serve the government's interest in preventing the spread of
COVID-19.   The City offers no meaningful argument otherwise.

## II.   Irreparable Harm

### A. Motions Panel Order

Plaintiffs have also shown that they would suffer irreparable harm absent
the relief ordered by the Motions Panel.   They have demonstrated that they were
denied religious accommodations — pursuant to what the City has conceded was
a "constitutionally suspect" process — and were consequently threatened with
imminent termination if they did not waive their right to sue.   This is sufficient

to show irreparable harm. *See Am. Postal Workers Union v. United States Postal Serv.*, 766 F.2d 715, 722 (2d Cir. 1985) (noting that "the threat of permanent discharge" can cause irreparable harm in the First Amendment context).[18]

## B. Plaintiffs' Request for Broader Relief

Plaintiffs contend that this interim relief does not go far enough. They argue that they are entitled to an injunction immediately reinstating them and

---

[18] We do not cast doubt on the well-established principle that "loss of employment 'does not *usually* constitute irreparable injury.'" *Does 1-6*, 16 F.4th at 36 (emphasis added) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)); *see We The Patriots*, 2021 WL 5121983, at *19; *see also, e.g., Plata v. Newsom*, 2021 WL 5410608, at *3 (N.D. Cal. Nov. 17, 2021) (collecting cases in which district courts have concluded that the "choice" between "maintaining . . . employment or taking a vaccine that [employees] do not want . . . does not [cause employees to suffer] irreparable harm that warrants enjoining a vaccine mandate"). *But see BST Holdings, L.L.C. v. OSHA*, 2021 WL 5279381, at *8 (5th Cir. Nov. 12, 2021) (finding irreparable harm where "reluctant individual recipients [were] put to a choice between their job(s) and their jab(s)").

This is an unusual case for two reasons. First, Plaintiffs have demonstrated a likely violation of their First Amendment rights resulting from the manner in which their religious accommodation claims were considered. *Cf. Does 1-3*, 2021 WL 5027177, at *1, *4 (Gorsuch, J., dissenting from the denial of application for injunctive relief) (finding irreparable harm where healthcare workers raised a First Amendment claim and faced termination if they did not comply with vaccine mandate). Second, these very procedures require Plaintiffs to forgo suit to avoid harm and the City has consented to the entry of an injunction which, among other things, will provide for these claims to be promptly reconsidered pursuant to procedures that are not constitutionally infirm. *Cf. Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 512 n.6 (2d Cir. 2005) (noting "particularly stringent standard for irreparable harm" in government personnel cases and observing that preliminary relief is inappropriate where harm could not be vitiated by an interim injunction). Given these facts and the City's concessions, we need not intimate a view as to whether Plaintiffs could show irreparable harm in different circumstances.

31

Case 1:24-cv-01664-NRM-LKE   Document 22   Filed 11/01/24   Page 64 of 109 PageID
Case 21-2711, Document 117-1, 11/28/2021, 3218340, Page329 of 363
Case 1:24-cv-01664-NRM-LKE   Document 17-1   Filed 10/01/24   Page 64 of 109 PageID #: 163

granting them backpay pending *de novo* consideration of their requests for religious accommodations. Because Plaintiffs have not shown that they would suffer irreparable harm absent this broader relief, we are not persuaded.

At the outset, we clarify what is at stake at this point in the litigation. The City has committed to providing "fresh consideration" and prompt resolution of Plaintiffs' requests for religious accommodation. Motions Panel Order ¶ 1. Under the Motions Panel Order, the City must adjudicate these requests within two weeks of Plaintiffs' submission of any documents they are permitted (but not required) to submit in support of their accommodation requests. *Id.* ¶ 3. The City may not terminate Plaintiffs or require them to opt-in to the extended leave program (and thereby waive their right to sue) while their requests are pending. *Id.* ¶ 4. The City has also affirmed that Plaintiffs who receive accommodations will be reinstated and receive all back pay and other benefits to which they are entitled. The question before us is thus whether *additional* preliminary relief is required until the City can decide Plaintiffs' renewed requests for a religious accommodation over the next few weeks.

We conclude that no such relief is required. Plaintiffs contend that they will be irreparably harmed if we do not reinstate them during this period. We

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 65 of 109 PageID
Case 21-2711, Document 117-1, 11/23/2021, 3218340, Page38 of 48
Case 1:24-cv-01664-NRM-LKE    Document 17    Filed 10/07/24    Page 38 of 48 PageID #: 164

disagree.  Though Plaintiffs will continue to be on leave without pay while the
City reconsiders their requests for religious accommodations, they have not
shown that this amounts to an *irreparable* harm in the circumstances here.  "In
government personnel cases," like this one, "we 'apply a particularly stringent
standard for irreparable injury' and pay special attention to whether the interim
relief will remedy any irreparable harm that is found."  *Mullins v. City of N.Y.*, 307
F. App'x 585, 587–88 (2d Cir. 2009) (quoting *Moore*, 409 F.3d at 512 n.6, in turn
quoting *Am. Postal*, 766 F.2d at 721).  Thus, we have held that when irreparable
harm arises "not from [an] interim discharge but from the threat of permanent
discharge" a preliminary injunction is inappropriate because harm would not be
"vitiated by an interim injunction."  *Moore*, 409 F.3d at 512 n.6 (quoting *Savage v.
Gorski*, 850 F.2d 64, 68 (2d Cir. 1988)).

Applying these principles here, Plaintiffs are not entitled to reinstatement
while the City reconsiders their requests for religious accommodations.  In
*Savage*, we held that even an "interim discharge" is insufficient to show irreparable
harm in the government employment context.  850 F.2d at 68.  It follows that the
City's decision to require Plaintiffs to remain on leave without pay for a few
additional weeks is inadequate to justify an injunction reinstating them pending

33

Case 1:24-cv-01664-NRM-LKE   Document 22   Filed 11/01/24   Page 66 of 109 PageID
Case 21-2711, Document 117-1, 12/28/2021, 3218540, Page34 of 48
Case 1:24-cv-01664-NRM-LKE   Document 17-1   Filed 10/07/24   Page 66 of 48 geID #: 165

redetermination of their requests for religious accommodations.[19]   And under the
Motions Panel Order, Plaintiffs will receive backpay if their requests for religious
accommodations are granted.   Motions Panel Order ¶ 5; *see Sampson*, 415 U.S. at
91 (holding that possibility of backpay obviates risk of irreparable harm).

In support of their argument that they are entitled to broader relief, Plaintiffs
contend that "[t]he loss of First Amendment freedoms, for even minimal periods
of time, unquestionably constitutes irreparable injury."   *Elrod v. Burns*, 427 U.S.
347, 373 (1976) (plurality opinion).   *But cf. Does 1-6*, 16 F.4th at 37 ("Even if,
arguendo, these claims [including a First Amendment claim] presumptively cause
irreparable harm, we think the state has overcome any such presumption."); *Bronx
Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003) ("[W]e have not
consistently presumed irreparable harm in cases involving allegations of the
abridgement of First Amendment rights.").

We do not gainsay the principle that those who are unable to exercise their
First Amendment rights are irreparably injured *per se*.   But this principle is not
applicable to the present case.   The City is not threatening to vaccinate Plaintiffs

---

[19]  This case does not require us to address whether an employer's decision to place
its employees on leave without pay for an extended period — *i.e.*, longer than the few
weeks required by the Motions Panel Order — could inflict irreparable harm.

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 67 of 109 PageID
Case 21-2711    Document 117-1    11/29/2021    3218340    Page 36 of 48
Case 1:24-cv-01664-NRM-LKE    Document 17    Filed 10/07/24    Page 3 of 48 PageID #: 166

against their will and despite their religious beliefs, which would unquestionably constitute irreparable harm.  Plaintiffs instead face economic harms, principally a loss of income, while the City reconsiders their request for religious accommodations.  "It is well settled, however, that adverse employment consequences," like the loss of income accompanying a suspension without pay, "are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages."  *We The Patriots*, 2021 WL 5121983, at *19 (citing *Sampson*, 415 U.S. at 91–92; *Savage*, 850 F.2d at 68).  Because those harms "could be remedied with money damages, and reinstatement is a possible remedy as well," *id.*, they do not justify an injunction reinstating Plaintiffs.  *See Savage*, 850 F.2d at 68 ("Since reinstatement and money damages could make appellees whole for any loss suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief."); *cf. A.H.*, 985 F.3d at 176 ("In cases alleging constitutional injury, a strong showing of a constitutional deprivation *that results in noncompensable damages* ordinarily warrants a finding of irreparable harm." (emphasis added)).

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 68 of 109 PageID
Case 21-2711, Document 117-1, 11/29/2021, 3218340, Page36 of 48
Case 1:24-cv-01664-NRM-LKE    Document 17    Filed 10/07/24    Page36 of 48 PageID #: 167

For that reason, this case is different from other pandemic-era cases that have found irreparable harm based on First Amendment violations. *See, e.g., Roman Cath. Diocese*, 141 S. Ct. at 67–68; *Agudath*, 983 F.3d at 636–37. Those cases involved restrictions on worshippers' rights to attend religious services and so directly prohibited them from freely exercising their religion. *See Agudath*, 983 F.3d at 636 ("The Free Exercise Clause protects both an individual's private right to religious belief and the performance of (or abstention from) physical acts that constitute the free exercise of religion, including assembling with others for a worship service.").

Not so here. Plaintiffs are not required to perform or abstain from any action that violates their religious beliefs. Because Plaintiffs have refused to get vaccinated, they are on leave without pay. The resulting loss of income undoubtedly harms Plaintiffs, but that harm is not irreparable. *See Sampson*, 415 U.S. at 91, 92 n.68 ("[L]oss of income[,] . . . an insufficiency of savings or difficulties in immediately obtaining other employment . . . will not [ordinarily] support a finding of irreparable injury, however severely they may affect a particular individual.").[20]

---

[20] Plaintiffs' request for backpay fails for an additional reason. Preliminary

36

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 69 of 109 PageID
Case 21-2711, Document 117-1, 11/29/2021, 3218349, Page37 of 43 #: 168
Case 1:24-cv-01664-NRM-LKE    Document 17-3    Filed 10/29/2021  Page37 of 43

### III.    Public Interest

We briefly address the remaining preliminary injunction factor, the public interest.    The public interest weighs in favor of the relief granted by the Motions Panel.    To the extent Plaintiffs were denied religious accommodations pursuant to a concededly "constitutionally suspect" process, the public interest favors affording them an opportunity for reconsideration.    *See Agudath*, 983 F.3d at 637 ("No public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal.").    Indeed, the City has not objected to providing that relief, fortifying our conclusion that it serves the public interest.    In sum, the relief afforded by the Motions Panel appropriately balances the equities by ensuring that Plaintiffs are not terminated or forced to waive their right to sue as the City reconsiders their requests for religious accommodation while, at the same time, the Vaccine Mandate, which is designed to further the compelling objective of permitting schools fully to reopen, continues in effect.

---

injunctions are appropriate only to prevent *prospective* harm until the trial court can decide the case on the merits.    Plaintiffs' request for backpay is (as the term *backpay* suggests) entirely retrospective.    We would thus deny Plaintiffs' request for backpay at this stage even if Plaintiffs had shown that their economic harms were irreparable.

(1994) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 702 (1979)); *accord New York Legal Assistance Grp. v. BIA,* 987 F.3d 207, 225 (2d Cir. 2021); *see also United States v. Nat'l Treasury Emps. Union,* 513 U.S. 454, 478 (1995) (teaching that courts should not "provide relief to nonparties when a narrower remedy will fully protect the litigants"); *United States v. Raines,* 362 U.S. 17, 21 (1960) (noting that the judicial power is limited to "adjudg[ing] the legal rights of litigants in actual controversies"); *Hawaii,* 138 S. Ct. at 2427 (Thomas, J., concurring) ("[A]s a general rule, American courts of equity did not provide relief beyond the parties to the case. . . .   American courts' tradition of providing equitable relief only to parties was consistent with their view of the nature of judicial power.").[21]

Plaintiffs repeatedly emphasize that they have raised "facial" challenges as if that permits them to obtain class wide relief without obtaining class certification. But we have rejected Plaintiffs' facial challenge to the Vaccine Mandate.   We also

---

[21] *Cf. Dep't of Homeland Sec. v. New York,* 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of stay) ("Equitable remedies, like remedies in general, are meant to redress the injuries sustained by a particular plaintiff in a particular lawsuit.   When a district court orders the government not to enforce a rule against the plaintiffs in the case before it, the court redresses the injury that gives rise to its jurisdiction in the first place. But when a court goes further than that, ordering the government to take (or not take) some action with respect to those who are strangers to the suit, it is hard to see how the court could still be acting in the judicial role of resolving cases and controversies."); *Gill v. Whitford,* 138 S. Ct. 1916, 1934 (2018) ("[S]tanding is not dispensed in gross:   A plaintiff's remedy must be tailored to redress the plaintiff's particular injury.").

reject Plaintiffs' attempt to transform their garden-variety "as applied" claims into

what are effectively claims on behalf of a class simply by styling them as "facial"

challenges.    Indeed, Plaintiffs' challenge is an end run around the rules governing

class certification.    Why, after all, would plaintiffs go to the trouble of

demonstrating "numerosity, commonality, typicality, and adequa[cy]" if they can

obtain classwide relief as Plaintiffs now propose?    *Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338, 349 (2011).

Relatedly, we do not reject Plaintiffs' theory because they failed to use the

words "class action" in the title of their complaint.    Rather, Plaintiffs *never moved

for class certification*, so no class has been certified.    And the rule that injunctive

relief should be narrowly tailored to prevent harm to the parties before the court

"applies with special force where," as here, "there is no class certification."

*California v. Azar*, 911 F.3d 558, 582–83 (9th Cir. 2018); *see id.* ("Injunctive relief

generally should be limited to apply only to named plaintiffs where there is no

class certification."); *see also Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003)

("While district courts are not categorically prohibited from granting injunctive

relief benefitting an entire class in an *individual suit*, such broad relief is rarely

justified because injunctive relief should be no more burdensome to the defendant

40

than necessary to provide complete relief to the plaintiffs." (citing *Yamasaki*, 442

U.S. at 702)); *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 171 (3d Cir. 2011)

(collecting cases in which courts have "found injunctions to be overbroad where

their relief amounted to class-wide relief and no class was certified").

Moreover, "[f]acial challenges are disfavored." *Wash. State Grange v. Wash.

State Republican Party*, 552 U.S. 442, 450 (2008).  The Supreme Court has

"strong[ly] admon[ished] that a court should adjudicate the merits of an as-

applied challenge before reaching a facial challenge to the same statute."

*Commodity Trend Serv. v. CFTC*, 149 F.3d 679, 683 (7th Cir. 1998) (citing *Bd. of Trs.

of State Univ. of New York v. Fox*, 492 U.S. 469, 484–86 (1989)); *see also Brockett v.

Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985) (refusing to facially invalidate statute

because "a federal court should not extend its invalidation of a statute further than

necessary to dispose of the case before it"); *see, e.g., United States v. Grace*, 461 U.S.

171, 175 (1983) (limiting review to the question of whether a statute was

unconstitutional "as applied" in certain contexts, even though plaintiffs raised a

facial challenge under the First Amendment).  Thus, "it is a proper exercise of

judicial restraint for courts to adjudicate as-applied challenges before facial ones

in an effort to decide constitutional attacks on the narrowest possible grounds and

to avoid reaching unnecessary constitutional issues." *Commodity Trend Serv.*, 149

F.3d at 690 n.5; *see Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 346–47 (1936)

(Brandeis, J., concurring) (articulating these foundational principles of judicial

restraint).    Consistent with these well-established principles, we decline to

expand the relief ordered by the Motions Panel to cover nonparties to this

litigation.[22]

## B. Conflict of Interest and Title VII

Plaintiffs finally contend that the interim relief afforded by the Motions

Panel is inadequate for two additional reasons.    Neither is persuasive.

First, Plaintiffs contend that including lawyers from the Office of the

Corporation Counsel on the citywide panel is improper because the Corporation

Counsel has a conflict of interest due to its participation in this litigation.    We

reject this argument.    The attorneys are advocates, not parties-in-interest.    *See,*

*e.g., MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619 (2d Cir. 2004) (rejecting the argument

that an agency's "role as [the petitioners'] adversary in litigation prevented it from

---

[22] The *Kane* Plaintiffs have filed an amended class action complaint in the district court, and the *Keil* Plaintiffs have requested permission to file such a complaint. Without expressing a view as to these amended complaints, we note that remand will permit the district court to consider these complaints in the first instance.

being an impartial administrative adjudicator in the petitioners' administrative action" (citing *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1104 (D.C. Cir. 1988)).

Second, the *Keil* Plaintiffs object to the Motions Panel Order's statement that consideration by the citywide panel must comport with Title VII and other applicable state and City law. They argue that the citywide panel must follow the First Amendment. It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings.

We conclude by noting that while the *Keil* Plaintiffs do not invoke Title VII in their lawsuit, that statute will be highly relevant to their renewed requests for religious accommodations. Under the Supreme Court's decision in *Smith*, the First Amendment likely does not require any religious accommodations whatsoever to neutral and generally applicable laws. *See Shrum v. City of Coweta*, 449 F.3d 1132, 1143 (10th Cir. 2006) (McConnell, J.) ("[T]he mere failure of a government employer to accommodate the religious needs of an employee, where the need for accommodation arises from a conflict with a neutral and generally

applicable employment requirement, does not violate the Free Exercise Clause, as

that Clause was interpreted in *Smith*.").

In contrast, Title VII requires employers to offer reasonable religious

accommodations in certain circumstances.    *See We The Patriots*, 2021 WL 5121983,

at *17.    *See generally* U.S. Equal Employment Opportunity Comm'n, *What You*

*Should Know about COVID-19 and the ADA, the Rehabilitation Act, and Other EEO*

*Laws* § L *Vaccinations – Title VII and Religious Objections to COVID-19 Vaccine*

*Mandates* (last updated Oct. 28, 2021).    Title VII does not, however,

> require covered entities to provide the accommodation that [an
> employee] prefer[s]—in this case, a blanket religious exemption
> allowing them to continue working at their current positions
> unvaccinated.    To avoid Title VII liability for religious
> discrimination, . . . an employer must offer a reasonable
> accommodation that does not cause the employer an undue hardship.
> Once any reasonable accommodation is provided, the statutory
> inquiry ends.

*We The Patriots*, 2021 WL 5121983, at *17.    In providing religious

accommodations, a government employer must abide by the First Amendment.

As we have explained, and based only on the record developed to date,

Plaintiffs have demonstrated a likelihood of success on their claim that as applied

to them, the City's process for implementing the Vaccine Mandate via the

Arbitration Award offended the First Amendment.    But we do not suggest that

Plaintiffs are in fact entitled to their preferred religious accommodations — or *any* religious accommodation, for that matter — under Title VII (or the First Amendment). Our decision is narrow. We conclude only that the interim relief put in place by the Motions Panel should continue so that Plaintiffs, with the consent of the City, are afforded an opportunity to have their accommodation requests promptly reconsidered.

To the extent Plaintiffs raise other objections to the process by which their requests for accommodations will be adjudicated by the citywide panel, those objections are best addressed by the district court on remand. Plaintiffs are free to renew their First Amendment (and other) objections before the district court.

## CONCLUSION

For the foregoing reasons, we VACATE the district court's order denying preliminary injunctive relief. Further, we ENJOIN Defendants consistent with the terms of the Motions Panel Order. This injunction will remain in place during reconsideration of Plaintiffs' renewed requests for religious accommodations. Within two weeks of the conclusion of Plaintiffs' proceedings before the citywide panel, the parties shall inform the district court (rather than this merits panel) of the result of those proceedings and advise of any further relief being sought.

45

Finally, we REMAND the case to the district court for further proceedings consistent with this opinion, making clear that the district court may alter the terms of the preliminary relief we have ordered or set them aside, as circumstances and further development of the record may require.

**APPENDIX**

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:      Pierre N. Leval,
             José A. Cabranes,
             Denny Chin,
                  *Circuit Judges.*

_____

Michael Kane, William Castro, Margaret Chu,
Heather Clark, Stephanie Di Capua, Robert Gladding,
Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad
Smith, Amaryllis Ruiz-Toro,

|                                          |              |
|------------------------------------------|--------------|
| *Plaintiffs-Appellants,*                 | **ORDER**    |
| v.                                       | 21-2678-cv   |

Bill de Blasio, in his official capacity as Mayor of
the City of New York, David Chokshi, in his
official capacity of Health Commissioner of the
City of New York, New York City Department of
Education,

                         *Defendants-Appellees.*

_____

Matthew Keil, John De Luca, Sasha Delgado,
Dennis Strk, Sarah Buzaglo,

|                                          |              |
|------------------------------------------|--------------|
| *Plaintiffs-Appellants,*                 |              |
| v.                                       | 21-2711-cv   |

The City of New York, Board of Education of the
City School District of New York, David Chokshi, in
his Official Capacity of Health Commissioner of the
City of New York, Meisha Porter, in her Official

Capacity as Chancellor of the New York City
Department of Education,

                        *Defendants-Appellees.*

---

The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal
having been heard at oral argument on November 10, 2021, and Defendants-Appellees
("Defendants") having represented to this Court that "the City is working toward making an
opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully
sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

**ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on
November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious
   accommodation by a central citywide panel consisting of representatives of the
   Department of Citywide Administrative Services, the City Commission on Human
   Rights, and the Office of the Corporation Counsel.
2. Such consideration shall adhere to the standards established by Title VII of the Civil
   Rights Act of 1964, the New York State Human Rights Law, and the New York City
   Human Rights Law. Such consideration shall not be governed by the challenged criteria
   set forth in Section IC of the arbitration award for United Federation of Teachers
   members. Accommodations will be considered for all sincerely held religious
   observances, practices, and beliefs.
3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be
   considered within two weeks of entry of this order. The citywide panel shall issue a
   determination on each request no later than two weeks after a plaintiff has submitted such
   information and materials. Within two business days of the entry of this order,
   Defendants shall inform plaintiffs' counsel how such information and materials should be
   transmitted to the citywide panel.
4. The deadline to opt-in to the extended leave program and execute any accompanying
   waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's
   employment for noncompliance with the vaccination requirement.
5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay
   running from the date they were placed on leave without pay.
6. This order is intended only to provide for temporary interim relief until the matter is
   considered by the merits panel of this court, which panel may entirely supersede these
   provisions for interim relief, and the parties are at liberty to advocate to the merits panel
   for alteration of these provisions. Unless the merits panel has previously entered a
   superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before
   the citywide panel, the parties shall inform the merits panel of the result of those
   proceedings and advise of any further relief being sought.

                                    FOR THE COURT:
                                    Catherine O'Hagan Wolfe, Clerk

# Exhibit N

# City Wide Panel Denials

**From:** noreply@salesforce.com <noreply@salesforce.com> on behalf of NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
**Sent:** Monday, March 7, 2022 10:40 AM
**To:**
**Subject:** Reasonable Accommodation Appeal Determination

The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

The decision classification for your appeal is as follows: The employee has failed to establish a sincerely held religious belief that precludes vaccination. DOE has demonstrated that it would be an undue hardship to grant accommodation to the employee given the need for a safe environment for in-person learning

**For all employees other than DOE employees:** Pursuant to the City of New York's policy concerning the vaccine mandate, you now have **three business days** from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).

**For Department of Education (DOE) employees:** Pursuant to New York City Department of Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination. For further information and instructions, please see DOE Denial of Appeal Information.

# Exhibit O

# Scheinman June 27, 2022

NYSCEF DOC. NO. 24-cv-01664-NRM-LKE    Document 17   Filed 10/07/24    Page 83 of 109 PageID #: 182
NYSCEF DOC. NO. 24                                                    RECEIVED NYSCEF: 07/01/2022



**SCHEINMAN**
ARBITRATION & MEDIATION SERVICES

June 27, 2022

**Via E-Mail Only**
Liz Vladeck, Esq.
New York City Department of Education
Office of the General Counsel
52 Chambers Street, Room 308
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Michael Mulgrew, President
Beth Norton, Esq.
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:     **Board of Education of the City School District of the City of New York**
        **and**
        **United Federation of Teachers, Local 2, AFT, AFL-CIO**
        **(Proof of Vaccination)**

Dear Counsel:

Enclosed please find my Opinion and Award in the above referenced matter.

I have also enclosed my bill for services rendered.

Thank you.

Sincerely,

*Martin F. Scheinman*

MFS/sk
NYCDOE.UFT.proof of vaccination.trans

322 Main Street ◆ Port Washington, NY 11050 ◆ 516.944.1700 ◆ fax: 516.944.1771 ◆ www.ScheinmanNeutrals.com

Case 1:24-cv-01664-NRM-LKE   Document 22   Filed 11/01/24   Page 84 of 109 PageID
NYSCEF DOC. NO. 31   Case 1:24-cv-01664-NRM-LKE   Document 17   Filed 10/07/24   Page 84 of 109 PageID #: 183
RECEIVED NYSCEF: 07/01/2022

```
----------------------------------- X
In the Matter of the Arbitration
                                    X
            between
                                    X      Re: Proof of
BOARD OF EDUCATION OF THE CITY                 Vaccination
SCHOOL DISTRICT OF THE CITY OF      X
NEW YORK
                                    X
            "Department"
                                    X
            -and-
                                    X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO               X

            "Union"                 X

----------------------------------- X
```

**APPEARANCES**

### For the Department
   Liz Vladeck, General Counsel

### For the Union
STROOCK & STROOCK & LAVAN, L.L.P.
   Alan M. Klinger, Esq.

   Beth Norton, Esq., UFT General Counsel
   Michael Mulgrew, UFT President

**BEFORE:**   Martin F. Scheinman, Esq., Arbitrator

## BACKGROUND

The Union protests the Department's decision to summarily place approximately eighty two (82) Department employees on leave without pay, with benefits, effective April 25, 2022.  This action was based upon information the Department received from a separate investigative agency these employees' proof of COVID-19 vaccination was allegedly fraudulent.  The Union contends the issue of whether the Department's action is proper and falls within the scope of my September 10, 2021, Award ("Award").

Most of the basic facts are not in dispute.

In July 2021, former Mayor de Blasio announced a "Vaccine-or-Test" mandate which required the City workforce, including the educators, to either be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.  Thereafter, on August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in Department buildings. Those employees would be subject to a "Vaccine Only" mandate.  That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto Department premises, would not be paid for work and would be at risk of loss of job and benefits.

2

NYSCEF DOC. NO. 31    Case 1:24-cv-01664-NRM-LKE    Document 17-39 Filed 10/07/24    Page 86 of 109 PageID #: 185
RECEIVED NYSCEF: 07/01/2022

This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021.  That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation.  Nor did it address matters of due process with regard to job and benefits protection.

The Union promptly sought to bargain the impact and implementation of the Vaccine Only mandate.  The parties had a number of discussions, but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters.  The Department did not challenge the statement of impasse and PERB appointed me to mediate the matters.  Mediation sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions.  Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved.  By agreement of the parties, the process moved to arbitration.  They asked I serve as arbitrator.

Arbitration sessions were then held.  On September 10, 2021, I issued an Award which set forth a detailed procedure to be followed in the cases of employees who sought an exemption to the Vaccination Mandate based on a medical condition or religious reasons.

3

Case 1:24-cv-01664-NRM-LKE   Document 22   Filed 11/01/24   Page 87 of 109 PageID
NYSCEF DOC. NO. 31   Case 1:24-cv-01664-NRM-LKE   Document 17-35   Filed 10/07/24   Page 87 of 109 PageID #: 186
RECEIVED NYSCEF: 07/01/2022

In accordance with the procedure set forth in my Award,
employee requests for an exemption were initially submitted to the
Department along with any supporting documentation.   An employee
wishing to appeal an adverse determination by the Department was
given the opportunity to appear at a hearing before an impartial
arbitrator who was authorized to render a final and binding
decision.   Approximately five hundred (500) appeals were
determined by the arbitration process.   Pending the arbitrator's
decision, the employee could not be removed from the payroll.

On April 19, 2022, the Department informed approximately
eight two (82) employees they were being placed on leave without
pay, with benefits, effective April 25, 2022, based on allegations
their proof of COVID-19 vaccination was fraudulent.   The employees
were told they could contact the Department if they believed the
allegation they submitted fraudulent proof of vaccination was
wrong.   On April 21, 2022, the Union wrote the Department and
demanded it rescind its decision to remove these employees from
the payroll without the benefit of a due process hearing.

By letter dated April 22, 2022, the Department set forth its
position placement of these employees on a leave without pay status
did not constitute discipline, and, therefore, did not implicate
the disciplinary procedures set forth in the Education Law or the
parties' Collective Bargaining Agreement ("Agreement").

4

Thereafter, by letter dated May 3, 2022, the Union wrote to me requesting I take jurisdiction over this dispute. The Union cited to that portion of the Award which states "should either party have reason to believe the process set forth herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution".

By letter dated May 4, 2022, the Department wrote in opposition to the Union's May 3, 2022, letter. The Department stated it was in full compliance with my Award, as well as the Agreement and applicable law. The Department also insisted this matter was not properly before me.

On May 4, 2022, I conducted a conference call with the parties. At that time, each side was given the opportunity to argue their positions.

Thereafter, on May 6, 2022, the Union submitted further argument in support of its position. The Department responded in a letter dated May 10, 2022.

Upon my receipt of the parties' written submissions, I closed the record.

### DISCUSSION AND FINDINGS

**The Issues:**

The basic issues to be decided are as follows:

5

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 89 of 109 PageID
Case 1:24-cv-01664-NRM-LKE    Document 17    Filed 10/07/24    Page 89 of 109 PageID #: 188
NYSCEF DOC. NO. 31                                                    RECEIVED NYSCEF: 07/01/2022

1. Is the Department's decision to place the approximately eighty two (82) employees on leave without pay, with benefits, subject to my jurisdiction pursuant to the September 10, 2021, Award?

2. If so, what shall be the remedy?

## Position of the Parties

The Department insists the facts of circumstances regarding its placement of the eighty two (82) employees on leave without pay, with benefits, is not within my jurisdiction pursuant to the Award. According to the Department, the Award sets forth an expedited process to review Department employees' requests for exemptions and accommodations from the August 21, 2021, mandate to submit proof of COVID-19 vaccination by September 29, 2021. The Department maintains the requests for an exemption or accommodation were limited to medical and religious grounds. It contends no other issue is covered by the Award.

The Department contends it placed the employees on a leave without pay status as a result of the Department's receipt of information from a law enforcement agency the employees in question submitted fraudulent proof of vaccination in order to comply with Commissioner Chokshi's order which required vaccination of all Department staff.

According to the Department, the Courts have held compliance with the Commissioner Chokshi's Order is a "condition of

6

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 90 of 109 PageID
NYSCEF DOC. NO. 31    Case 1:24-cv-01664-NRM-LKE    Document 17-9 Filed 10/07/24    Page 90 of 109 PageID #: 189
RECEIVED NYSCEF: 07/01/2022

employment". The Department maintains this situation is no different to the Department's unilateral action against an employee who is not certified. As such, the Department maintains placing employees on leave without pay for failing to comply with the Commissioner Chokshi's Order comports with applicable due process procedures as long as notice is given, and the employee has an opportunity to respond. In support of its position the Department cites Broecker v. N.Y. Dep't of Educ., 21-CV-6387, 2022 WL 426113 at *7-8 (E.D.N.Y. Feb. 11, 2022); and N.Y. City Mun. Labor Comm. V. City of New York, 151169/2022 (Sup. Ct. N.Y. County Apr. 21, 2022).

The Department argues employees who are identified in connection with a law enforcement investigation into the submission of fraudulent vaccination cards are outside the scope of the Award. Furthermore, the Department insists the Award's reference to a party's failure to implement the process does not apply to the facts and circumstances presented, here. According to the Department, the language relied upon by the Union refers specifically to the "administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school". The Department asserts since that process is not at issue, here, the Union's claim is misplaced.

For the reasons set forth above, the Department contends the Union's request for relief pursuant to the Award must be denied.

The Union, on the other hand, argues the Department's decision to place these employees on leave without pay, with benefits, is predicated on the Award.  It insists this matter is subject to my continued jurisdiction.  The Union asserts the Agreement prohibits an employee from being removed from the payroll without establishing probable cause in a due process hearing. [1]

The Union maintains the Department's contention this situation is akin to the removal of an uncertified employee is misplaced.  According to the Union, approval of certification is issued by the State.  In addition, the Union insists an employee is either certified by the State or is not, there is no underlying question of fact to be determined.  The Union asserts if an employee proves they have completed all of the necessary paperwork, but they are not yet certified, they will not be terminated.

The Union urges in this instance 'the Department made a unilateral decision to place the employees on leave, without pay, based solely on a communication from another agency the employees were not vaccinated.  The Union contends the Department has no direct knowledge of whether that assertion is true or false.

---

[1] There are limited exceptions to this procedure which are inapposite.

8

Case 1:24-cv-01664-NRM-LKE   Document 22   Filed 11/01/24   Page 92 of 109 PageID
NYSCEF DOC. NO. 19   Case 1:24-cv-01664-NRM-LKE   Document 17-3   Filed 10/07/24   Page 92 of 109 PageID #: 191
RECEIVED NYSCEF: 07/01/2022

According to the Union, the Department removed the employees from the payroll and subsequently allowed them to provide additional evidence they are vaccinated.  The Union maintains as of May 6, 2022, employees who have contacted the Department asserting they have been placed on leave without pay in error have not received any response, yet they remain suspended without pay.

The Union asserts the only authority for the Department to place employees on leave without pay, with benefits, is the Award. It contends the Department is improperly invoking the Award, and the action cannot be taken until the dispute concerning their vaccination status is determined through the Award's stated process.

In short, the Union argues the Department's unilateral decision to place employees on leave without pay, with benefits, based on the communication from another agency the employees are not vaccinated falls within the jurisdiction of the Award.

**Opinion**

Certain preliminary comments are appropriate.  As an arbitrator my role is a limited one.  In order for me to determine whether I can assert jurisdiction over the Department's actions as alleged by the Union, I am limited by the language of the Award. If the Award is clear, I must enforce it according to its plain meaning.

9

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 93 of 109 PageID
NYSCEF DOC. NO. 24 Case 1:24-cv-01664-NRM-LKE    Document 17-36 Filed 10/07/24    Page 93 of 109 PageID #: 192
RECEIVED NYSCEF: 07/01/2022

With these principles in mind, I turn to the facts presented.

I find I have jurisdiction to consider this matter.  While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay.  Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

Leave without pay is an unusual outcome.  Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied.  This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

Implicit in such a designation of leave without pay is the individual failed to comply with the vaccine mandate.  Here, there is a dispute whether the employees did or did not comply.  Without that being assessed, or at least submitting evidence to show a high likelihood of non-compliance, the predicate for placing an employee on leave without pay does not exist.

The Department's decision to automatically place these employees on leave without pay is inconsistent with the language and underpinnings of my Award.  Nothing in the Award grants the Department such use of leave without pay status.

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 94 of 109 PageID
NYSCEF DOC. NO. 43e No. 24-cv-01664-NRM-LKE    Document 1-7 Filed 10/07/24    Page 94 of 109 PageID #: 193
RECEIVED NYSCEF: 07/01/2022

Based upon the above, I find the Department failed to properly implement the due process protections of my Award.  The Union has the right to assert the Department's process "is not implemented in good faith."  To be clear, nothing in my Award was intended to abrogate any due process rights the parties otherwise maintained with regard to employment status.

I also disagree with the Department's position the court decisions it cites support the removal of these employees from pay status without a hearing.  Those court decisions confronted an entirely different factual scenario.  Unlike this matter, in those cited cases, there was no claim the employees at issue were vaccinated.

In denying the request for a preliminary injunction, Justice Kim, in NYC Municipal Labor Committee, supra., specifically found the absence of that factual issue in her determination.  Here, of course, the employees assert they are in fact vaccinated.  This raises a factual issue that is ripe for adjudication pursuant to my Award.

Based on the reasons set forth above, I take jurisdiction over the Department's placement of the approximately eighty two (82) employees placed on leave without pay, with benefits.  The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an

11

Case 1:24-cv-01664-NRM-LKE   Document 22   Filed 11/01/24   Page 95 of 109 PageID
NYSCEF DOC. NO. 43 Case 1:24-cv-01664-NRM-LKE   Document 17-3 Filed 10/07/24   Page 95 of 109 PageID #: 194
RECEIVED NYSCEF: 07/01/2022

employee's claim they have submitted proof of vaccination.  If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

**AWARD**

1.  Pursuant to Section 1L of my Award dated September 10, 2021, I shall assume jurisdiction over the Department's decision to place eighty two (82) employees on leave without pay, with benefits, effective April 25, 2022.

2.  The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an employee's claim they have submitted proof of vaccination.  If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NASSAU    )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.CHIARA.SARAHZIAN.AWD

13

# Exhibit P

## Remote Home Reassignment



**Department of Education**

October 17, 2022

POSITION:   Teacher
SCHOOL:     19K504
EID #:
NETWORK:   Brooklyn North

Dear Mr. _____ :

Due to NYC Department of Education administrative office space changes, beginning Tuesday, October 18, 2022, you are hereby temporarily directed to report remotely while administratively reassigned.

Please note that this temporary assignment is subject to change at any time. As you must be able report in-person when directed by this office, it is required that you remain in the NYC area on scheduled days of work.  Any specific work assigned to you will be provided to you via your DOE email.

To document your attendance, you are required each work day to email both your payroll secretary **and** OPIReassignedStaff@schools.nyc.gov from your DOE email account that you are beginning your work day and ending your work day. You must submit each start/end day email within 15-minutes of the start and end of your typical work shift, unless instructed otherwise by the Reassigned Staffing Team. Emails submitted outside the +/- 15-minute window will not be accepted, and you will be marked absent.

Any questions should be directed to OPIReassignedStaff@schools.nyc.gov.

Thank you for your prompt attention to this matter.

Sincerely,

Katherine G. Rodi
Executive Director, Office of Employee Relations

KGR/lv

c:
      Principal
      Reassigned Staffing Team
      Superintendent

Signature _____        Date _____ 10/17/22

# Exhibit Q

## Remote Teacher i zone

# TEACHER VACANCY CIRCULAR NO 4 CENTRAL REMOTE TEACHERS iZONE 2022 2023

NYC Department of Education
3.93.9 out of 5 stars
Remote
Full-time

## Location

Remote

## Full job description

# TEACHER VACANCY CIRCULAR NO 4 CENTRAL REMOTE TEACHERS iZONE 2022 2023

Posted Date: May 6, 2022 Deadline: Jun 3, 2022
New York United States
VIRTUAL

## Job Details

**(SUBJECT TO BUDGET AVAILABILITY)**

**POSITION:**

## Teacher - Central

Remote Instruction Teachers

**License/Eligibility Requirements:**

New York City licensed Social Studies, Science, English, Foreign Language, Math and Health tenured teachers in High School Grade Levels.

**Office:**

iZone

**Location:**

82-01 Rockaway Blvd, Ozone Park, NY 11416

Or other DOE offices

**Remote Teachers**

**Position Summary:**

Virtual Learning Classrooms aim to partner teachers from around the city with students to provide them with increased access to courses not available in their home schools, including, but not limited to Electives, AP Courses, and Foreign Language courses. This posting is for teachers interested in teaching in this full time program from September 2022 - June 2023. Remote instruction teachers will deliver instruction to and communicate with high school students in other locations using internet and required technological platforms. Please note that while students will not be in the same location as the teacher, this is an in person teaching position.

Remote Teachers are licensed teachers of high school grade levels who teach students virtually. Remote teachers will teach students in the following subject areas: Advanced Placement Subjects (Including but not limited to, AP Psychology, AP Spanish, AP US History, AP World History, AP Government, AP Calculus AB/BC, AP Macroeconomics, AP Statistics, AP Computer Science Principles and A, AP Environmental Science, AP English Language and Literature, and AP Seminar), electives (Including but not limited to, Forensics, Health, Media Literacy, Financial Literacy, science electives, Computer Science and Business) and Foreign Languages (Including but not limited to, Spanish, Chinese and French). Other subjects may be added. Students may be enrolled from multiple schools simultaneously, but total class size will not exceed contractual limits. Remote Teachers will be expected to participate in 10 sessions of professional learning workshops including an online course leading to a Learning Management System certification to occur during July and/or August prior to commencement of position with remaining

on-going professional learning during the year and will be paid at the per session rate for work beyond the contractual workday/work year. Remote teachers will perform required duties (including corresponding with home school staff, planning for remote instruction and assessment, communication and conferencing with students and/or parents). Duties and responsibilities are intended to emulate traditional teaching paradigms and create an equitable learning experience.

**Reports to:**

DIIT iZone Supervisor

**QUALIFICATIONS:**

- Minimum of four (4) years of teaching experience as a regularly appointed teacher. Knowledge of the common core standards as it relates to course.

- Extensive knowledge of the New York State and City Standards, meets Advanced Placement requirements (as appropriate) and is licensed in subject matter.

- Demonstrated expertise in an online learning environment designing and implementing standards-based instruction that specifies clear learning objectives, includes engaging activities and authentic assessments to measure mastery.

- Willingness to promote online dialogue to deepen the learning experience.

- Demonstrated ability with written and oral communications emphasis placed on the delivery of digital presentations.

- Demonstrated ability to use online learning, communication and other edtech tools as appropriate.

- Can differentiate instruction for individuals or groups of students based on instructional data and analysis as well as student characteristics.

- Can sustain and document flexible teaching schedules, which account for asynchronous and synchronous activities that are student-centered and maintain high standards for student engagement and success.

- Selected candidates will be asked to facilitate a demonstration lesson or planning activity to demonstrate aforementioned qualifications.

**PREFERRED SKILLS:**

- o Demonstrated skill in team building, group dynamics, and facilitating collaborative learning.
- o Proven history of being a self-starter who works well without constant supervision.

**DUTIES AND RESPONSIBILITIES:**

- Demonstrate competency in using data from assessments and other data sources to modify content and guide student learning.

- Modify engaging content and appropriate assessments in an online environment.

- Provide quality instruction to students using asynchronous and synchronous teaching methods (I.e. asynchronous = discussion forums, group work, written and digital assignments, posted content. Synchronous = online classrooms, webinars, chat rooms).

- Employ student-centered instructional strategies that are connected to real-world applications to engage students in learning.

- Facilitate and monitor online instruction groups/discussions to promote learning through higher-order thinking and group interaction.

- Provide a variety of ongoing and frequent teacher-student, teacher-teacher, and teacher-administrator interaction with participating schools.

- Provide prompt feedback, communicate high expectations, and teach to diverse talents and learning styles.

- Online communication between students and teachers is a significant component of this program to mimic in person communication. Therefore, teachers are expected to respond to student emails and grade assignments within 2 workdays, as well as monitor and respond to discussion postings daily during the school week.

Case 1:24-cv-01664-NRM-LKE   Document 22   Filed 11/01/24   Page 104 of 109 PageID
#: 368
Case 1:24-cv-01664-NRM-LKE   Document 17   Filed 10/07/24   Page 104 of 109 PageID #: 203

- Regularly share with home school(s) student data including but not limited to grades and attendance. This includes the use of school selected platforms and systems.

- Incorporate and comply with FERPA, AUP and communicate privacy guidelines to students.

- Select and use a variety of online tools for communication, productivity, collaboration, data and performance analysis, presentation, research, and online content delivery as appropriate to the content area and student needs.

- Use communication technologies in a variety of mediums and contexts for teaching and learning.

- Apply technical troubleshooting skills (downloading plug-ins, uploading assignments, etc.)

- Participate in all professional development and peer mentoring exercises throughout the duration of service.

- Develop key relationships in order to work closely with home school staff, students and parents of participating schools, guidance counselors and central iZone staff.

- Participate in activities to identify best practices, address challenges and assess efficacy.

**WORKING CONDITIONS & LOCATION:**

- The maximum class size of a full virtual course not exceed UFT contractual limits.

- Teachers shall not be assigned more than twenty five (25) teaching periods per week and may teach up to five (5) remote classes; however, the maximum number of distinct courses shall not exceed three (3).

- Teachers must confer with students synchronously during programmed periods each week, as well as be available for asynchronous teaching approaches including but not limited to office hours, individual and small group conferencing and providing direction for independent student

work. Facilitate learning through supplied curriculum that teachers may supplement.

- Teachers are expected to teach in person from 82-01 Rockaway Blvd, Ozone Park, NY 11416 or other DOE office.

**Hours:**

As per Article Six of the Collective Bargaining Agreement

**Salary:**

As per UFT Contract

**Work Year:**

As per Article Six of the Collective Bargaining Agreement

**APPLICATION INSTRUCTIONS:**

Please be sure application includes cover letter, resume and your 6-digit file number.

Please send application via email to the following email address: iLearnNYC@schools.nyc.gov with the Subject line: "Fulltime Remote Teacher application."

Applications will be accepted through:

# JUNE 3, 2022

# An Equal Opportunity Employer M/F/D

It is the policy of the Department of Education of the City of New York to provide equal employment opportunities without regard to actual or perceived race, color, religion, creed, ethnicity, national origin, alienage, citizenship status, age, marital status, partnership status, disability, sexual orientation, gender(sex), military status, unemployment status, caregiver status, consumer credit history, prior record of arrest or conviction(except as permitted by law), predisposing genetic characteristics, or status as a victim of domestic violence, sexual offenses and stalking, and to maintain an environment free of harassment on any of the above - noted grounds, including sexual

Case 1:24-cv-01664-NRM-LKE    Document 22    Filed 11/01/24    Page 106 of 109 PageID
Case 1:24-cv-01664-NRM-LKE    Document 17    Filed 10/07/24    Page 106 of 109 PageID #: 205
#: 370

harassment or retaliation. For more information, please refer to the DOE Non -
Discrimination Policy.

 

# Exhibit R

# MLC Letter 8/12/24

Case 1:24-cv-01664-NRM-LKE   Document 22   Filed 11/01/24   Page 108 of 109 PageID
#: 3732
Case 1:24-cv-01664-NRM-LKE   Document 17   Filed 10/07/24   Page 108 of 109 PageID #: 207

# Municipal Labor Committee

55 Water Street, 23rd Floor / New York, NY 10041 / (212) 815-1474

**CHAIRPERSON**
KARRN NEBPILI
Local 0333 , I.B.T., Uniformed
Sanitationmen's Association, AFL-CIO

**CO-CHAIRPERSON**
HENRY A. GARRIDO
District Council 37, AFSCME, AFL-CIO

**EXECUTIVE VICE-CHAIR**
MICHAEL MULGREW
United Federation of Teachers, AFT-CIO

**SECRETARY**
GREGORY FLOYD
Local 237
City Employees Union, I.B.T., AFL-CIO

**TREASURER**
MARK CANNIZZARO
Council of School Supervisors &
Administrators

**VICE CHAIRPERSONS**
ANDREW ANSBRO
Uniformed Firefighters Association

BENNY BOSCIO, JR.
Correction Officers' Benevolent Association

BARBARA BOWEN
Professional Staff Congress
City University of New York

JOSEPH COLANGELO
B.S.I.U. New York City Local 246

ROBERT CROGHAN
Organization of Staff Analysts

JUDITH A. CUTCHIN
New York State Nurses Association

PAUL DIGIACOMO
Detectives' Endowment Association

JAMES LEMONDA
Local 854, Uniformed Fire Officers
Association, AFL-CIO

MARTIN K. LYDON
District Council of Carpenters, AFL-CIO

WILLIAM M. LYNN
International Union of Operating Engineers
Local 30, AFL-CIO

JOSEPH MANNION
Sanitation Officers Association

GLORIA MIDDLETON
Local 1180, NYC Administrative
Employees CWA, AFL-CIO

FRANK PROSCIA, M.D.
Doctors Council

PETER STEIN
Local 508, NYC Lifeguard Supervisors
AFSCME, AFL-CIO

LOUIS TURCO
Lieutenants Benevolent Association

SAUL VARGAS DOORI
Local 1407, NYC Accountants, Statisticians
& Actuaries, AFSCME, AFL-CIO

ANTHONY WELLS
Local 371, Social Service Employees,
AFSCME, AFL-CIO

**Executive Secretary**
ELLEN MEDOWAY

August 12, 2021

Hon. Dean Fuleihan
First Deputy Mayor
City of New York
City Hall
New York, New York 10007

Hon. Emma Wolfe
Chief of Staff and
  Deputy Mayor for Administration
City of New York
City Hall
New York, New York 10007

Hon. Renee Campion
Commissioner
New York City Office of Labor Relations
22 Cortlandt St.
New York, NY 10007

Dear All:

I write to express the severe concern—and great disappointment—of the MLC Union leaders on the lack of progress in arriving at a negotiated program to implement the City's vaccine/testing policy.

Several weeks ago, the City announced, without prior consultation or bargaining with the Unions, a policy that would require public employees either to be vaccinated or be tested weekly to avoid suspension without pay. Despite this unilateral action, with an eye towards the unfortunate advance of the Delta variant, the MLC's officers agreed to meet and discuss the proposed policy with you and numerous other key City officials on July 28th. The tenor of the discussion, we thought, was the City's desire to work collaboratively with the Unions to navigate a path towards achieving the objectives of the policy.

City leadership collectively asked the Union leaders to provide proposals and raise concerns, which we did. Primary among those concerns was the major logistical hurdle of providing timely and accessible testing to the likely 100,000 City workers who, despite the encouragement of many (including Union leaders), would opt out of vaccination for medical, religious and other reasons. This major dilemma, the Unions warned, would exist even if the policy was successful in encouraging a significant portion of the currently unvaccinated employees to vaccinate.

Page 2...Vaccine/Testing Policy

The MLC officers cautioned that logistics take time to work out, would necessarily be agency specific in places and that, without proper planning, the City would be in a position of having to order so many employees home without pay that there would be insufficient staffing to carry out the duties required to appropriately provide services to the residents of the City. We also raised fundamental questions, including, with regard to testing, whether it would be performed at the work site and on work time, and if not, where testing would be available and how workers would be compensated for complying with the mandated policy.

The discussion concluded on a hopeful note with the City agreeing to take back many of the comments, concerns and suggestions for consideration and to continue the discussions with the Unions. *That was two weeks ago.* While there have been sporadic discussions with some, MLC inquiries regarding these essential matters have essentially gone unanswered. This is unacceptable.

The MLC and its leaders have been firm and consistent that while the Unions support encouraging vaccination (and have made considerable efforts on their own to encourage their members to vaccinate), they will not abdicate their legal right and responsibility to protect the rights of workers to opt for either vaccination or testing, to be held harmless for both the time and cost of testing and vaccination, and to have a fair process for any form of discipline. Make no mistake, despite calling this a vaccination policy, the City's proposal creates a new criterion and process for discipline that would allow agencies to suspend workers without pay and without the typical forms of due process provided for under collective bargaining agreements and law.

Accordingly, we seek a prompt meeting to continue this vital discussion. In the meantime, no policy should be implemented before it is negotiated.

Sincerely,

*Harry Nespoli*

Harry Nespoli
Chair

cc:  **Henry Garrido**
Co-Chair
District Council 37

**Michael Mulgrew**
Executive Vice Chair
United Federation of Teachers

**Gregory Floyd**
Secretary
Local 237, City Employees Union

**Mark Cannizzaro**
Treasurer
Council of School Supervisors & Administrators