UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Maureen Hurley, | |
| Plaintiff, | 24-CV-1664 (NRM) (LKE) |
| v. | **MEMORANDUM AND ORDER** |
| The Department of Education of the City of New York, | |
| Defendant. | |

**NINA R. MORRISON**, United States District Judge:

Plaintiff Maureen Hurley ("Hurley") brings this action under Title VII of the Civil Rights Act of 1964, alleging religious discrimination on her sincerely held religious beliefs and a failure to accommodate those beliefs. She also brings claims under the U.S. Constitution — a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment, a procedural due process claim under the Fourteenth Amendment, claims under the First Amendment, and a "Stigma Plus" due process claim — as well as claims of fraud in the inducement, cooperative dialogue, and state law claims under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the New York Education Law, and possibly the New York Civil Service Law. Plaintiff's claims revolve around Defendant New York City Department of Education's ("DOE") denial of her religious exemption request from a COVID-19 vaccine mandate and the

subsequent termination of her employment for failing to vaccinate.  Defendant has moved to dismiss the complaint in its entirety.

For the reasons below, the Court <u>grants</u> Defendant's motion to dismiss Plaintiff's federal claims and declines to exercise supplemental jurisdiction on Plaintiff's state law claims.

## FACTUAL BACKGROUND

Plaintiff's Complaint asserts the following facts, which the Court must accept as true for purposes of Defendant's motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When the COVID-19 pandemic hit, Plaintiff was a tenured teacher with the New York City Department of Education ("DOE") and had been working there for nearly twenty years, since 2000.  Compl. ¶¶ 14–15, ECF No. 1.

On September 10, 2021, Defendant sent Plaintiff an "Impact Bargaining Agreement" by Arbitrator Martin Scheinman.  Compl. ¶ 19.  The Scheinman Agreement noted that on August 24, 2021, New York City Commissioner of Health and Mental Hygiene David Chokshi issued an Order that mandated DOE employees show proof of COVID-19 vaccination by September 27, 2021, and that the Order did not expressly provide for religious or medical exemptions.  Compl., at 23 (Scheinman Agreement included as exhibit to Complaint).[1]

---

[1] All page references use ECF pagination except where noted.

The Scheinman Agreement provided for DOE employees to be placed on leave without pay and ultimately removed from their jobs if they did not submit proof of COVID-19 vaccination by October 4, 2021.  Compl. ¶ 19.  The Scheinman Agreement further established a procedure for DOE employees to seek religious and medical exemptions from the vaccine requirement.  *Id.; see id.*, at 26–29.  For religious exemptions, the Scheinman Agreement provided that religious exemption requests "must be documented in writing by a religious official (e.g., clergy)" and that "[r]equests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature."  *Id.* at 29.  The Scheinman Agreement further stated that "[e]xemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists)."  *Id.*  It provided a process for appealing denials, and a panel of arbitrators identified by Scheinman Arbitration and Mediation Services ("SAMS") would hear those appeals.  *Id.* at 30.

Following the Scheinman Agreement, Commissioner Chokshi issued a new COVID-19 vaccination requirement on September 15, 2025, requiring various DOE staff and employees to show proof of vaccination beginning September 27, 2021, or at the start of their employment, whichever was sooner (hereafter the "Vaccine Mandate").  Compl. ¶ 23; *id*. at 40 ("Order by Comm'r Chokshi, dated September 15, 2021").  The Vaccine Mandate followed Commissioner Chokshi's August 24, 2021, order, which was amended on September 12, 2021.  Compl., at 40.

Following the Vaccine Mandate, on September 18, 2021, Plaintiff was informed that she had to be vaccinated or could apply for an exemption with DOE.  Compl. ¶ 23.  Plaintiff applied that day for a religious exemption from the COVID-19 vaccine, stating, "my body is my temple and I dont [sic] want the COVID-19 vaccine in my body," followed by scriptures from the Bible that allegedly supported her belief. Compl. ¶ 23.  Plaintiff was informed that her religious exemption request "had to be accompanied by a letter written by a clergyman."  Compl. ¶ 23.

On September 22, 2021, Plaintiff's religious exemption request was denied because the exemption requirements were not met, "including no submission of written documentation by a religious official."  Compl. ¶ 24.

Plaintiff appealed the denial the following day, on September 23, 2021, and was assigned a representative from the United Federation of Teachers by SAMS. Compl. ¶¶ 25–26.  The appeal hearing took place on October 1, 2021.  Compl. ¶ 26. Plaintiff's appeal was denied the following day on October 2, 2021.  Compl. ¶ 29.

On November 19, 2021, Plaintiff was informed that she could appeal her denial by the Scheinman Agreement process to the Citywide Panel, which was established to reconsider employees' exemption requests in compliance with the New York City and New York State Human Rights Law and Title VII of the Civil Rights Act of 1964.[2]

---

[2] The Second Circuit cast constitutional doubt on the requirement in the Scheinman Agreement that requests for exemptions from the mandate would  be denied "where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature," Compl., at 29, because "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants'*

Compl. ¶ 30. She filed her appeal on December 1, 2021, and upon review by the Citywide Panel, Plaintiff's religious exemption request was again denied. Compl. ¶¶ 30, 32. Plaintiff alleges that she was placed on leave without pay ("LWOP"), which she signed "under duress" and "against her will" on February 2, 2022. Compl. ¶ 22. Plaintiff states that she was allowed to keep her medical benefits until September 5, 2022, and was officially terminated from her position with DOE on September 6, 2022. Compl. ¶¶ 22, 33.

Plaintiff refers to "undue hardship" as the provided reason for the denial of her exemption request and appeals. *See* Compl. ¶¶ 38, 44 ("Defendant . . . denied her exemption request and Appeals based upon an unconstitutional ruling that cited 'undue burden' on the Department without any further details or reason.").

After Plaintiff's termination, in November 2022, she learned that her fingerprints had been placed onto DOE's "'no hire/inquiry'/'Problem Code'" ("Problem Code") database in 2021 because she failed to satisfy the requirement that all public employees submit a COVID-19 vaccination card by October 4, 2021. Compl. ¶ 34; Compl., at 51 ("Email Confirming Problem Code"). That database allegedly flags employees as being guilty of "misconduct" and "insubordination," making it difficult to get rehired with DOE or apply for any benefits, such as unemployment. Compl. ¶¶ 34–35; *see* Compl., Ex. 1 ("Combier Decl."), ECF No. 1, at 45–49.

---

*interpretations of [their] creeds.*" *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 324–25 (2d Cir. 2025) (quoting *Kane v. De Blasio*, 19 F.4th 152, 168 (2d Cir. 2021)). The City of New York then created a "Citywide Panel" to review religious accommodation requests without the criteria that raised constitutional concerns. *Id.* at 325.

The Vaccine Mandate was lifted on February 10, 2023, but Plaintiff has not been given her job back.  Compl. ¶ 35.  Plaintiff argues that the Problem Code violates her constitutional due process and rights afforded to her under New York Education Law § 3020 and § 3020-a.  Compl. ¶¶ 34, 51–52, 56.

Plaintiff filed a charge against DOE with the Equal Employment Opportunity Commission within the time period provided by law; she received a "Notice of Right to Sue within 90 days" from the U.S. Department of Justice, Civil Rights Division on December 7, 2023.  Compl., at 15 ("Notice").  Plaintiff then timely filed her Complaint with the Eastern District of New York on March 6, 2024.  Civil Cover Sheet 1 ("Pl. Cover Sheet"), ECF No. 1-1.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id* at 663.  Courts "must construe [a complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021).  However, courts must also "disregard conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action.'"  *Id*. at 107 (quoting *Twombly*, 550 U.S. at 555).

6

Because Plaintiff Hurley is proceeding *pro se*, the Court must "liberally" construe her submissions and interpret them "to raise the strongest arguments that [they] suggest[]." *Peralta v. New York City Dep't of Educ.*, No. 21-CV-6833 (EK) (LB), 2023 WL 6201507, at *3 (E.D.N.Y. Sep. 22, 2023) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see also*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). However, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' even for a *pro se* plaintiff." *Peralta*, 2023 WL 6201507, at *3 (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

## DISCUSSION

For the reasons discussed below, Plaintiff has failed to plausibly state claims of religious discrimination under Title VII, a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment, a federal due process claim, a claim under the Free Exercise Clause of the First Amendment, a First Amendment retaliation claim, and a "stigma plus" due process claim. Because the Court grants Defendant's motion to dismiss all of Plaintiff's federal claims, it declines to exercise supplemental jurisdiction on her state law claims; although it is difficult to discern exactly what state law claims Plaintiff has brought, it appears that she seeks to proceed with state law claims for fraud in the inducement, cooperative dialogue, and additional claims for violations of her rights under NYSHRL, NYCHRL, the New York Education Law, and the New York Civil Service Law.

I.    **Plaintiff has not plausibly pled a Title VII religious discrimination claim for disparate treatment.**

Plaintiff brings a cause of action for employment discrimination based on her religious beliefs under Title VII of the Civil Rights Act of 1964.  Compl. ¶¶ 36–39. Though the heart of Plaintiff's religious discrimination claim appears to be based on a failure to accommodate her sincerely held religious beliefs, discussed *infra*, to the extent Plaintiff's claim is based on disparate treatment due to overt religious discrimination, it does not survive Defendant's motion to dismiss.

To defeat a motion to dismiss for employment discrimination under Title VII or § 1983, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff [(1)] is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse employment action, and [(4)] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

Defendant does not deny that Plaintiff's religious identity places her in a protected class (Prong 1), that she was qualified for her position (Prong 2), nor that her removal from her position as a tenured teacher was an adverse employment action (Prong 3).  Instead, Defendant argues that Plaintiff has not shown that her discharge was at least partially motivated by discriminatory intent (Prong 4).  Def. Mem. in Support of Mot. to Dismiss ("Def. Mem."), at 15–16, ECF No. 21.

In cases alleging religious discrimination based on disparate treatment, a plaintiff may plausibly plead facts that give rise to an inference of unlawful

discrimination where the plaintiff alleges that they "actually require[ ] an accommodation of [a] religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in [its] decision." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773–74 (2015). If the prospective accommodation would pose "undue hardship on the conduct of the employer's business," however, the employer does not violate Title VII. *Cosme v. Henderson*, 287 F.3d 152, 155 (2d Cir. 2002) (quoting 42 U.S.C. § 2000e(j) (1994)). The discrimination need only be proven by "minimal" support, meaning that the alleged facts may either directly demonstrate discrimination or indirectly "by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86–87 (2d Cir. 2015) (citing *Littlejohn*, 795 F.3d at 310–11).

Here, however, Plaintiff has not pled any facts that show that her discharge was motivated by discriminatory intent, nor that suggest the employer's desire to avoid providing an accommodation was a motivating factor in its decision to terminate her. First, Plaintiff acknowledges that she was terminated and tagged with a Problem Code for "insubordination," Compl. ¶ 34, for not taking the COVID-19 vaccine, though she states in a conclusory fashion that she "was fired solely because of her religious beliefs." Compl. ¶ 33. She has not plausibly alleged that she was singled out for termination due to her religion; instead, she was terminated because she refused to take the vaccine in accordance with a department-wide mandate. *See Fugelsang v. Dep't of Educ. of N.Y.C.*, No. 23-CV-8332 (LDH) (LKE), 2025 WL 974276, at *3 (E.D.N.Y., Mar. 31, 2025) (dismissing plaintiff's Title VII

disparate treatment religious discrimination claim where plaintiff claimed he was fired for failing to take mandatory COVID-19 vaccine after defendant denied request for religious exemption but failed to "explain how he was singled out for differential treatment on account of his religious beliefs"); *Famiglietti v. N.Y.C. Dep't of Sanitation*, No. 23-CV-2754 (LDH) (LKE), 2024 WL 4606817, at *4 (E.D.N.Y., Oct. 28, 2024) (same, where plaintiff "explicitly state[d] that he was terminated for not complying with the [COVID-19 Vaccine] Mandate, which was a condition of employment imposed across the private and public sector given the public health emergency presented by the coronavirus pandemic") (internal quotation marks omitted).

Second, Plaintiff does not allege that opposition to her request for a religious accommodation motivated Defendant's decision to terminate her from her position. Indeed, in her opposition to Defendant's motion to dismiss, Plaintiff implies Defendant did provide the religious exemption to others, which cuts against any reasonable inference that Defendant terminated Plaintiff or others out of a reluctance to provide a religious accommodation. *See* Pl. Mem. in Opposition to Mot. to Dismiss ("Pl. Mem."), at 18, ECF No. 22. ("Plaintiff does not belong to the Christian Scientist faith, and her religious beliefs (Catholic) are personal. She did not fit into the Scheinman criteria for getting a religious 'exemption[.]'").

Thus, Plaintiff has failed to state a Title VII claim based on religious discrimination through disparate treatment, and the Court grants Defendant's motion to dismiss with respect to that claim.

## II.    Plaintiff has not plausibly pled a Title VII religious discrimination claim on reasonable accommodation.

"To survive a motion to dismiss, a plaintiff asserting a Title VII religious-discrimination claim" based on a failure to accommodate "must plausibly allege that '(1) [he or she] held a bona fide religious belief conflicting with an employment requirement; (2) [he or she] informed [his or her] employers of this belief; and (3) [he or she] [was] disciplined for failure to comply with the conflicting employment requirement.'" *D'Cunha v. Northwell Health Sys.*, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)) (alteration in original).  "An employer does not violate Title VII, however, if it can show that the prospective accommodation 'would cause the employer to suffer an undue hardship.'" *Id.* (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002)).  While plaintiff has satisfied the first three prongs of the analysis, her prospective accommodation would constitute an "undue hardship" on Defendant.

### A.  Plaintiff alleges a bona fide, sincerely held religious belief.

Plaintiff alleges her religious belief is that "[her] body is [her] temple and [she doesn't] want the COVID-19 vaccine in [her] body," and with her religious exemption request, she included scriptures from the Bible to support her belief.  Compl. ¶ 23. Courts have found similar purported religious beliefs to be bona fide for purposes of the Title VII analysis.  *See Vasquez v. City of New York – Off. of Mayor*, No. 22-CV-05068 (HG) (VMS), 2024 WL 1348702, at *6 (E.D.N.Y. Mar. 30, 2024) (plaintiff alleged that the Fire Department of New York's vaccine mandate was "inconsistent" with his Christian beliefs, that it was a "violation" of his "body/temple, which is of

11

God" and that it forced him to "condone abortion"), *reconsideration denied*, No. 22-CV-5068 (HG), 2024 WL 1886656 (E.D.N.Y. Apr. 30, 2024); *Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-CV-7190 (JMF), 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024) (plaintiff alleged his aversion to COVID-19 vaccine was based on Catholic beliefs, "made repeated reference to Christian Scripture" and his "Catholic teachings," and noted that his religious beliefs led him to decline medical procedures in the past); *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 503 (S.D.N.Y. 2023) (plaintiff stated their Christian religion prevented them from receiving the COVID-19 vaccine because it "was tested, developed, or produced with fetal cell lines derived from procured abortions"), *aff'd sub nom.* 2024 WL 1107481 (2d Cir. Mar. 14, 2024)*; cf. Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265 (DLI) (VMS), 2023 WL 6214236, at *3–4 (E.D.N.Y. Sep. 25, 2023) (finding no bona fide religious belief where plaintiff alleged her vaccine aversion was because she observes the Jewish faith and explained the meaning of a biblical verse to support her stance but court found belief was motivated instead by opinions regarding "safety and efficiency" of the vaccines).

As those cases illustrate, Plaintiff has sufficiently pled that her request for a vaccine exemption was motivated by a bona fide religious belief as opposed to by other concerns or preferences.

### B. Plaintiff informed her employers of her bona fide religious belief.

Plaintiff alleges that when she applied for a religious exemption, she "explained that her sincerely held religious belief is that '[her] body is [her] temple and [she doesn't] want the COVID-19 vaccine in [her] body'" and "noted scriptures

from The Bible, which [she] follow[s], that support [her] religious beliefs." Compl. ¶ 23. Though Defendant argues that is insufficient to have informed her employer of a bona fide religious belief, at the motion to dismiss stage, making all reasonable inferences in favor of the *pro se* Plaintiff, Plaintiff has sufficiently pled that she informed her employer of her bona fide religious belief.

### C. Plaintiff was disciplined for a failure to comply with the conflicting employment requirement.

For Title VII purposes, Plaintiff's placement on leave without pay and her ultimate termination from her position qualify as "discipline." *See Rizzo*, 2024 WL 3274455 at *2 (finding employee who was placed on leave without pay and later fired for failure to comply with a COVID-19 vaccine mandate was disciplined for Title VII purposes); *Algarin*, 678 F.Supp.3d at 509 ("Allegations of termination of employment for failure to comply with the conflicting employment requirement of mandatory vaccination are sufficient to plead the final element of the *prima facie* case of religious discrimination for failure to accommodate." (citing *Zelnick v. Fashion Inst. Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)). Defendant cites several cases for the proposition that because the COVID-19 vaccine became a condition of employment, termination is not "disciplinary," but each of those cases discuss "discipline" for other legal claims and not for Title VII. *See e.g., Kane v. De Blasio*, 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022) (discussing how "[t]he termination of NYC DOE employees who failed to comply with the COVID-19 vaccination condition of employment is not disciplinary" for purposes of evaluating process plaintiffs were due in as-applied constitutional challenge to vaccine mandate), *aff'd in part, vacated in part, remanded sub nom. New Yorkers for*

13

*Religious Liberty, Inc. v. City of New York*, 121 F.4th 448 (2d Cir. 2024), *and aff'd in part, vacated in part, remanded sub nom. New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319 (2d Cir. 2024); *Broecker v. New York City Dep't of Educ.*, 585 F. Supp. 3d 299, 314–15 & n.9) (discussing how vaccination was a condition of employment for DOE employees and that the "[arbitration] [a]wards state that LWOP status is not disciplinary" in the context of process plaintiffs were due under New York Education Law); *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 436 (S.D.N.Y. 2022) (discussing how plaintiff's failure to vaccinate violated a condition of employment and therefore did not evoke disciplinary procedures in the New York Administrative Code or the New York Police Department Patrol Guide). Thus, Defendant is incorrect in its argument that the COVID-19 vaccine requirement being a condition of employment means that Plaintiff's termination does not count as discipline. Instead, the termination very clearly and squarely qualifies as "discipline" for purposes of Plaintiff's Title VII religious accommodation claim.

D. The prospective accommodation would have caused an undue hardship to DOE, warranting dismissal of Plaintiff's failure to accommodate religious discrimination claim.

Plaintiff alleges she sought a full exemption from the COVID-19 vaccine mandate, and she acknowledges that the vaccine requirement was motivated by "the compelling City interest in protecting children in the Defendant's schools from getting COVID-19." Compl. ¶ 18. As discussed further below, the facts from Plaintiff's Complaint sufficiently establish that DOE would have suffered an undue hardship if it had provided Plaintiff her requested accommodation.

14

In *Kane v. De Blasio*, the Hon. Naomi R. Buchwald initially held that the religious exemptions from the COVID-19 Vaccine Mandate for DOE teachers would constitute an undue hardship, stating that "[p]laintiffs' inability to teach their students safely in person presents more than a <u>de minimis</u> cost." 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022). The U.S. Supreme Court subsequently clarified that, instead of the *de minimis* standard, courts when assessing whether an accommodation would constitute an "undue hardship" for Title VII purposes must query whether the "burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). "[C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Id.* at 470–71 (internal quotation marks omitted). The Supreme Court described the undue hardship question as a "fact-specific inquiry." *Id.* at 468.

Subsequently, the Second Circuit consolidated an appeal of Judge Buchwald's *Kane* decision and another of her decisions and decided the appeal in November 2024, replacing that opinion with an opinion dated January 10, 2025. *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F. 4th 319 (2d Cir. 2025). Issuing its decision after *Groff v. Dejoy*, the Second Circuit upheld Judge Buchwald's dismissal of certain plaintiffs' religious accommodation claims where the complaint "identifie[d] the [Citywide] Panel's undue-hardship rationale, but [did] not plead allegations that contradict[ed] that finding" and instead "offer[ed] only threadbare conclusions." *Id.*

15

at 333.  For each of those plaintiffs, the Citywide Panel had offered as its rationale that the plaintiff was "a classroom teacher who, under the present circumstances, cannot physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population."  *Id.*

As in *Kane* and *New Yorkers for Religious Liberty*, Plaintiff's failure to accommodate claim — alleging religious discrimination based on the denial of her request to be exempted entirely from the COVID-19 vaccine mandate — is subject to dismissal on grounds of undue hardship.  Indeed, courts have routinely found that a full exemption from the COVID-19 vaccine would constitute an undue hardship for Title VII religious accommodation claims.  *See Haczynska v. Mount Sinai Health Sys., Inc.*, 2025 WL 1384133, at *10 (holding that hospital's providing religious exemptions from COVID-19 vaccine requirement would constitute "undue hardship" because hospital would have violated state law); *Beickert v. N.Y.C. Dep't of Educ.*, No. 22-CV-5265 (DLI) (VMS), 2023 WL 6214236, at *4–6 (E.D.N.Y. Sep. 25, 2023) (dismissing plaintiff's claim that she had a bona fide religious belief and finding in dicta that the exemption sought by special education teacher would be an undue hardship on DOE because she would pose a risk to the safety of others); *Fugelsang*, 2025 WL 974276, at *3–4 (dismissing claim by tenured teacher who sought religious exemption from COVID-19 vaccine mandate due to safety of students and employees).  Other courts have made that determination at the summary judgment stage.  *See Russo v. Patchogue–Medford School District*, 129 F.4th 182, 186 (2d Cir. 2025) (affirming summary judgment grant against school psychologist's failure to accommodate claim

16

as requested exemption from a COVID-19 vaccine, the granting of which would violate New York law, constituted undue hardship); *Beckles v. N.Y.C. Dep't of Educ.*, No. 23-CV-8663 (BMC), 2025 WL 2208418 (E.D.N.Y. Aug. 4, 2025) (granting summary judgment against special education teacher and holding that full exemption from COVID-19 vaccine requirement would be undue hardship).

Though Plaintiff suggests in her opposition to Defendant's motion that she could have been allowed to work remotely, Plaintiff has not alleged that she actually requested an accommodation to work remotely, rather than a full exemption from the COVID-19 vaccine mandate.  *See* Compl. ¶¶ 24, 25, 29, 32, 38, 44 (referencing religious "exemption").  "District courts in the Second Circuit that have 'allowed Title VII failure-to-accommodate claims involving remote-work requests to survive motions to dismiss have consistently noted that the plaintiffs had, in fact, *requested* such an accommodation.'"  *Haczynska*, 2025 WL 1384133, at *11 (quoting *Greenberg v. Visiting Nurse Servs. in Westchester, Inc.*, No. 23-CV-4252, 2024 WL 4254550, at *9 (S.D.N.Y. Sep. 19, 2024)).  Because Plaintiff did not request an accommodation, her suggestion in her opposition to Defendant's motion that DOE should have allowed her to work remotely does not allow her failure to accommodate religious discrimination claim to survive Defendant's motion to dismiss.

Thus, Plaintiff has failed to state a Title VII religious discrimination claim under a theory that Defendant failed to accommodate her, and the Court grants Defendant's motion to dismiss that claim.

### III.   Plaintiff has not plausibly pled her constitutional claims.

Plaintiff appears to assert constitutional claims of selective enforcement under the Equal Protection Clause of the Fourteenth Amendment, due process, free exercise of religion under the First Amendment, retaliation under the First Amendment, and "stigma plus" due process.  None of those claims are plausibly pled.

### A.   Plaintiff has failed to state a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff mentions the Fourteenth Amendment, Compl. ¶ 8, and cites a New York state court decision in which the Hon. Ralph Porzio discussed New York City's Executive Order 62, "which provided blanket exemptions" from New York City's private employee COVID-19 vaccine mandate "for athletes, performers, and other artists." Compl. ¶ 47; *Garvey v. City of New York*, 180 N.Y.S.3d 476, 480 (N.Y. Sup. Ct., Oct. 24, 2022).  Because of how Plaintiff cites the *Garvey* decision, Defendant interprets her Fourteenth Amendment claim as a "selective enforcement" claim.  Def. Mem., at 16.

The Second Circuit has identified two forms of selective enforcement claims: claims stemming from *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980) and claims under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).  To state a *LeClair* selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must plausibly allege that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of

18

constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). "As this test makes clear, '[t]he *LeClair* type of equal protection claim requires proof of disparate treatment and impermissible motivation.'" *Id.* (quoting *Bizzaro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005)). To state an *Olech* selective enforcement claim, a plaintiff need not provide "proof of a defendant's subjective ill will towards a plaintiff" and instead can rely "on the basis of similarity alone." *Id.* at 93. "However, the similarity standard for an *Olech* claim is more stringent than the standard for a *LeClair* claim[;] [w]hile *Olech* requires an 'extremely high' degree of similarity between a plaintiff and a comparator, *LeClair* merely requires a 'reasonably close resemblance' between a plaintiff's and comparator's circumstances." *Id.*

"[I]n light of the [comparator] inquiry's fact-intensive nature . . . [,] [the Second Circuit] ha[s] cautioned against deciding whether two comparators are similarly situated on a motion to dismiss," *id.* at 97; nevertheless, Plaintiff fails on the first prong of the analysis for a *LeClair* claim and thus also fails to state an *Olech* claim. Notably, Plaintiff does not allege a single comparator in her Complaint. To the extent her reference to Executive Order 62 is construed as an argument that athletes, performers, and other artists are comparators, they are not materially similar to satisfy the comparator requirement. *See Kane*, 623 F. Supp. 3d at 356 (noting, in the context of whether COVID-19 vaccine mandate is generally applicable, that the fact that COVID-19 vaccine mandate "does not apply to professional athletes is of no

19

significance" as "it is obvious that New Yorkers may choose whether to attend a sporting event with unvaccinated athletes and accept whatever risk those athletes pose" whereas "school attendance is not a similar choice, and the risk posed by unvaccinated teachers is obvious"), *aff'd in part, vacated in part, remanded sub nom. New Yorkers for Religious Liberty, Inc.*, 121 F.4th 448 (2d Cir. 2024), and *aff'd in part, vacated in part, remanded sub nom. New Yorkers for Religious Liberty, Inc.*, 125 F.4th 319 (2d Cir. 2025).

In her opposition to Defendant's motion, Plaintiff implies that she may not have fit into the criteria for a religious exemption because she "does not belong to the Christian Scientist faith." Pl. Mem. at 18. She further argues that "'criteria' mystery (i.e. details as to what the criteria are) of the SAMS Panel and the Citywide Panel show animus and discrimination against the unvaccinated Plaintiff because anything could be used against her." Pl. Mem. at 8–9. Plaintiff's conclusory statements do not suffice to allege comparators for a selective enforcement claim. To the extent Plaintiff intends to allege Christian Scientists are comparators, she has not plausibly pleaded as such. First, Plaintiff may be referencing the Scheinman Agreement, which provided Christian Scientists as an example of recognized religious organizations. Compl., at 29 (Impact Bargaining Agreement) (stating that religious exemption requests "must be documented in writing by a religious official (e.g., clergy)" and "shall be considered for recognized established religious organizations (e.g., Christian Scientists)"). Moreover, the Citywide Panel, to which Plaintiff further appealed the denial of her religious exemption, was created to correct the Scheinman Agreement's

bias toward established religious organizations.[3]  In any event, merely referencing Christian Scientists, or athletes and performers, in such a vague and general way does not satisfy the comparator prong of a selective enforcement claim.  *See Mora v. New York State Unified Ct. Sy*s., No. 22-CV-10322 (VB), 2023 WL 6126486, at *14 (S.D.N.Y. Sep. 19, 2023) (holding Plaintiff failed to identify similarly situated individuals for selective enforcement claim where plaintiff identified four individuals, one who he identified as "Catholic" and two who he claimed submitted "substantially similar" applications as him, which the court determined was "conclusory and insufficient to plead that those individuals are similarly situated to plaintiff"); *cf. Hu*, 927 F.3d at 97 (holding that plaintiffs pled comparators "by alleging differential treatment by the same defendant . . . for the same conduct (having a pool of standing water) at the same jobsite (the 34th Avenue Jobsite)" allowing court to "plausibly infer a reasonably close resemblance between the plaintiffs and the white workers" (internal quotation marks omitted)).

Thus, Plaintiff has failed to plausibly plead a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment, and the Defendant's motion is granted with respect to that claim.

B.  Plaintiff has failed to state a procedural due process claim.

Plaintiff's Complaint can be construed as raising a procedural due process claim.  *See, e.g.,* Compl. ¶ 8 (referencing Fourteenth Amendment); *id.* ¶¶ 49–56

---

[3] *See New Yorkers for Religious Liberty, Inc.*, 125 F. 4th at 324–25 (providing background on creation of the Citywide Panel).

(referencing due process Plaintiff alleges she was entitled under New York Education Law § 3020 and § 3020-A).

"To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, [a court] must first identify the property interest involved.  Next, [it] must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation."  *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005); *see also Garland v. N.Y.C. Fire Dep't*, 2024 WL 445001, at *2 (2d Cir., Feb. 6, 2024).  Procedures provide constitutional due process where there is "a pre[-]termination opportunity to respond, coupled with post-termination administrative procedures as provided by [state] statute." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–48 (1985).  "When . . . a [tenured] public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001).  "An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes." *Id*. at 175.

First, Plaintiff states a protected liberty or property interest: her tenured employment at DOE.  Compl. ¶¶ 16, 55 (alleging "Plaintiff earned tenure and all the Constitutional protections to her property and liberty rights pursuant to N.Y. Education Law"); *see Locurto*, 264 F.3d at 171 (finding that plaintiffs "possessed a constitutionally protected property interest in their tenure as public employees, terminable only for cause" (citing *Gilbert v. Homar* , 520 U.S. 924, 928–29 (1997)).

However, Plaintiff "received constitutionally adequate process in the course of the deprivation," in this case the termination of her tenured position as a teacher. *O'Connor*, 426 F.3d at 196. Plaintiff received notice of the Vaccine Mandate; she was informed in September 2021 by Defendant that Commissioner Chokshi imposed a vaccination requirement for public employees. Compl. ¶ 24; *id.* at 40 (Order by Comm'r Chokshi). Plaintiff also maintains that she received information on how to apply for the religious exemption request and was told how to appeal the denial with SAMS, as well as to the Citywide Panel. Compl. ¶¶ 23, 30; *id.* at 29. Plaintiff's religious exemption request was denied on September 22, 2021. Compl. ¶ 24. She appealed the denial the next day. Compl. ¶ 25. After that appeal was denied, she appealed to the Citywide Panel. Compl. ¶¶ 29, 30–32.

Plaintiff's ability to request the exemption and appeal constituted an adequate "pre[-]termination opportunity to respond," and her ability to pursue Article 78 remedies satisfied the "post-termination administrative procedures as provided by [state] statute" for her to have received due process. *Loudermill*, 470 U.S. at 547–48. Indeed, courts have found that such process constitutes adequate federal due process. *See, e.g., Broecker*, 585 F. Supp. 3d at 317 (holding that pre-deprivation and post-deprivation proceedings, including article 78 proceeding, available to DOE teachers satisfied federal due process), *aff'd* 2023 WL 8888588 (2d Cir., Dec. 26, 2023); *Fugelsang*, 2025 WL 974276, at *5–6 (E.D.N.Y. Mar. 31, 2025) (holding DOE teacher had adequate federal due process where he could submit request for exemption from COVID-19 vaccine mandate and appeal denial to independent arbitrator).

Plaintiff argues that she was denied her constitutional right to due process because she was not afforded the disciplinary process for tenured teachers outlined in New York Education Law § 3020.  Compl. ¶¶ 50–51.  However, "it is well established that 'a violation of state law does not *per se* result in a violation of the Due Process Clause.'"  *Garland*, 2024 WL 445001, at *3 (quoting *Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019)).  Instead, the "minimum [procedural] requirements" under federal law "are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action."  *Loudermill*, 470 U.S. at 451 (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)) (alteration in original).  Even assuming *arguendo* that Plaintiff were entitled to an Education Law § 3020 hearing, the lack of that hearing does not negate that she received adequate process for purposes of her federal due process claim. *Broeker*, 2023 WL 8888588, at *3 ("Insofar as plaintiffs claim that DOE violated their due process rights by placing them on LWOP pursuant to the arbitration awards without following the disciplinary procedures under New York Education Law section 3020-a and New York Civil Service Law section 75, that argument at best challenges the results of the arbitration and the sufficiency under state law of the procedures it established to implement the Vaccine Mandate, which does not by itself state a federal claim."); *see also Garland*, 2024 WL 445001 at *3–5 (acknowledging that New York firefighter plaintiffs "advance[d] a plausible argument that the process by which the [New York Fire Department] imposed and enforced the [COVID-19] vaccine

24

mandate violated state and municipal law" but finding that federal due process was nonetheless satisfied).[4]

Thus, Plaintiff has failed to plausibly state a federal due process claim, and Defendant's motion is granted with respect to that claim.

C.   <u>Plaintiff has failed to state a free exercise of religion claim under the First Amendment.</u>

Plaintiff's Complaint may be interpreted as stating a First Amendment claim that her right to the free exercise of religion was violated, though that claim is not discussed in detail in her pleading.  *See* Compl. ¶ 9 (referencing the protections under the Free Exercise Clause); *id.* ¶ 46 (stating that "[i]n conflict with the U.S. . . . Constitution[ ] guaranteeing all citizens the right to their religious beliefs, Defendant did not honor this law of the land").   In her opposition to Defendant's motion to dismiss, Plaintiff discusses a potential free exercise claim in more detail.  Pl. Mem. at 5–11.  Her allegations in opposition to the motion include that the criteria for denying her religious exemption request "show animus and discrimination against the unvaccinated Plaintiff because anything could be used against her."  *Id.* at 8–9.

---

[4] Plaintiff argues that the Citywide Panel's decisions were "constitutionally suspect" and "kept the people who made the decisions secret as well."  Pl. Mem. at 17. Such conclusory statements, without more, do not affect the due process analysis here.   *See Garland*, 2024 WL 445001, at *4 (finding that plaintiffs who alleged Citywide Panel was a "sham" had "not alleged sufficient facts to allow [that] . . . inference" where "[n]either the plaintiffs' amended complaint nor their briefing indicates whether the accommodation requests that were denied were frivolous or meritorious").

*1.  Plaintiff has failed to state a free exercise claim to the extent she mounts a facial challenge to the Vaccine Mandate.*

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I.  That "guarantee is incorporated against the states via the Fourteenth Amendment." *New Yorkers for Religious Liberty, Inc.*, 125 F. 4th at 330.  "The Free Exercise Clause thus protects an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion." *Kane v. De Blasio*, 19 F. 4th 152, 163–64 (2d Cir. 2021) (internal quotation marks omitted).  The protection in the Free Exercise Clause, however, "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Id.* at 164.  Such laws are subject to rational basis review.  *Id.*  The Second Circuit has held that New York City's "Vaccine Mandate, in all its iterations, [wa]s neutral and generally applicable." *Id.*  The Court has also held that it is "plainly satisfies" rational basis review and that the mandate was "a reasonable exercise of the State's power to act to protect the public health," *id.* at 166, making it facially constitutional.

Plaintiff has failed to state a claim under the Free Exercise Clause of the First Amendment to the extent she mounts a facial challenge to the Vaccine Mandate.  The Second Circuit's determination that the vaccine mandate was facially constitutional controls determination of Plaintiff's claim.  *Kane*, 19 F.4th at 164–66.

2. *Plaintiff has failed to state a free exercise claim to the extent she mounts an as-applied challenge to the Vaccine Mandate's exemption and accommodation processes.*

Plaintiff's Complaint may be construed as raising an as-applied challenge to the Vaccine Mandate under the First Amendment. The Second Circuit's decision on various as-applied First Amendment challenges in *New Yorkers for Religious Liberty, Inc. v. City of New York* is instructive. 125 F.4th 319, 332–35 (2d Cir. 2025).

Critically, the Second Circuit in *New Yorkers for Religious Liberty* affirmed the district court's dismissal of as-applied challenges by DOE employees for whom the Citywide Panel found that "irrespective of their sincerely held religious beliefs, their requests presented an 'undue hardship' because each individual 'is a classroom teacher who, under the present circumstances, cannot physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population.'" *Id.* at 333. Because "[n]one of these plaintiffs can make out a constitutional claim for religious discrimination without first making a more-than-conclusory allegation that the finding of undue hardship was erroneous or pretextual" and because the complaint "on its face identifies the Panel's undue-hardship rationale, but does not plead allegations that contradict that finding," dismissal of those plaintiffs' as-applied claims was proper. *Id.*

Plaintiff on numerous occasions refers to "undue hardship" as the reason for the Citywide Panel's denial of her appeal. *See* Compl. 38, 44 ("Defendant . . . denied her exemption request *and Appeals* based upon an unconstitutional ruling that cited 'undue burden' on the Department without any further details or reason" (emphasis

supplied)); Pl. Mem. at 2 (stating Plaintiff "would not get an accommodation because this would be an 'undue burden'"), 12 (stating Plaintiff never received "[a]n explanation for the alleged 'undue burden'" and that "Defendant has blatantly ignored all the laws demanding a reasonable accommodation for Plaintiff with the meaningless get out of jail free card claiming 'undue burden'"), 13 (stating "Defendant never offered any reasonable accommodation to the Plaintiff that would both satisfy the Plaintiff's sincere religious beliefs and the Defendant's concern for 'a safe environment for in-person learning'"), 13 (stating "[s]imply citing an 'undue hardship' is not an explanation for denial of a reasonable accommodation"), 14 ("[t]he sob story given by the Defendant about 'undue burden' is simply, and outrageously, false").

Like the *New Yorkers for Religious Liberty* plaintiffs discussed *supra*, Plaintiff has failed to present a "more-than-conclusory allegation that the finding of undue hardship was erroneous or pretextual." 125 F.4th at 333. Instead, her pleading suggests that Defendant denied her exemption request "on the independent ground of undue hardship." *Id.* at 335. Thus, Plaintiff has failed to state an as-applied First Amendment claim.

D.  Plaintiff has failed to state a First Amendment retaliation claim.

In her opposition to Defendant's motion, Plaintiff asserts that her "Complaint properly pleads a First Amendment retaliation claim." Pl. Mem., at 15–19. Though a First Amendment retaliation claim is not readily discernible from Plaintiff's Complaint, she does reference "retaliation" in her Complaint. *See* Compl. ¶ 6.

28

Even if the Court were to construe Plaintiff's Complaint as asserting a First Amendment retaliation claim, however, Plaintiff has not plausibly pled one. "[I]n order to survive a motion to dismiss a complaint, a plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (internal quotation marks omitted).

Though Plaintiff's Complaint includes conclusory statements that "[s]he was fired solely because of her religious beliefs," Compl. ¶ 33, her Complaint pleads that she was terminated due to "insubordination," Compl. ¶ 34, and that she was terminated due to the failure to receive her COVID-19 vaccine after her religious exemption request was denied. Compl. ¶ 44; *id.* ¶ 50 ("Plaintiff was punished with wrongfully being terminated for her 'insubordination' in not getting vaccinated with the COVID vaccine."). Thus, she has not shown a "causal connection between [any] protected speech and the adverse action." *Scott*, 344 F.3d at 287; *see also Fugelsang*, 2025 WL 974276, at *4, n.4 (finding purported First Amendment retaliation claim by plaintiff unmeritorious where the "[p]laintiff does not allege a single fact that would support the notion that he was terminated for engaging in religious speech" and where "[t]o the contrary, the complaint plainly alleges that [p]laintiff was terminated for failing to comply with the vaccine mandate for which he was denied a religious exemption").

To the extent Plaintiff's Complaint can be interpreted as raising a First Amendment retaliation claim, the Court grants Defendant's motion to dismiss with regard to that claim.

E. <u>Plaintiff has failed to state a due process "stigma plus" claim.</u>

Plaintiff alleges she was "stigmatized permanently by being wrongfully terminated and placed on the Ineligible/Inquiry or 'no hire' Problem Code List, solely because of her religious beliefs." Compl. ¶ 4. That allegation might be construed as a "stigma plus claim," through which a plaintiff can argue that she suffered "injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). A stigma plus claim has three elements: (1) injury to reputation; (2) the deprivation of a tangible interest or property right; and (3) a lack of adequate process. *Id.; see Xu v. City of New York*, 2020 WL 8671952, at *26 (S.D.N.Y., Dec. 22, 2020). "A plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004). The Second Circuit has also stated that "[t]o prevail on a stigma plus claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).

Plaintiff alleges that her fingerprints were placed onto DOE's "Problem Code" database due to her failure to be vaccinated against COVID-19. Compl. ¶ 19; Compl., at 52 (Email Confirming Problem Code). Plaintiff alleges that the Problem Code database flags employees as being guilty of "misconduct" and "insubordination," making it difficult to get rehired with DOE or apply for any benefits, such as unemployment. Compl. ¶¶ 34–35; *see* Combier Decl. She submits a declaration in which the declarant states that the Problem Code places a flag on a DOE employee's fingerprints, which are sent to national databases at the FBI and the New York State Division of Criminal Justice Services. Combier Decl. ¶ 9. According to the declarant, "[t]he DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination." *Id.* ¶ 12.

Plaintiff's stigma plus claim fails because she has not "raise[d] the falsity" of the allegedly stigmatizing statements, *Patterson*, 370 F.3d at 330, nor shown that the alleged statements are "capable of being proved false." *Sadallah*, 383 F.3d at 38. Plaintiff does not dispute that her fingerprints were placed onto DOE's "Problem Code" database due to her failure to be vaccinated against COVID-19. Compl. ¶ 19; Compl., at 52 (Email Confirming Problem Code). And she does not dispute that she did not get vaccinated. *See generally*, Compl. Even the declaration Plaintiff attaches to her Complaint states that "[t]he DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination." Combier Decl. ¶ 12, Compl., at 47. Thus, there is no dispute that the allegedly stigmatizing statements, here the Problem Codes in

Plaintiff's file, were not false. That is fatal to Plaintiff's stigma plus claim. *See Adams v. N.Y.S. Educ. Dep't*, 752 F. Supp. 2d 420, 449 (S.D.N.Y. 2010) (statements that an employee acted in an improper manner or that describe behavior or actions within an employee's power to correct do not qualify as stigma for constitutional purposes). Moreover, Plaintiff does not allege that the *grounds* for her dismissal were disclosed. *See Arroyo*, 2020 WL 4570380, at *14 (holding that plaintiff failed to allege that Problem List "disclosed the stigmatizing grounds for her dismissal or that inclusion on the List gives rise to a *per se* inference" that she was "terminated for a reason sufficiently 'stigmatizing' to state a due process claim" (internal quotation marks omitted)).

Thus, Plaintiff has failed to state a "stigma plus" due process claim, and the Court grants Defendant's motion to dismiss with regard to that claim.

## IV.    The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Liberally construed, it appears that Plaintiff raises state law claims for fraud in the inducement,[5] Compl., at 11, cooperative dialogue,[6] Compl. ¶¶ 44, 46, and

---

[5] Plaintiff alleges "fraud in the inducement to deny [P]laintiff her property and liberty rights to a due process hearing as a tenured teacher mandated by Education Law 3020 and 3020-A." Compl., at 11. She further alleges that she signed up for leave without pay "under duress" and "was forced to sign it against her will — which allowed her to keep her medical benefits, without her getting her salary until September 5, 2022." Compl. ¶ 22. Plaintiff's apparent fraudulent inducement claim is governed by state common law, in contract. *See Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) ("Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." (citing *Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996))). Though fraudulent inducement claims can also arise under the federal False Claims Act, that statute applies to claims presented to "an officer, employee, or agent of the United States" or to "a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest" under certain conditions. 31 U.S.C. § 3729(b)(2).

[6] Plaintiff alleges that "[n]o reasonable accommodation was offered to the Plaintiff nor was she involved in an interactive dialogue with anyone at the Department." Compl. ¶ 44. She further alleges that "Defendant . . . terminated Plaintiff without any interactive process to discover any reasonable accommodation." Compl. ¶ 46. While failure to engage in a good-faith process "can be introduced as evidence tending to show" discrimination, it is not a cause of action under Title VII. *Shahid-Ikhlas v. New York & Presbyterian Hosp., Inc.*, No. 22-CV-10643, 2023 WL 3628151, at *6 (S.D.N.Y. May 5, 2023) (quoting *Sheng v. M&T Bank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) and applying its holding in ADA context to Title VII context), *report and recommendation adopted*, 2023 WL 3626435 (May 24, 2023); *see also Myers v. Schuyler Hosp.*, 2025 WL 388852, at *2 n.1 (W.D.N.Y. Feb. 4, 2025) (noting that "no such cause of action exists" under Title VII for failure to engage in a cooperative

various claims for violations of her rights under NYSHRL, NYCHRL, Compl. ¶¶ 39, 47, under the New York Education Law § 3020 and 3020-A, Compl. ¶¶ 49–56, and under the New York Civil Service Law. Compl. ¶ 5.

A district court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  The Supreme Court has indicated that "decisions of state law should be avoided both as a matter of comity and to promote justice between the parties," and that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage.").  There is no reason to depart from that general rule here.

Thus, the Court will not exercise supplemental jurisdiction over Plaintiff's state law claims, and they are dismissed without prejudice for Plaintiff to pursue those claims in state court.

---

dialogue); *Barrett v. Dep't of Educ. of the City of New York*, No. 24-CV-574 (NCM) (RML), 2025 WL 1786910, at *3, n.3 (E.D.N.Y. June 26, 2025) (same).

## **CONCLUSION**

For the reasons discussed above, the Court grants Defendant's motion to dismiss with regard to all of Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction on Plaintiff's state law claims.

Generally, a court should not dismiss a *pro se* complaint "without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (alteration in original) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).  Although it appears to this Court that the legal authorities discussed in this opinion preclude Plaintiff from bringing any plausible claims for relief under federal law in light of what the Court understands to be the crux of Plaintiff's dispute with the City (namely, the termination that resulted from her refusal to comply with the City's Vaccine Mandate), out of an abundance of caution, Plaintiff is granted leave to amend her complaint.

If Plaintiff concludes that she has additional factual allegations to present which would allow her to plausibly state one or more federal claims for relief and chooses to file an amended complaint to assert those claims, she shall do so within thirty days of this Order.  The amended complaint will completely replace the prior pleadings.  Any relevant exhibits must be attached to the amended complaint.  Only the defendants and claims included in the amended complaint will be considered.

SO ORDERED.


/s/ Nina R. Morrison
NINA R. MORRISON
United States District Judge


Dated:  September 23, 2025
        Brooklyn, New York