

**Department of Education**

*** Filed ***
12:13 PM, 23 Oct. 2025
U.S.D.C., Eastern District of New York

11/25/22, 8:16

November 18, 2022

Brooklyn, New York

Title: Teacher/
Applicant ID:
PRP#:

Dear Ms.

Your name was recently submitted to the Office of Personnel Investigation (OPI) for security clearance to work with the NYC Department of Education (DOE) or a DOE contracted vendor. According to our records, your services with the DOE were terminated due to noncompliance with the vaccine mandate and you currently appear out of compliance. The purpose of our contact was to request information so that your application could be processed for security clearance. Requests were sent to you at the email address you provided                @aol.com' on November 10, 2022 and November 16, 2022. You were given a deadline to provide the requested information. To date, we have not received the required information.

Due to your non-compliance, you are unable to work with the DOE or any DOE contracted vendors. As such, your case has been administratively closed, and no security clearance determination has been made. Please note that at this time, you do not have security clearance to work with the DOE and/or one of its contracted vendors.

Sincerely,

The Office of Personnel Investigation
Division of Human Resources
NYC Department of Education

cc: File

On Thu, Jan 20, 2022 at 10:07 AM, Karen King
<KKing@uft.org> wrote:

**To:**        KKing@uft.org.
**Subject:** RE: Employee Code with the DOE
**Date:** Thu, Jan 20, 2022 11:05 am

Hello,

I hope that this email finds you well. The problem code is due to the vaccine mandate. Since you are unvaccinated then you are unable to work for the NYCDOE. In the future if this vaccine mandate was still in place and you were to get vaccinated you would be able to go back to the NYCDOE and the problem code would be removed.

**Karen King**
*Administrative Assistant to the Assistant Secretary &*
*Director of Personnel, Payroll, and Special Projects*
United Federation of Teachers
50 Broadway, 13th Floor
New York, N.Y. 10004
*kking@uft.org*

From: kking@uft.org >
Date: Thu, Apr 28, 2022 at 12:50 PM
Subject: response from UFT regarding the problem code
>

Karen King (KKing@uft.org)To:you Details
Hello,

Technically you should receive charges. At this time, however, the DOE is not going to issue 3020-a charges because they do not believe they have to do so. We have filed a legal challenge to protect your due process rights, should the judge decide in our favor, you will be entitled to a hearing at that time.

The problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. DOE's central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

**Karen King**
*Administrative Assistant to the Assistant Secretary &*
*Director of Personnel, Payroll, and Special Projects*
United Federation of Teachers
50 Broadway, 13th Floor
New York, N.Y. 10004
*kking@uft.org*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

MICHAEL KANE, et al,

                                      Plaintiffs,

            - against --                           21-CV-7863 (VEC) (Lead Case)

BILL DE BLASIO, et al.,

                                    Defendants.

-------------------------------------------------------------------- x

MATTHEW KEIL, et al.

                                      Plaintiffs,

            - against -                               21-CV-8773 (VEC)

THE CITY OF NEW YORK, et al.,

                                    Defendants

-------------------------------------------------------------------- x

**MALLORY O. SULLIVAN**, under penalty of perjury, declares pursuant to 28 U.S.C. §
1746, that the following statements are true and correct:

         1.          I am the Deputy Director of the Office of Employee Relations
("OER") at the New York City Department of Education ("DOE"), and I have held this position
since November 2014. Prior to serving in my current position, I was an Agency Attorney with
the DOE's Office of the General Counsel for approximately four years.

         2.          I submit this declaration to provide information about DOE's
employment record system in response to certain allegations regarding "problem codes" as set
forth in the Declaration of Natasha Solon dated May 20, 2022 (ECF dkt. 162). I am familiar

with the facts set forth herein based on my personal knowledge as well as discussions with other DOE employees and the review of DOE records.

3.      In my role as Deputy Director, I oversee the DOE's Office of Personnel Investigation ("OPI"), which is responsible for, among other things, screening and conducting background investigations for all candidates for employment with the DOE or with vendors under contract with the DOE and monitoring employee and vendor employee security clearances. As a part of these processes, OPI uses internal system codes.

4.      The DOE maintains electronic employment records and employee service histories for DOE employees ("DOE employment records"). DOE employment records are kept within a system called NYCAPS, which is operated by the City of New York for all DOE and City employees. DOE employment records are only visible to the DOE and reflect employees' dates of employment, titles held, and various changes in active employment status.

5.      In addition, DOE has codes within NYCAPS designed to engender special attention should an individual seek employment, re-employment, or change titles with the DOE. Such a code might be used where, for example, an employee left DOE employment with a performance issue, had a nomination for employment rescinded, or was the subject of an arrest. This is designed to ensure that prior to any new employment or new title within DOE, the employee's application undergoes further review by OPI. These types of codes have been colloquially referred to as "problem codes." These codes are only visible to internal DOE Human Resources staff, and the underlying basis for such code is only accessible by OPI.

8.      Separately, DOE implemented an internal NYCAPS code specific to the Commissioner of Health Order mandating vaccination of DOE employees ("Vaccination Mandate"). This code remains visible to only OPI staff to ensure vaccination status was

reviewed prior to any return of an employee placed on a leave without pay due to non-compliance with the Vaccination Mandate. A DOE employee would not have a "problem code" in their service history as a result of any non-compliance with the Vaccination Mandate.

9.      In this instant case, Natasha Solon was placed on leave without pay due to non-compliance with the Vaccination Mandate, and returned to service once compliance with the Vaccination Mandate was confirmed. At no point did Natasha Solon have a "problem code" in her service history as a result of her non-compliance with the Vaccination Mandate nor was there ever any code in her service history arising out of her vaccination status visible to anyone outside of OPI.

Dated:      May 27, 2022
            New York, New York

                                        By: _____
                                            Mallory Q. Sullivan
                                            Deputy Director
                                            Office of Employee Relations

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                               :

MICHAEL KANE, et al.,               :

               Plaintiffs,      :

      - against -            :    Case No.  21-cv-7863 (VEC) (Lead)

BILL DE BLASIO, et al.,         :

             Defendants.   :
------------------------------------------------------------X
                               :

MATTHEW KEIL, et al.        :

               Plaintiffs,      :

      - against -            :    Case No.  21-cv-8773 (VEC)

THE CITY OF NEW YORK, et al.,   :

             Defendants.   :
------------------------------------------------------------X

**DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1. I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2. I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3. Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4. Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5. Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

### First False Assertion in Sullivan Declaration

6. The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code, the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7. Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8. Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a **"Problem PR"** notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

**Second False Assertion in Sullivan Declaration**

9. The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel Investigations has access to the problem code. To the contrary, any non-DOE school or official that wants to learn whether a former DOE employee has a problem code in his or her personnel file can easily do so in a variety of ways. For example, non-DOE schools which offer DOE-funded positions have access to the DOE's payment portal, Galaxy, which allows them to see problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who were not hired at non-DOE schools because the non-DOE schools discovered their problem codes. Ex. 1, ¶¶ 14-18. Simple phone calls work as well: a former UFT Special Representative explained that she used to "receive[] countless calls every week asking . . . if there was a problem code on an employee's personnel file" and that her UFT colleague next door would then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8. In some instances, DOE representatives disclosed the problem codes to prospective employers from non-DOE schools calling to verify employment. Ex. 1, ¶ 19. In one instance, a third-party HR representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant to NYS Department of Health Bureau of Early Intervention directives—informed a former DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because of the problem code in her personnel file).

2

**Further Evidence of Irreparable Harm**

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs face ongoing coercion to violate their religious beliefs and become vaccinated, in order to become employable – and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her getting vaccinated. ECF No. 162 ¶ 18.

Dated: New York, New York

      June 3, 2022                     Respectfully submitted,

                                        Barry Black
                                        Nelson Madden Black LLP
                                        *Attorney for Plaintiffs*
                                        475 Park Avenue South, Suite 2800
                                        New York, NY 10016
                                        (212) 382-4303

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X :

MICHAEL KANE, et al.,

                       Plaintiffs,

        - against -

DE BLASIO et al.,

                       Defendants.

Case No. 21-cv-7863 (VEC) (Lead)

-------------------------------------------------------X :

MATTHEW KEIL, et al.

                       Plaintiffs,

        - against -

THE CITY OF NEW YORK et al.,

                       Defendants.

Case No. 21-cv-8773 (VEC)

-------------------------------------------------------X

## DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1. My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2. I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3. I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

1

for statements which are made on information and belief and, as to those, I verily believe them.

4. I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5. I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6. From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7. I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8. I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9.     When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10.    I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11.    I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12.    I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13. Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14. I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15. The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16. Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17. At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18. Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

19.   I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.   In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       June 3, 2022

*Betsy Combier*

By: Betsy Combier

5

# EXHIBIT A

**From: Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ███████████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>


PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. Our central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.


Thanks,
Eric

5. In October, 2021, I was involuntarily suspended for failing to get vaccinated in violation of my sincerely held religious beliefs.

6. After the Second Circuit held that the DOE's religious exemption policy was unconstitutional, I was able to apply for reconsideration by the Citywide Panel. The email sent to me stated that we did not need to submit anything because they would rely on the original material.

7. I received no response for months. Meanwhile my situation became desperate.

8. I depleted all of my savings, my son had to take a leave of absence from school because I could not pay the parental portion of tuition, and my children and I were running out of food, and on the brink of losing our home.

9. I owed over $2,000 in heating bills.

10. I applied to over sixty jobs during this period. Despite my extensive qualifications and spotless record, few positions called me back, and none offered me a job.

11. Finally, during an interview in Westchester, the woman conducting the interview took pity on me. She told me she liked me and wished she could hire me.

12. However, she said she had to be honest with me – neither she nor anyone else would be able to hire me.

13. I asked why. She said that there was a "problem" code in the system flagging my name. Outside schools cannot see the reason for the code, other than there is a problem flagged indicating not to hire. Examples she gave me of typical problem codes arose from robbery and other serious misconduct.

14. I have a spotless record and was shocked to find out about this code.

15. I investigated further and learned that the internal records at the DOE showed the reason for the problem code was that I was not vaccinated.

16. My situation grew more desperate every day, and it soon became clear that I would get no other work while this code remains.

17. Finally, to save my family and our home, I took the vaccine, which is against my sincerely held religious beliefs.

18. Within twenty-four hours of submitting my paperwork to the DOE, I was reinstated, and the problem code was removed.

19. Even though I felt I had no choice, this decision has been deeply traumatic and continues to cause irreparable harm.

20. I pray every day for help to overcome my anger, pain, and guilt for having to violate my faith.

21. The experience continues to impact me and to cause me serious distress.

22. I do not feel safe at my job. I do not feel safe in society.

23. The fact that the courts would continue to uphold this brazen unconstitutional condition and fail to intervene to protect us as we lose everything we have worked so hard to achieve continues to shake my faith in this country.

24. If, as the Second Circuit admitted, the DOE violated the Constitution, how can this Court or any other continue to allow the DOE to continue to harm so many of us for not taking the vaccine?

25. I am vaccinated now, but when the inevitable booster requirement comes, I will have to go through all of this again. I do not think that I can violate my faith again. The harm it caused me to do it to save my family was too severe.

26. I only hope that this Court intervenes before that occurs, or at least intervenes before more of my colleagues are forced to be violated the way I was.

27. This is spiritual rape. There is no other way to put it. I did not consent to this.

28. This Court must help us to stop the continuing injustice.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:     New York, New York
           May 20, 2022

_____
By: Natasha Solon

From: **Beth A. Norton** <BNorton@uft.org>
Date: Thu, Jul 28, 2022, 12:36 PM
Subject: RE: Questions about voluntary resignations and follow ups
To:
Cc: Michael Sill <MSill@uft.org>, Michael Mulgrew <MMulgrew@uft.org>, Tanisha
Franks <TFranks@uft.org>, Karen King <KKing@uft.org>

The arbitration award doesn't "expire," I am not sure what you mean by that.

As the language you quoted from the waiver indicates, you will be deemed to have voluntarily resigned your position with the DOE on September 6 if you are not, at that time, in compliance with the health order (vaccinated with 2 shots of Pfizer or Moderna, or 1 shot of J&J). This will be treated as a traditional resignation, it is not a termination. You will be permitted to cash out your CAR and vacation days at the contractual rates. The code on your file indicates that you are not vaccinated, that will not be lifted until such time as you are vaccinated.

You should be receiving an email from the DOE in the next week or so asking for your intent for the fall.

At this time there is no indication that the vaccine mandate will be lifted, so if you wish to return you would have to comply with the health order. If that changes we will let you know.

Regards,

**Beth A. Norton**
General Counsel
United Federation of Teachers
52 Broadway 14th Floor
New York, NY 10004
212-701-9420