UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MAUREEN HURLEY,

Plaintiff,

-against-

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK,

Defendant.

**MEMORANDUM & ORDER**
24-CV-1664 (NRM) (LKE)

**NINA R. MORRISON**, United States District Judge:

This action follows a COVID-19 vaccine mandate for certain New York City employees. Plaintiff alleges that the vaccine mandate — and her subsequent termination after she remained unvaccinated — violated her constitutional rights and amounted to religious discrimination and retaliation. In response, Defendant filed the instant motion to dismiss for failure to state a claim. For the reasons discussed below, Defendant's motion is granted.

## BACKGROUND

Plaintiff Maureen Hurley is a former tenured employee of the Department of Education of the City of New York ("NYC DOE" or "Defendant"). Am. Compl. at 3, 5, ECF No. 28. She was hired — initially as a teacher — in 2001, and she was terminated as a librarian on September 6, 2022. *Id.* Her claims stem from Defendant's vaccine mandates during the COVID-19 pandemic. On September 10,

2021, Defendant sent Plaintiff an Impact Bargaining Agreement by Arbitrator Martin Scheinman ("Scheinman Agreement"). *Id.* at 4.

The Scheinman Agreement followed an August 2021 citywide "Vaccine-Only" policy ("COVID-19 Policy") for all NYC DOE workers, which required workers to at least begin the COVID-19 vaccination protocol by September 27, 2021. *See* ECF No. 29 at 5. The teacher's union ("UFT") — through negotiations with city officials — were unable to limit the scope of impact and implementation of this COVID-19 Policy. *See id.* at 6. The parties first underwent mediation, and then arbitration (led by Scheinman) in September 2021. *Id.*

As a result of the arbitration, Scheinman and colleagues ruled that NYC DOE employees would be subject to an Expedited Review Process for requested religious and medical exemptions to the COVID-19 Policy. *Id.* at 9. The ruling set September 20, 2021 as the deadline to submit accommodation requests — with respect to religious accommodations, specifically, employees were required to submit written documentation by a religious official. *Id.* at 9, 11. The Scheinman Agreement also imposed a Leave Without Pay ("LWOP") condition, which stated that any unvaccinated employee who failed to request and/or obtain an exemption by September 28, 2021, "may be placed on leave without pay." *Id.* at 15; *see* Am. Compl. at 4.

On September 18, 2021, Hurley received a message from NYC DOE human resources ("HR"), informing her about the COVID-19 Policy and requesting that she upload proof of vaccination. *See* Am. Compl. at 4. She requested a religious

exemption in response, expressing her belief that "[her] body is [her] temple" and noting "scriptures from The Bible . . . that support [her] religious beliefs" against the COVID-19 Policy. *See id.* This request was acknowledged that same day, on September 18, 2021. *Id.*

Hurley's religious exemption request was denied on September 22, 2021, with a message that stated: "The requirements necessary to establish a religious exemption were not met, including no submission of written documentation by a religious official." *Id.* She appealed this denial the next day, September 23, 2021. *Id.*

On October 1, 2021, Hurley attended an arbitration hearing with Arbitrator Sarah Espinosa, and UFT representative John Kamps.[1] *See id.* at 5; ECF No. 29 at 25. Again, her request for a religious exemption was denied, in part because there was "no submission of written documentation by a religious official." *See* Am. Compl. at 5; ECF No. 29 at 25. On November 19, 2021, she was told she could appeal this decision to a citywide panel — and she did so on December 1, 2021, but this appeal was ultimately denied. Am. Compl. at 5.

NYC DOE terminated Hurley on September 6, 2022. *Id.* On November 11, 2022, she was informed that her fingerprints were placed on NYC DOE's "no-hire/inquiry/Problem Code" database on October 4, 2021. *Id.* This designation

[1] Hurley alleges that she was assigned a UFT representative the morning of the hearing, with little time to discuss the case or prepare for the hearing with him. *See* Am. Compl. at 4–5.

allegedly "blocks her from being paid her salary from the [NYC DOE], and tags her file with misconduct." *Id.*

Hurley filed a claim with the U.S. Equal Employment Opportunity Commission ("EEOC"), and she received a Right to Sue letter on December 7, 2023. *Id.* at 3. She also filed a Notice of Claim against the NYC DOE in May 2023. *Id.*

Hurley's Amended Complaint includes claims for religious discrimination and retaliation, under 42 U.S.C. § 1983; failure to accommodate sincerely held religious beliefs, under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"); and due process and equal protection violations. *See id.* at 6–13. It also references claims under Title VII of the Civil Rights Act of 1964, along with the First and Fourteenth Amendments to the U.S. Constitution. *Id.* at 2.

**PROCEDURAL POSTURE**

Hurley filed her original complaint on March 6, 2024, ECF No. 1, exactly ninety days from her Right to Sue notice. On November 1, 2024, NYC DOE filed a fully briefed motion to dismiss for failure to state a claim. *See, e.g.*, ECF Nos. 19, 25. The Court granted the motion to dismiss — along with leave to amend the complaint — on September 23, 2025. ECF No. 26.

On October 24, 2025, Hurley filed the Amended Complaint, ECF No. 28, along with accompanying exhibits, ECF No. 29. NYC DOE filed another fully briefed motion to dismiss for failure to state a claim on March 16, 2026, pursuant to Fed. R. Civ. P. 12(b)(6). *See generally* Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Am.

Compl. ("Def.'s Mem."), ECF No. 42; Opp'n to Def.'s Mot. to Dismiss Pl.'s Am. Compl. ("Pl.'s Opp'n"), ECF No. 43; Reply Mem. of Law in Further Supp. of Def.'s Mot. to Dismiss the Am. Compl. ("Reply"), ECF No. 44.

## LEGAL STANDARD

A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must treat the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021). Along with the complaint and documents it incorporates by reference, the Court may consider "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference." *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). Moreover, "[a] court may consider papers a *pro se* Plaintiff submits in opposition to a motion to dismiss so long as they are consistent with the allegations in the complaint." *Khater v. API Indus., Inc.*, No. 16-CV-6695 (CS), 2017 WL 6515531, at *2 (S.D.N.Y. Dec. 19, 2017).

A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, this leniency does not exempt *pro se* plaintiffs from complying with relevant

procedural rules and requirements of substantive law. *See Ezeiruaku v. Am. Express Co.*, No. 20-CV-4004 (LJL), 2020 WL 6135794, at *2 (S.D.N.Y. Oct. 19, 2020).

## DISCUSSION

### A. Discrimination

Construing the Amended Complaint broadly, Hurley brings claims for religious discrimination under Title VII and § 1983. *See* Am. Compl. at 2, 6–9. These claims are subject to the same legal standard. *See Kallinikos v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 481 F. Supp. 3d 76, 90 (E.D.N.Y. 2020).

At the pleading stage, a plaintiff must establish a *prima facie* case of discrimination, *i.e.*, that "(1) [plaintiff] is a member of a protected class; (2) [plaintiff] is qualified for her position; (3) [plaintiff] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (citation modified).

In her opposition to the motion to dismiss, Hurley notes that she is Catholic and this "mean[t] that she belong[ed] to a religious group outside of the so-called 'allowable religions' for exemption" in the Scheinman Agreement. Pl.'s Opp'n at 5.

Yet there is nothing in the Amended Complaint nor the documents incorporated by reference that suggests that Catholicism was excluded from the "recognized and established religious organizations" contemplated by the Scheinman Agreement. *See* ECF No. 29 at 11.[2]

Assuming that Hurley is a member of a protected class (by virtue of her religious identity), her discrimination claims fail because — by refusing the COVID-19 vaccine — she was no longer qualified for her position. *See Trudo v. Dep't of Educ.*, No. 25-CV-01345 (HG), 2026 WL 2333617, at *4 (E.D.N.Y. Aug. 12, 2026) (finding that because the vaccine mandate was a "lawful condition of employment," "once the mandate went into effect and [p]laintiff refused to get the vaccine, she was no longer qualified for her position"); *Broecker v. N.Y.C. Dep't of Educ.*, 585 F. Supp. 3d 299, 316 (E.D.N.Y. 2022), *aff'd*, No. 23-655, 2023 WL 7485465 (2d Cir. Nov. 13, 2023), and *aff'd*, No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023).

Moreover, the Amended Complaint fails to put forward sufficient facts to give rise to an inference of discrimination. The COVID-19 Policy was imposed on all NYC DOE workers, and there is no evidence that employees outside of Hurley's protected group were treated more favorably under the Policy. There are also no facts to suggest that Hurley was subject to invidious comments about her religious identity,

[2] To the extent that Hurley brings a selective enforcement claim under the Fourteenth Amendment Equal Protection Clause — *i.e.*, claiming that she was treated differently from a similarly situated comparator — such a claim also fails for this reason. *See Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019).

or degrading comments about her performance. The Amended Complaint thus fails to state a claim for religious discrimination.

**B. Retaliation**

Likewise, construing the Amended Complaint broadly, Hurley brings retaliation claims under Title VII and § 1983. Her § 1983 religious retaliation claim can be grounded in the First Amendment; this would require "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Trudo*, 2026 WL 2333617, at *6 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)). "Requesting religious accommodation constitutes a protected activity." *Id.* (citation modified). Furthermore, "[a] causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *Vega*, 801 F.3d at 90.

Assuming, *arguendo*, that Hurley's appeals were a form of protected activity — because they constituted requests for religious accommodations — there is a lack of temporal nexus between her appeals (the latest of which was denied on December 1, 2021), and her termination in September 2022. *See Suarez v. City of New York*,

Nos. 11-CV-5812 (WFK) (VMS) and 14-CV-5403 (SLT) (VMS), 2019 WL 13273450, at *15 (E.D.N.Y. June 10, 2019) (acknowledging that "[t]he Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship" but "district courts . . . have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation" (quoting *Gorman-Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 554 (2d Cir. 2001) and *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F.Supp.2d 257, 275 (S.D.N.Y. 2007)).

There are also insufficient facts to support an inference of retaliatory animus behind her termination. She was terminated for failing to comply with a citywide vaccine mandate, not for some discriminatory purpose.

For these reasons, Hurley has failed to state a claim for religious retaliation.

**C. Failure to Accommodate**

Hurley brings failure to accommodate claims under Title VII, the NYSHRL, and the NYCHRL. *See* Am. Compl. at 10–11. A Title VII failure to accommodate claim proceeds in two steps: (1) the plaintiff must establish a prima facie case of religious discrimination; and (2) the court must determine whether making the accommodation would cause the employer to suffer "undue hardship." *See Bergin v. N.Y. State Unified Ct. Sys.*, No. 25-721, 2026 WL 2724974, at *3 (2d Cir. Sep. 15, 2026) (summary order). Under recent Second Circuit guidance, a plaintiff establishes a *prima facie* case by showing "(1) that she actually required an accommodation of

her religious practice, and (2) that the employer's desire to avoid the actually required prospective accommodation was a motivating factor in (3) an adverse employment decision." *Bergin*, 2026 WL 2724974 at *5.

First, it is important to note that there is a distinction between "accommodation" and "exemption." *See Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-CV-3085 (VB), 2024 WL 168282, at *7 (S.D.N.Y. Jan. 12, 2024) ("[A] request for a religious exemption . . . [is] not a request for a reasonable accommodation within the meaning of Title VII."). "Where . . . an employee's request would require her employer to violate a state regulation, the proposed 'accommodation' constitutes an undue hardship as a matter of law." *Id.*

Nowhere in the Amended Complaint does Hurley allege that she sought a religious accommodation from NYC DOE; only in her opposition brief does she cite remote teaching as a potential accommodation that could have been offered to her but was not. *See* Pl.'s Opp'n at 12. She also states that NYC DOE "never offered a single document or factual evidence that showed any effort towards accommodating Plaintiff." *Id.* Even assuming that this is sufficient to allege that NYC DOE could have reasonably accommodated her religious beliefs, Hurley still fails to make out a *prima facie* case for failure to accommodate. Nor does Hurley allege that she requested to be placed in remote teaching, to gain access to reassignment rooms, or assigned substitute teaching, in order to avoid losing her salary. *Cf.* Pl.'s Opp'n at 12. NYC DOE's desire to avoid such accommodations could not have been a

motivating factor behind Hurley's termination when Hurley did not actually request them.

Instead, Hurley repeatedly insisted on a religious exemption, without complying with the basic requirements necessary to establish her entitlement to such an exemption (*i.e.*, providing written documentation by a religious official). Thus, in addition to failing to make out a *prima facie* case, Hurley's request for religious exemption, without providing written documentation by a religious official, would have created an undue hardship for NYC DOE, because it would have created a separate set of procedures for Hurley without any showing as to why that was reasonable or necessary. As a result, her Title VII claim for failure to accommodate fails.

The NYSHRL and NYCHRL also provide causes of action for failure to accommodate and are construed more liberally than Title VII. *See Annicelli v. N.Y.C. Police Dep't*, No. 25-CV-02424 (RMB) (KHP), 2026 WL 871393, at *11 (S.D.N.Y. Jan. 9, 2026). However, the same Title VII framework is used to evaluate claims under the NYSHRL and NYCHRL. *See id.*; *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 512–13 (S.D.N.Y. 2023). And as with Hurley's federal claim, an undue hardship would be imposed on NYC DOE if it were required to exempt Hurley from the vaccine mandate without written documentation from a religious official. Thus, her state law claims for failure to accommodate fail as well.

**D. Remaining Claims**

Hurley alleges that she suffered due process and equal protection violations under the Fourteenth Amendment, because she was deprived of an arbitration hearing under New York Education Law § 3020-a and the UFT collective bargaining agreement. *See* Am. Compl. at 11. Under § 3020-a, tenured teachers are entitled to request arbitration in the face of misconduct charges. N.Y. Educ. Law §§ 3020, 3020-a. However, "[t]eachers who are terminated for 'failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency' are ineligible for the disciplinary procedures outlined under these sections." *Trabacchi v. The Dep't of Educ.*, No. 24-CV-6123 (RPK) (TAM), 2026 WL 1640788, at *9 (E.D.N.Y. Apr. 28, 2026) (quoting *Broecker*, 585 F.Supp.3d at 318-19).

The Second Circuit has already held that the City's Covid-19 vaccine mandate itself is constitutional. *See Ioio v. City of New York*, No. 24-3252, 2026 WL 731089, at *3 (Mar. 16, 2026) ("[A] vaccine mandate is 'a neutral law of general applicability,' [and] it 'is subject to rational basis review even if it incidentally burdens a particular religious practice.'" (quoting *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 280 (2d Cir. 2021))). And because it was made a condition of Hurley's employment — which she failed to fulfill — she did not suffer a constitutional violation when she did not receive an arbitration hearing under § 3020-a. *See Trabacchi*, 2026 WL 1640788, at *9. Accordingly, Hurley's due process and equal protection claims under the Fourteenth Amendment fail.

For similar reasons, Hurley's First Amendment claims for free exercise violations fail. *See Annicelli*, 2026 WL 871393, at *6 ("[T]here is no violation of the

Free Exercise Clause where the government merely enforces a generally applicable rule, policy, or statute that incidentally burdens a religious practice, as long as the government can demonstrate a rational basis for the enforcement of the rule, policy, or statute, and the burden is only an incidental effect, rather than the object, of the law." (citation modified)). Moreover, an as-applied constitutional claim for religious discrimination requires "a more-than-conclusory allegation that the finding of undue hardship was erroneous or pretextual." *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 333 (2d Cir. 2025). As discussed above, Hurley's request for a religious exemption — without providing written documentation from a religious official — risked undue hardship on NYC DOE, and she has offered no facts to suggest that such a finding was "erroneous or pretextual."

Hurley also alleges that she was stigmatized by being placed on the "no hire" Problem Code list; construed broadly, this could support a "stigma plus" claim, which requires stating "(1) 'an injury to one's reputation (the stigma)'; (2) 'coupled with the deprivation of some tangible interest or property right (the plus)' (3) 'without adequate process.'" *Yan Ping Xu*, No. 08-CV-11339 (AT) (RWL), 2020 WL 8671952, at *26 (S.D.N.Y. Dec. 22, 2020) (citation modified) (quoting *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006)).

> To prevail on a stigma plus claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.

*Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citation modified).

Like in her original complaint, this stigma plus claim fails because Hurley "has not 'raised the falsity' of the allegedly stigmatizing statements nor shown that the alleged statements are 'capable of being proved false.'" *See* ECF No. 26 at 31 (citation modified). To the extent that being placed within the Problem Code database can be considered a statement, there is no evidence to suggest that it amounted to a false characterization of Hurley: she refused to obtain a COVID-19 vaccine, in violation of NYC DOE policies, and she was given a Problem Code designation due to her unvaccinated status. *See* ECF No. 29 at 32. She was further told that the Problem Code designation would be removed if she were to become vaccinated. *Id.* Thus, not only has Hurley failed to allege the falsity of the Problem Code designation, but she has also failed to show that she received the designation without adequate process.

Finally, to the extent that Hurley brings state law claims for fraudulent inducement, the Court declines to extend supplemental jurisdiction. *See Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) ("Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." (citing *Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996))).

## CONCLUSION

For the reasons discussed below, NYC DOE's motion to dismiss is granted.

**SO ORDERED.**

*/s/ Nina R. Morrison*

Dated: October 20, 2026
Brooklyn, New York

Nina R. Morrison
United States District Judge